Scott D. Baker (SBN 84923)
*Email: sbaker@reedsmith.com*
James A. Daire (SBN 239637)
*Email: jdaire@reedsmith.com*
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Plaintiff
Clear Channel Outdoor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CLEAR CHANNEL OUTDOOR, INC. a Delaware Corporation,

Plaintiff,

vs.

LINDA ERKELENS, an individual,

Defendant.

Case No.: C 07-06138 JCS (pending reassignment)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF CLEAR CHANNEL OUTDOOR, INC.'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Date: To Be Determined
Time: To Be Determined
Place: To Be Determined

# I. INTRODUCTION

For nearly fifty years, Clear Channel Outdoor, Inc. ("Clear Channel") and its predecessors have owned, operated and maintained a general advertising sign structure, built by Clear Channel's predecessor and located at 1801 Turk Street, San Francisco, California (the "Turk Street Property"). Clear Channel's ownership rights in the sign are unequivocal and are explicitly set forth in a written lease agreement (the "Lease") to which Defendant Linda Erkelens ("Erkelens") is admittedly bound. In earlier times and as recently as 3 months ago (before it became self-serving to deny Clear Channel's rights), Erkelens expressly acknowledged Clear Channel's ownership interest in the sign and its right to remove the sign structure before or after termination of the Lease. Indeed, after Clear Channel applied for and obtained a permit to remove the sign structure (the "Removal Permit"), Erkelens confirmed that she had no objection to the removal of the sign.

On the virtual eve of Clear Channel's removal efforts, however, Erkelens suddenly reversed course and claimed that the Removal Permit was invalid and that she somehow owns Clear Channel's sign structure. Specifically, Erkelens appealed the Removal Permit before the San Francisco Board of Appeals and "forbade" Clear Channel from entering the Turk Street Property. Erkelens' about face is triggered by a recent plan to turn over Clear Channel's sign structure to its direct competitor, Advertising Display Signs, 1, LLC ("ADS") in violation of Clear Channel's rights and the plan language of the Lease. On October 17, 2007, the San Francisco Board of Appeals heard Erkelens' appeal of the Removal Permit but did not issue any substantive ruling, instead continuing the appeal to December 12, 2007. During the hearing, the Board expressly declined to consider the Lease (and by extension, Clear Channel's clear property rights in the sign structure). After the hearing, Clear Channel terminated the Removal Permit, thereby mooting Erkelens' appeal.

In light of Erkelens' reversal on the issue of sign ownership, Clear Channel sought confirmation from Erkelens that she does not assert any claim of ownership over the sign and that she authorizes Clear Channel to enter the Turk Street Property for the purposes of removing the sign.

Erkelens responded by baselessly accusing Clear Channel of "bad faith" negotiations and ignoring Clear Channel's request. Erkelens' purposeful silence underscores Clear Channel's unconditional right to remove under the Lease as well as Erkelens' prior acknowledgments of Clear Channel's property rights. Clear Channel's likelihood of success is without question, as Erkelens' exercise of dominion over Clear Channel's property plainly constitutes conversion.

Moreover, the harm Clear Channel will suffer if Erkelens interference with Clear Channel's ownership rights is not put to a stop is immediate and irreparable. Erkelens still refuses to allow Clear Channel access to the Turk Street Property so that Clear Channel may remove its sign structure. Further, and despite Clear Channel's immediate right to its property, Erkelens has refused to agree to abstain from turning over Clear Channel's sign to ADS. Depriving Clear Channel of its unique right to post advertising on the sign structure located on the Turk Street Property– in fact, handing that right over to Clear Channel's direct competitor – is not wholly compensable by money damages because of a city-wide ban on new general advertising signs. *See* San Francisco Planning Code Section 611. In other words, Clear Channel cannot simply erect a replacement sign at another location.

In addition, Erkelens' immediate threat to turn over the sign structure to ADS harms the public interest. The City's voters themselves adopted the ban on new general advertising signs codified at San Francisco Planning Code Section 611. Moreover, San Francisco Planning Code section 604(h) prohibits the reinstallation, replacement, or reconstruction of a general advertising sign that the owner of the sign voluntarily removes. The public therefore has a clearly expressed interest in curtailing general advertising signs. Although Clear Channel stands ready to remove its sign structure, Erkelens has prohibited Clear Channel from doing so. The public interest mandates that, once Clear Channel's sign structure comes down, the Turk Street Property not be reused for a general advertising sign. Erkelens' threat to prevent removal of the sign and turn it over to ADS amounts to an end-run around this interest.

In contrast, Erkelens will suffer no legitimate harm. Erkelens has no rights in the sign structure to begin with. Therefore, Erkelens stands to lose nothing if a temporary restraining order is entered.

Accordingly, and in light of Erkelens' threat to immediately turn over Clear Channel's sign structure to ADS, a temporary restraining order should issue immediately, enjoining Erkelens from interfering with Clear Channel's ownership rights and preserving Clear Channel's ability to remove its property. Likewise, an Order to Show Cause should also issue establishing a hearing on whether a preliminary injunction is appropriate.

## II. FACTUAL BACKGROUND

Clear Channel is in the business of outdoor advertising. Among other things, Clear Channel manages and maintains sign structures for advertising purposes throughout the world, including its sign inventory in San Francisco. Included in its sign inventory in San Francisco is the sign structure that Clear Channel's predecessor erected on the property located at 1801 Turk Street, San Francisco, California (the "Turk Street Property"). Clear Channel and its predecessor have owned and maintained a permit for the sign structure on the Turk Street Property, without interruption, since at least 1958. [*See* Declaration of Patrick Powers ("Powers Decl.") ¶ 4.]

On or about January 1, 1984, Clear Channel's predecessor-in-interest (Foster & Kleiser) and Erkelens' predecessor-in-interest (Los Dos Investment Co.) entered into a lease "for the purpose of erecting and maintaining advertising signs" on the upper-west wall of the building at the Turk Street Property ("the Lease"). Importantly, the Lease provides that the sign structure is and shall remain Clear Channel's sole property and may be removed by Clear Channel at any time before or after the expiration of the Lease. Paragraph 8 states in relevant part:

> Lessee [Clear Channel] shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee [Clear Channel], and that, notwithstanding the fact

> that the same constitute real estate fixtures, the Lessee [Clear Channel] shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease. [Powers Decl., Exh. A.]

Absent proper termination, the Lease automatically renewed for successive five year terms. On July 2, 1990, Clear Channel's predecessor-in-interest (Patrick Media Group, Inc.) and Erkelens' predecessor-in-interest (Los Dos Investment Co.) increased the annual rent and changed the term of the Lease to seven years. [Powers Decl., Exh. B.] The Parties specified that "[a]ll other terms and conditions of the existing lease shall remain the same." [*Id.*]

On August 21, 2002, Clear Channel and Erkelens' predecessor-in-interest (Maven Investments) agreed to another amendment whereby the rent increased and the term of the Lease changed to five years. [Powers Decl., Exh. C.] The Parties again specified in writing that "[a]ll other terms and conditions of the existing Lease Agreement dated January 1, 1984 shall remain the same." [*Id.*] Thus, the Parties again affirmed Clear Channel's ownership of all "signs, structures or improvements" throughout the life of Lease and amendments thereto and never amended Clear Channel's unequivocal right to remove all "signs, structures or improvements" during or after expiration of the Lease.

In addition to Clear Channel's rights being clearly set forth in the Lease, the physical presence of the sign structure as well as the prominent display of Clear Channel's name were readily visible at the Turk Street Property at the time Erkelens assumed ownership of the Turk Street Property.. [Powers Decl. ¶ 11.] In other words, Erkelens was well aware of Clear Channel's rights to its sign structure when she acquired the Turk Street Property and assumed the Lessor's obligations under the Lease.

On May 31, 2007, Erkelens sent a purported notice to terminate the Lease effective July 31, 2007 ("the Termination Notice"). Consistent with her obligations under the Lease, Erkelens <u>specifically acknowledged</u> that Clear Channel owned the sign structure as well as the right to remove

the sign structure. Erkelens asked Clear Channel to "make arrangements to remove the billboard and [] lock box from our gate by [July 31, 2007]." [Powers Decl., Exh. D.]

Erkelens also baselessly asserted that she planned to retain Clear Channel's permit no. 214477, which she erroneously referred to as permit no. 144724477. [*Id.*] As set forth above, Clear Channel, through is predecessor-in-interest, obtained the permit nearly fifty years ago and has retained sole ownership of the permit. Erkelens did not state why she believed she could "retain" Clear Channel's permit. However, the reason for Erkelens' baseless assertion would become clear when she disclosed that she was working with ADS, Clear Channel's direct competitor. Erkelens intends to use Clear Channel's sign structure to allow ADS to erect and maintain the sign, in violation of the Lease and as an "end-run" around the city-wide ban on new general advertising signs codified at San Francisco Planning Code section 611.

In response to the Termination Notice, Clear Channel chose to remove the sign structure from the Turk Street Property, as was its right under the Lease. Clear Channel applied to the Department of Building Inspection ("DBI") for a permit to remove the sign structure. In accordance with DBI policy and practice, Clear Channel properly applied for a "Building Additions, Alterations or Repairs" permit (the "Removal Permit") and the DBI issued the Removal Permit on July 18, 2007. [Powers Decl.¶ 13, Exh. E.] Two days later, Clear Channel sent a letter to Erkelens along with a copy of the Removal Permit. In the letter, Clear Channel advised Erkelens that it would exercise its rights to remove its sign structure from the Turk Street Property commencing July 30, 2007. [Powers Decl., Exh. E.] Clear Channel further stated that Defendant was not authorized to use Clear Channel property for any purpose and that she was not authorized to retain permit no. 214477. In addition, Clear Channel informed Erkelens that, under the San Francisco Planning Code, the sign structure could not be rebuilt once Clear Channel removed it. Specifically, San Francisco Planning Code section 604(h) prohibits rebuilding a general advertising sign which the owner voluntarily removes. The San Francisco Planning Code provides in relevant part:

> A sign which is voluntarily destroyed or removed by its owner or which is required by law to be removed may be restored only in full conformity with the provisions of this Code....A general advertising sign that has been removed shall not be reinstalled, replaced, or reconstructed at the same location, and the erection, construction, and/or installation of a general advertising sign at that location to replace the previously existing sign shall be deemed to be a new sign in violation of Section 611(a) of this Code....[San Francisco Planning Code section 604(h), ¶2.]

In light of Clear Channel's need to schedule equipment and personnel to remove the sign structure, it asked Erkelens to provide a response, if any, in writing and no later than July 24, 2007 and advised Erkelens that Clear Channel would deem her silence to be acquiescence to Clear Channel's removal of the property, which she herself had originally requested.

In a July 23, 2007 letter, Erkelens acknowledged receipt of the Removal Permit. Notably, she raised no objection to the Removal Permit at the time. To the contrary, Erkelens thanked Clear Channel for sending the letter and Removal Permit to her. Erkelens informed Clear Channel that she expected it to repair any and all damage "the installation and removal" of the sign created. [Powers Decl., Exh. F.] Again, Erkelens explicitly recognized that the sign structure was the property of Clear Channel and that Clear Channel has sole authority to install and remove the sign structure. [*Id.*] Relying on Erkelens' letters and confirmation that Clear Channel could proceed without interference, Clear Channel scheduled Operations equipment and personnel to remove the sign structure at the Turk Street Property. In addition, Clear Channel sent another letter to Defendant confirming again that removal of Clear Channel's sign structure would commence first thing the morning of Monday, July 30, 2007. [Powers Decl.¶ 16, Exh. G.]

On July 26, 2007, however, Erkelens sent a letter to Clear Channel informing it that Erkelens, together with ADS, intended to appeal the Removal Permit before the San Francisco Board of Appeals. [Powers Decl.¶ 18, Exh. I.] Erkelens failed to offer any reason for the appeal and did not explain why Erkelens had earlier accepted the Removal Permit with thanks. Although Erkelens had previously authorized Clear Channel to enter her property and remove the sign, in the letter she purported to "suspend[] any prior authorization for [Clear Channel] to remove the sign structure

from the property." Contemporaneously with the notice of appeal, Defendant falsely asserted that she owns the right to maintain a general advertising sign at the Turk Street Property. [Powers Decl., Exh. I.] Indeed, contrary to her earlier acknowledgment of Clear Channel's unequivocal right to remove the sign structure, Erkelens now "forb[ade] [Clear Channel] from interfering with her entitlements to maintain general advertising signage there." [*Id.*]

The reason for this about-face is clear. According to Erkelens' own notice of appeal, ADS, Clear Channel's direct competitor, intended to join her in the appeal. [*Id.*] Erkelens groundless and belated objection to the removal of the sign is intended to prevent Clear Channel from removing its sign structure – in violation of Clear Channel's rights under the Lease – so that Erkelens can turn the sign structure over to ADS. When the San Francisco Board of Appeals heard Erkelens' appeal of the Removal Permit, it expressly declined to consider any private agreements between the parties. Instead, the Board of Appeals continued the Removal Permit appeal until December 12, 2007 and asked Erkelens and Clear Channel to use the additional time to negotiate a settlement of their dispute in good faith. [Declaration of Kenneth B. Finney ("Finney Decl.") ¶ 3.] On December 4, 2007, Clear Channel terminated the Removal Permit, thereby mooting the appeal of the Removal Permit. [Finney Decl. ¶ 4, Exh. B.] Accordingly, the parties' dispute now centers on interpretation of the Lease, which the Board of Appeals pointedly refused to consider.

As a starting point for negotiations and in light of Erkelens' earlier flip-flop regarding ownership of the sign, Clear Channel sought to clarify whether she presently acknowledges Clear Channel's sole ownership and right to remove the sign structure (as in earlier times), or whether she baselessly claims a right to own and/or remove the sign structure for herself. [*Id.* ¶ 5, Exh. C.] On November 20, 2007, Erkelens responded by accusing Clear Channel of "bad faith" negotiations. Erkelens' response blithely ignores that the parties need to resolve ownership of the sign before negotiations can begin as well as the substance of Clear Channel's request. [*See id.* Exh. D.] Clear Channel replied to Erkelens again, explaining that Clear Channel was open to negotiations over renewing the Lease so long as Erkelens refrained from claiming ownership or denying Clear

Channel access to the sign. [*Id.* ¶ 7, Exh. E.] To date, despite multiple requests, Erkelens has refused to: (a) acknowledge Clear Channel's property rights; and (b) authorize Clear Channel to enter the Turk Street Property, necessitating this *ex parte* motion.

At bottom, Erkelens' efforts to appropriate Clear Channel's sign structure is directly at odds with the clear and unmistakable language of the Lease, with Erkelens' own prior acknowledgments that Clear Channel owns the sign structure and with common sense. Accordingly, a temporary restraining order and preliminary injunction are warranted to prevent Erkelens' further interference with Clear Channel's property rights and preserving the status quo pending resolution of these personal property and Lease issues.

## III. LEGAL ANALYSIS

Injunctive relief is appropriate if Clear Channel establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips heavily in its favor. *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

### A. Clear Channel Will Prevail On The Merits Because Erkelens Has Converted And Will Continue To Convert Clear Channel's Sign Structure

A defendant who has wrongfully exercised dominion over the personal property of the plaintiff has committed conversion. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). A plaintiff is entitled to relief for conversion where, as here, the plaintiff can establish that (1) it owns or has a right to possession of the property; and (2) the defendant interfered with plaintiff's ownership or right of possession. *Id.*; *see also Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072 (1996) ("Conversion is any act of dominion wrongfully exerted over another's personal property in

denial of or inconsistent with his rights therein"). Injunctive relief is appropriate to prevent a defendant from committing a further conversion or threatened conversion or from benefiting from its prior conversion. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1384 (2003) (either damages or injunctive relief are appropriate remedies for conversion or trespass to chattels); *see also Woodbine v. Van Horn,* 29 Cal. 2d 95, 108 (1946) (granting an injunction to prevent conversion); *Gladstone v. Hillel*, 203 Cal. App. 3d 977, 988 (1988) (enjoining defendants from benefiting from their conversion and stating that California courts have "long-recognized powers to restrain a threatened tort"); *ebay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1067 (N.D. Cal. 2000) ("If preliminary injunctive relief against an ongoing trespass to chattels were unavailable, a trespasser could take a compulsory license to use another's personal property for as long as the trespasser could perpetuate the litigation.").

**1. Clear Channel Owns the Sign Structure**

The Lease unequivocally establishes that the sign structure is, and shall remain at all times, the sole property of Clear Channel. Paragraph 8 of the Lease states:

> Lessee [Clear Channel] shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee [Clear Channel], and that, notwithstanding the fact that the same constitute real estate fixtures, the Lessee [Clear Channel] shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease.

Nonetheless, Erkelens now asserts (contrary to the position she took in several earlier communications) that Clear Channel cannot remove the sign structure from the Turk Street Property without her consent. This argument is a mere pretext to allow Erkelens to lease Clear Channel's sign to Clear Channel's direct competitor, ADS.

The Lease leaves no room for ambiguity with respect to sign removal. Clear Channel may remove its sign structure at any time either before or after expiration of the Lease. To be sure, the Lease further provides that *"notwithstanding* the fact that the same constitute real estate fixtures," the Lessee Clear Channel shall retain the right to remove. Thus, the parties freely contracted that the sign structure would remain Clear Channel's property to remove. *See, e.g. Clark v. Talmadge*, 23 Cal. App. 2d 703, 707 (1937) (affirming right of lessee to remove fixtures pursuant to the lease even

after the lease was terminated for failure to pay rent). When Erkelens acquired its interest as Lessor, it also assumed each of the Lessor's obligations, including Paragraph 8.

Clear Channel expects Erkelens to argue that she acquired the Turk Street Property without knowledge of the Lease and therefore should not be held to its obligations. Erkelens' earlier acknowledgements that Clear Channel owns the sign does away with this argument. From the time she assumed the Lease until her July 26, 2007 letter to Clear Channel and at all times in between, Erkelens acknowledged and affirmed Clear Channel's sole ownership of the sign structure at the Turk Street Property. [Powers Decl. Exhs. D, F.]

Moreover, a purchaser of property is charged with knowledge of information that would be revealed by a reasonable inspection of the property. *Evans v. Faught*, 231 Cal.App.2d 698, 705 (1965) ("a purchaser of premises occupied in part by a third person under an unrecorded lease cannot be said to be an innocent purchaser since possession by such third party may constitute notice to the purchaser, provided it is open, notorious, exclusive and visible, and not consistent with the record title."); *Preston v. Goldman*, 42 Cal.3d 108, 123 (1986) (purchaser charged with knowledge of patent defect in property). Even if Erkelens had never acted consistent with her obligations under the Lease, her reasonable inspection of the property would have revealed Clear Channel's ownership interest in the sign structure. The sign structure was and is located on the wall of the Turk Street Property, with Clear Channel's name prominently displayed. As a result, Erkelens was not an "innocent" purchaser and cannot overcome Clear Channel's ownership interest on that basis. In short, regardless of how Erkelens *now* attempts to wrest ownership from Clear Channel, she cannot escape the fact that the sign structure is and always has been Clear Channel's property.

**2. Erkelens' Interference With Clear Channel's Rights In The Sign Structure Amounts To Conversion**

It is well established that a lessor may be liable for conversion of the lessee's property. *Eichhorn v. De La Cantera*, 117 Cal.App.2d 50, 58 (1953). For instance, if the landlord refuses to

permit the tenant on the property to remove his or her property, the landlord is liable for conversion. *Haydell v. Silva*, 201 Cal.App.2d 20, 25 (1962). Moreover, any appropriation of the personal property of the tenant for the landlord's use is conversion. This includes, but is not limited to, the landlord's sale or lease of the property of the tenant for his own monetary benefit. *Gruber v. Pacific States Sav. & Loan Co.*, 13 Cal. 2d 144, 148 (1939) (landlord's refusal to permit tenant to remove his property and landlord's threat to sell tenant's property interfered with tenant's dominion over his property and constituted conversion); *see also Martinez v. De Los Rios,* 165 Cal. App. 2d 102, 105 (Cal. Ct. App. 1958) (finding conversion where defendant executed a lease allowing a co-defendant to take ore from property owned by plaintiff).

Here, despite Clear Channel's ownership of the sign structure, Erkelens has claimed that she owns the sign structure, refused Clear Channel access to the sign structure and refused to permit Clear Channel to remove its sign structure. Thus, Erkelens has wrongfully exerted dominion over, and thereby converted, Clear Channel's personal property.

**B. Clear Channel Will Suffer Immediate and Irreparable Harm Absent A Temporary Restraining Order**

Clear Channel will suffer immediate and irreparable harm if a temporary restraining order does not issue preventing Erkelens from interfering with Clear Channel's ownership interests. Erkelens still refuses to confirm that she will prevent third parties from using Clear Channel's sign structure. To the contrary, according to her July 26, 2007 correspondence she still plans to turn over Clear Channel's rights to Clear Channel's direct competitor, ADS. [Powers Decl., Exh. I.]

The harm of such an act would be irreparable because Clear Channel's ability to control its unique property right in the sign structure would be destroyed. [Powers Decl. ¶ 19.] Indeed, Clear Channel would not be able to replace the sign at Erkelens' expense because a San Francisco ordinance prohibits the erection of new signs in San Francisco. *See* San Francisco Planning Code section 611; *Woodbine,* 29 Cal. 2d 95 at 108 (injunction preventing conversion properly granted

because there was no market substitute for eucalyptus wood at issue); *see also Reuters Ltd. v. United Press Int'l, Inc*, 903 F.2d 904, 908-909 (2nd Cir. 1990) (finding irreparable harm where defendant's wrongful conduct deprived plaintiff of pictures from foreign new service, a unique contract right). Signs in San Francisco therefore represent a finite economic opportunity which Clear Channel cannot simply replace. Worse yet, Erkelens intends to turn Clear Channel's property right over to ADS. In fact, because of the moratorium on the erection of new signs in San Francisco, it is evident that ADS and Erkelens are seeking to push Clear Channel aside and assert for themselves Clear Channel's interest in one of the presently existing signs in San Francisco.

**C. Erkelens' Unrestrained Interference Harms The Public Interest**

When interim equitable relief is authorized and the public interest is involved, "courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank*, 379 US 378, 383 (1965); *See United States v. White*, 893 F. Supp. 1423, 1438 (C.D. Cal. 1995) (public interest tipped the balance in plaintiff's favor and justified a preliminary injunction).

In this case, the public interest weighs heavily in favor of a temporary restraining order. As set forth above, a San Francisco ordinance prohibits the erection of new signs in San Francisco. *See* San Francisco Planning Code section 611. The ordinance is the product of a proposition adopted by the City's voters and clearly expresses an interest in curtailing new general advertising signs. In furtherance of that interest, the San Francisco Planning Code also prohibits a general advertising sign from being reinstalled, replaced or reconstructed at the same location once the owner of the sign voluntarily removes it. *See* San Francisco Planning Code section 604(h), ¶2.

In light of Erkelens' termination of the Lease, Clear Channel wants to remove its sign, and has communicated its desire to Erkelens several times. [Powers Decl. ¶ 5, Exh. C; Declaration of

James A. Daire ¶ 2.] The public interest, as expressed in Planning Code section 604(h), ¶2, mandates that once Clear Channel voluntarily removes the sign, no one can replace it. Erkelens' wrongful appropriation of Clear Channel's sign for ADS' benefit is directly contrary to this interest. Indeed, Erkelens' plan to turn over the sign structure to or for ADS amounts to an "end-run" around the ban on new general advertising sign. Erkelens knows that the San Francisco Planning Code prohibits her from obtaining a permit for a new sign or replacing Clear Channel's sign structure, so she is converting Clear Channel's sign structure to get around the ban on new signs.

### D. The Balance Of Hardships Weighs Heavily In Favor Of Granting A Temporary Restraining Order

The harm to Clear Channel and the public far outweighs any possible harm to Erkelens. Clear Channel stands to lose the ability to control its unique property right, a right which it has enjoyed -- and which Erkelens and its predecessor have conceded -- for nearly fifty years. In contrast, Erkelens will simply be restrained from making use of and/or granting ADS the right to use personal property to which it has no legal right. Further, whereas Clear Channel's unique property right would be destroyed without a temporary restraining order, a temporary restraining order would not impose any hardship on Erkelens. Clear Channel has already paid Erkelens all rent for use of the Turk Street Property through July 2007, at which time Erkelens voluntarily chose to terminate the Lease. Further, there is no reason why Erkelens must immediately turn over Clear Channel's sign structure to ADS, apart from its unfounded hope that the transfer would extinguish Clear Channel's claim to ownership.

## IV. CONCLUSION

Despite Clear Channel's ownership rights in the sign structure plainly set forth in the Lease and Erkelens' multiple acknowledgments of Clear Channel's ownership and right to remove, Erkelens has now threatened to turn Clear Channel's sign structure over to Clear Channel's direct

competitor, ADS. Erkelens has absolutely no basis for its attempt to wrest ownership from Clear Channel and therefore her actions constitute conversion. Moreover, the harm that Clear Channel will suffer is both immediate and irreparable, with its unique property right directly at risk. Further, Erkelens' plan to turn over the sign structure to ADS violates the public ban on new general advertising signs and the ban on replacement of signs that the owner voluntarily removes. In stark contrast, Erkelens will suffer no legitimate harm if a temporary restraining order is entered, as Clear Channel has already paid rent to keep its sign structure on the Turk Street Property through July 2007, at which point Erkelens voluntarily terminated the Lease. Accordingly, a temporary restraining order and order to show cause re preliminary injunction should issue.

DATED: December 5, 2007.

REED SMITH LLP

By /s/ James A. Daire
James A. Daire
Attorneys for Plaintiff
Clear Channel Outdoor, Inc.