Gerald M. Murphy, State Bar No. 99994
Andrew S. Azarmi, State Bar No. 241407
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
E-mail:  aazarmi@luce.com

Attorneys for Defendant
Linda Erkelens

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,

        Plaintiff,

      v.

LINDA ERKELENS, an individual,

        Defendant.

Case No. C 07-06138 SBA

**DEFENDANT'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS, FURTHER DOCUMENTS AND DEPOSITION OF LINDA ERKELENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:    July 9, 2008
Time:   9:30 a.m.
Judge:  Hon. James Larson

# I.
# INTRODUCTION

Defendant Linda Erkelens ("Defendant") opposes Plaintiff Clear Channel Outdoor, Inc.'s ("Clear Channel") Motion to Compel Production of Documents, Further Responses and Deposition of Linda Erkelens. This motion by Clear Channel is nothing more than a baseless attempt to discover information about a direct competitor that has no bearing whatsoever to any of Clear Channel's claims in this litigation. This litigation is about a billboard located on Defendant's property, and whether Clear Channel has the right to come onto Defendant's property and tear that billboard down. The information sought by Clear Channel's motion to compel bears no relevance whatsoever to Clear Channel's alleged claims. Furthermore, the information sought by Clear Channel is sensitive confidential financial information protected from disclosure by the right to privacy under the California constitution. Allowing discovery of this information would give Clear Channel a clear competitive advantage over competitors who may wish to lease Defendant's sign, and would give Clear Channel an unfair advantage in any future negotiations with Defendant should Defendant win the right to keep her sign.

# II.
# FACTS

## 1.    The Billboard at 1081 Turk Street.

Ms. Erkelens, the Defendant, is the owner of real property located at 1081 Turk Street in San Francisco. Located on her property is an advertising billboard ("the Billboard"). The Billboard was built in 1958. *See* Ex. A at ¶ 9. Clear Channel is an advertising mega-corporation with virtually inexhaustible legal resources that, formerly, leased the Billboard from Defendant. On May 31, 2007, Defendant gave notice to Clear Channel that her lease with Clear Channel would end on July 31, 2007, and that she would be retaining the original sign permit issued by the San Francisco Department of Public Works. Ex. A at ¶ 13. In response, Clear Channel sought and obtained a Removal Permit, allowing it to tear down Defendant's Billboard. Initially, Defendant did not object to Clear Channel tearing down the Billboard, because she believed she would have the option of erecting a new billboard in place of the Billboard was already standing.

1    As far as she was concerned, Clear Channel could have its scrap metal back. When Defendant

2    later found out that, due to San Francisco zoning law, she would not be able to rebuild the

3    Billboard should the original structure come down, she appealed the Removal Permit to the San

4    Francisco Board of Appeal ("Board of Appeal").

5    **2.      Board of Appeal hearing regarding the Billboard.**

6        On October 17, 2007, the Board of Appeal heard Defendant's appeal of Clear Channel's

7    Removal Permit. Commissioner members of the Board of Appeal in attendance roundly

8    denounced Clear Channel's efforts to strong-arm Defendant into only leasing to Clear Channel, by

9    threatening to tear down the Billboard because Defendant chose not to renew her lease with Clear

10   Channel, as illegal unfair, and mean-spirited. *See* Decl. of Andrew S. Azarmi at ¶ 1. On

11   December 4, 2007, before the Board of Appeal could issue a final decision related the Removal

12   Permit and ownership of the Billboard, Clear Channel asked the San Francisco Department of

13   Building Inspection to withdraw their Removal Permit. *Id.* The very same day, December 4,

14   2007, Clear Channel filed this lawsuit in Federal Court with the intent of evading the Board of

15   Appeal's ruling and asserting ownership of Defendant's Billboard in a new forum. Ex. A. On

16   December 12, 2007, the Board of Appeal voted 5-0 against Clear Channel, overturning the

17   issuance of the Removal Permit. Decl. of Andrew S. Azarmi at ¶ 1.

18   **3.      Clear Channel's Complaint.**

19       Clear Channel, through its complaint, seeks damages and an injunction. Clear Channel's

20   substantive claims include Breach of Written Contract related to the Billboard lease, Conversion

21   related to the Billboard, Trespass to Chattels related to the Billboard, Promissory Estoppel related

22   to the Billboard, Unjust Enrichment related to Defendant's retention of the Billboard, and

23   Declaratory Judgment regarding the Billboard. Ex. 1.

24       All of these claims relate to the issue of whether Clear Channel owns the Billboard, and

25   whether Clear Channel can come onto Defendant's property to tear down the Billboard. Indeed,

26   Judge Jenkin's December 7, 2007 Order Denying Plaintiff's Ex Parte Motion For A Temporary

27   Restraining Order And Order To Show Cause pointed out that Clear Channel's objective in this

28   lawsuit was to obtain access to Defendant's property in order to remove the Billboard, not to

continue using it for advertisements.

**4.     Clear Channel's pattern and practice of squeezing out competitors to the detriment of property owners and fair competition.**

At first glance, one might wonder why Clear Channel would be so persistent in efforts to tear down Defendant's one and only Billboard.  The answer is that this tactic, combined with an outdated and technical term in place in most of its commercial billboard leases, prevents property owners from renting their billboards space to anyone but Clear Channel, and allows Clear Channel to force property owners to accept far less than fair market value for their billboards when it comes time to renew.  In short, once property owners invite the big bad wolf in, they unwittingly forbid any other suitors from ever wooing again.

Clear Channel's leases, much like the one at issue here, have a provision permitting Clear Channel to remove advertising signs when the lease terminates.  These leases were designed decades ago, when the understanding was that a property owner would be free to rent the billboard space to a competing advertising company, who would erect their own signs and pay the property owner a rent for advertising.  However, an event not contemplated by these original leases subsequently occurred.  San Francisco (like most other metropolitan areas is San Francisco) enacted billboard laws prohibiting any new signs from being erected.  Thus, if a billboard was torn down, the property owner was barred from erecting a new sign in its place.  Naturally, existing billboards became a valuable property right, as the number of signs would remain finite while the costs of advertising on billboards rose.

Clear Channel has capitalized on this technical term in its leases, and used it as a tool to strong-arm property owners who decide that they might want to rent their property to other advertising companies who may be willing to pay more than the artificially low amount Clear Channel will offer.  If you don't deal with Clear Channel, and on Clear Channel's terms, Clear Channel will come in and tear down your Billboard, with full knowledge that you will lose the right to rebuild the billboard and will thereby lose a substantial revenue stream associated with your property.  If you resist, Clear Channel will sue you, backed by its much broader resources than typical property owners possess.  This alone is a strong deterrent that often makes resistance

301041502.1

1    impossible from an economic standpoint.  Similarly, if you are a competitor advertising company,

2    you face little hope of surviving in a business climate where Clear Channel reels property owners

3    in and then forever locks them in by threatening to tear down billboards if they resist.

4         This unscrupulous business activity is no isolated instance, but rather has become a pattern

5    and practice for Clear Channel.  Indeed, in this very same court, on June 13, 2008, another San

6    Francisco billboard case with nearly identical facts was filed by Clear Channel.  *See Clear*

7    *Channel Outdoor, Inc. v. Lee*, case no. 3:08-cv-02955-PJH.

8         **1.     The Discovery dispute at issue here.**

9         This discovery dispute is really just another example of Clear Channel up to its same of old

10   tricks of strong-arming competitors to the detriment of the property owners.  Clear Channel seeks

11   to discover what other advertising companies Defendant has talked and what was said, now that

12   the lease with Clear Channel has ended.  Clear Channel also seeks two specific documents: an

13   agreement and a letter between Defendant and Advertising Display Systems (ADS).  ADS is a

14   direct competitor of Clear Channel, a small local company engaged in the business of billboard

15   advertising.

16        Out of 33 Requests for Production of documents, Defendant objected to providing

17   documents to 7 Requests.  *See* Decl. of James A. Daire In Support of Clear Channel's Motion to

18   Compel at Ex. N.  All of these Requests pertained to Defendant's dealing with ADS or any other

19   advertising companies.  Defendant objected primarily on two grounds: (1) that the information

20   was not relevant to Clear Channel's claims, and (2) information sought was confidential and

21   protected by right to privacy.  *Id.*

22                                **III.**
                                **ARGUMENT**

23

24   A.   <u>**Information Regarding ADS Or Any Other Competitor Advertising Company Is
          Beyond Rule 26(b)(1)'s Permissible Scope Of Discovery Because It Is Not Relevant To
          Clear Channel's Claims**</u>

25

26        In its Memorandum of Points and Authorities In Support of its Motion to Compel

27   ("MPA"), Clear Channel cites the incorrect standard regarding the permissible scope of discovery

28   under Federal Rule of Procedure ("FRCP") 26(b)(1).  The proper scope of discovery under Rule

                                    4                          Case No. C 07-06138 SBA
                                                               OPPOSITION TO MOTION TO COMPEL

1    26(b)(1) does not extend to any matter relevant to the subject matter of the of the lawsuit.  Rather

2    Rule 26(b)(1) states that parties may obtain discovery of non-privileged matters that are

3    "**[R]elevant to the claim or defense of any party** . . . ." (emphasis added).  Although there is no

4    bright line to distinguish between matters that are *relevant to claims* as opposed to matters that are

5    *relevant to the subject matter*, it is clear that the *claims* scope is intended to be narrower than the

6    broader *subject matter* scope.  *Thompson v. Dep't of Housing & Urban Dev.*, 199 F.R.D. 168, 171

7    (D. MD 2001); *Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 498 (S.D. IN.

8    2003) (collecting cases).

9           Here, Clear Channel has failed to show why information about which competitor

10   advertisers Defendant has talked to, what was said, and what agreements may exist between them

11   is relevant to Clear Channel's claims, which are aimed at determining whether Clear Channel has

12   the right to tear down the sign.  Indeed, Clear Channel's MPA says that the relevance of the

13   information and documents sought here "lie at the heart of Clear Channel's claims" against

14   Defendant.  Clear Channel MPA at 2.  Unfortunately, Clear Channel provides no insight into why

15   they say Defendant's communications, negotiations, or discussions with other advertising

16   companies has any bearing whatsoever on whether or not Clear Channel is entitled to tear down

17   the Billboard.  If Defendant wins ownership of her sign, then she will of course be free to entertain

18   bids from whoever she pleases.

19          So why does her communications with competitors bear any relevance to whether Clear

20   Channel will be able to tear down her sign?  It doesn't.

21          Clear Channel wants this information for the improper purpose of gaining an edge over

22   any competitors that may seek to advertise on the Billboard in the event that Defendant wins her

23   Billboard back.  Moreover, Clear Channel has an incentive to discover what terms, bid, or offers

24   Defendant may have received from competitors.  If Defendant wins her Billboard, Clear Channel

25   will find themselves in the unusual position of competing for a Billboard lease.  In short, this

26   discovery motion is just another example of Clear Channel using litigation in an effort to unfairly

27   gain an advantage over its competitors.

28          Likewise in its meet and confer discussions, Clear Channel failed to identify how

1   information related to ADS or other advertising companies is relevant to Clear Channel's pleaded

2   claims, which hinge entirely on whether or not Clear Channel has the right to remove the

3   Billboard. Decl. of James A. Daire at Ex. E. What difference does it make, and why is it Clear

4   Channel's business, if Defendant has talked to other companies about renting her Billboard in the

5   event she successfully defeats Billboard's claims. It serves no purpose towards establishing its

6   claims in this lawsuit. Rather, the information is designed to give Clear Channel a competitive

7   edge in negotiations with the Defendant, and with other San Francisco property owners.

8        Furthermore, there is no good cause to allow the broader scope of permissible discovery

9   under Rule 26(b)(1). Clear Channel cannot even show how this information is in any way

10  germane to its plead claims. Therefore, they certainly cannot show that there is good cause for

11  allowing a broader scope of discovery than Rule 26(b)(1) permits. No need or particular

12  usefulness for the information presents itself in this lawsuit.

13  **B.    The Information Sought Is Also Not Discoverable Because It Is Confidential
        Financial Information Subject To The California Constitutionally Protected Right To
14      Privacy**

15       Furthermore, even if the information were relevant to Clear Channel's claims, it would be

16  still be outside the permissible scope of discovery because it is confidential information subject to

17  the privilege of privacy. Here, the information related to any agreement between Defendant and

18  ADS (or any other competitor for that matter) is sensitive financial information protected by the

19  right to privacy afforded under the California Constitution.

20       Even highly relevant, non-privileged information may be shielded from discovery if its

21  disclosure would impair a person's "inalienable right of privacy" provided by Calif. Const. Art. 1,

22  § 1. *Britt v. Sup.Ct. (San Diego Unified Port Dist.)*, 20 Cal. 3d 844, 855-856 (1978). Several

23  "zones" of privacy have been recognized, including a right of privacy that exists **as to a party's**

24  **confidential financial affairs**, even when the information sought is admittedly relevant to the

25  litigation. *Cobb v. Sup.Ct.*, 99 Cal. App. 3d 543, 550 (1979).

26       Discovery of information protected by the right to privacy is limited. "There must be a

27  compelling and opposing state interest justifying the discovery. Even when discovery of private

28

1    information is found directly relevant to the issues of ongoing litigation, it will not be

2    automatically allowed; there must be a careful balancing of the compelling need for discovery

3    against the fundamental right of privacy." *Gallio v. Conigliaro*, 33 Cal. App. 4th 592, 597 (1995);

4    *see also Davis v. Superior Court*, 7 Cal. App. 4th 1008, 1014 (1992). "The scope of any

5    disclosure must be narrowly circumscribed, drawn with narrow specificity, and must proceed by

6    the least intrusive manner." *Davis*, 7 Cal. App. 4th at 1014.

7        *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 81 (1994), sets forth in detail the

8    analytical framework for assessing claims of invasion of privacy under the state Constitution. The

9    party claiming privacy rights must have: (1) legally protected privacy interest, (2) there must be a

10   serious invasion, and (3) privacy considerations outweigh countervailing interests.

11       **1.    Defendant Has A Legally Protected Privacy Interest and Expectation of**
                 **Privacy**

12

13       First, the claimant must possess a "legally protected privacy interest." (*Hill*, 7 Cal. 4th at

14   35.) Under *Hill*, protectable privacy interests generally fall into two categories: "informational

15   privacy," protecting the dissemination and misuse of sensitive and confidential information, and

16   "autonomy privacy," preventing interference with one's personal activities and decisions.

17   California courts recognize that a party's confidential financial information (as well as the

18   financial information of third parties) is within the zone of privacy in California. *Cobb v. Sup. Ct.*,

19   99 Cal. App. 3d 543, 550 (1979).

20       Here, the financial terms of any agreement between Defendant and other competitor

21   advertisers, including ADS, contains sensitive financial information and is the product of

22   confidential negotiations between Defendant and those third parties. This is especially important

23   here, where Clear Channel is a direct competitor of ADS. Allowing Clear Channel to learn the

24   terms of the ADS agreement would allow Clear Channel to know what ADS is offering other

25   property owners and what Defendant herself would be willing to take. This information is none of

26   Clear Channel's business. Similarly, Clear Channel is not entitled to discover information related

27   to other competitors Defendant may have talked to. These are confidential financial negotiations

28   between Defendant and third parties, and Clear Channel had no basis whatsoever for demanding

301041502.1

1    discovery of this information.

2        **2.    Serious Invasion of Privacy**

3        *Hill* explains that the invasion of privacy complained of must be "serious" in nature, scope,

4    and actual or potential impact to constitute an "egregious" breach of social norms, for trivial

5    invasions afford no cause of action. (*Hill*, supra, 7 Cal.4th at p. 37.)

6        Here, the information sought is highly sensitive and private information including the

7    terms of an agreement with a Clear Channel competitor and the substance of communications

8    with Clear Channel competitors. Further, discovery of the information would give Clear Channel

9    insight into how a competitor does business and into what sort of deal Defendant may be

10   negotiating. Allowing Clear Channel to abuse the discovery process in order to obtain information

11   it would use for no other purpose than to advance its own unscrupulous tactics would be an

12   egregious breach of social norm and patently unfair.

13       **3.    Privacy Considerations Outweigh Any Countervailing Interests**

14       Having met the foregoing *Hill* criteria for invasion of a privacy interest, that interest must

15   be measured against other competing or countervailing interests in a " 'balancing test.' " (*Hill*,

16   supra, 7 Cal. 4th at p. 37). In *Valley Bank*, supra, 15 Cal. 3d at 658, the court found that to protect

17   a bank customer's privacy rights, the court employed a balancing test, "[s]triking a balance

18   between the competing considerations, … before  confidential customer information may be

19   disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to

20   notify its customer of the pendency and nature of the proceedings and to afford the customer a fair

21   opportunity to assert  his [or her] interests by objecting to disclosure, by seeking an appropriate

22   protective order, or by instituting other legal proceedings to limit the scope or nature of the matters

23   sought to be discovered." (*Valley Bank*, supra, 15 Cal. 3d at 658)

24       Here, the information sought is not directly relevant to Clear Channel's claims, which

25   hinge on a pure determination of whether it has the legal right to tear down the Billboard.

26   Information related to Defendant's communications with competitors, and documents related to

27   ADS, are certainly not directly relevant (in fact, not relevant at all) to Clear Channel's pleaded

28   claims in this lawsuit.

301041502.1

    **4.**    **Clear Channel's offer of a protective order does not alleviate any of the relevancy problems or privacy concerns prohibiting discovery of this information**

Finally, the fact that Clear Channel offered to enter into a protective order to prevent the public disclosure of any private financial information does not solve the problem here. For one, a protective order does not make irrelevant information suddenly subject to discovery. Clear Channel must first show why the information is discoverable.

Furthermore, Clear Channel is a direct competitor of ADS (as well as other competitor billboard advertisers). To allow Clear Channel to discover this information will give them the power, in this transaction and future transactions, to unfairly outbid its competitors and change its terms in order to trap property owners as they have in the past. This is not fair competition, and allowing Clear Channel to use the discovery process to achieve these ends, thereby circumventing the competitive process of negotiating and outbidding, would be unfair.

A protective order does no good when the wolf himself is the one guarding the confidences that a protective order is intended to protect.

## IV.
## CONCLUSION

The discovery which Clear Channel seeks to compel is not relevant to its claims in this lawsuit, which focus on determining whether it can tear down Defendant's Billboard once and for all. Clear Channel has not, and cannot, show why this information is relevant to its claims. However, even if Clear Channel could show this, the information would nevertheless be protected from discovery because it contains sensitive confidential financial information which Clear Channel is not entitled to, and which would give Clear Channel an unfair advantage over its competitors and in potential future negotiations with Defendant. Moreover, a protective order would do nothing in this case to alleviate these concerns. Therefore, Defendant respectfully asks that the Court deny Clear Channel's motion to compel in its entirety.

1

2

3

4    DATED: June 25, 2008              LUCE, FORWARD, HAMILTON & SCRIPPS LLP

5

6    By: _____ (for)

7        Gerald M. Murphy
         Attorneys for Defendant
8        Linda Erkelens

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**COPY**

1  Scott D. Baker (SBN 84923)
   *Email: sbaker@reedsmith.com*
2  James A. Daire (SBN 239637)
   *Email: jdaire@reedsmith.com*
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA 94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA 94120-7936

7  Telephone:    +1 415 543 8700
   Facsimile:    +1 415 391 8269
8

9  Attorneys for Plaintiff
   Clear Channel Outdoor, Inc.

ORIGINAL
FILED

DEC  4 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13  CLEAR CHANNEL OUTDOOR, INC. a     Case No.:
    Delaware Corporation,
14                                     CV  07  6138  JCS
                    Plaintiff,
                                       **COMPLAINT FOR DAMAGES AND**
15                                     **INJUNCTIVE RELIEF**
            vs.
16                                     **[JURY TRIAL DEMANDED]**
17  LINDA ERKELENS, an individual,

18                  Defendant.

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

Plaintiff Clear Channel Outdoor, Inc. ("Clear Channel") alleges as follows:

1.      This is a complaint for injunctive relief and damages for breach of contract, conversion, trespass to chattels, promissory estoppel, unjust enrichment and declaratory relief.

## JURISDICTION

2.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, and is between citizens of different states.

3.      Clear Channel seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.

4.      There is complete diversity as between Clear Channel and the Defendant Linda Erkelens ("Defendant").  Clear Channel is a corporation organized under the laws of the State of Delaware with its principal place of business at 2201 East Camelback Rd. Suite 500, Phoenix, Arizona, and therefore, is a citizen of Delaware and Arizona for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).  Defendant owns the real property at issue in this litigation, located at 1801 Turk Street, San Francisco, California.  Clear Channel is informed and believes and thereon alleges that Defendant resides in San Francisco, California.  Defendant is therefore a citizen of California for the purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

## VENUE

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and a substantial part of the events giving rise to the alleged claims in this action occurred in this judicial district.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

1

2

PARTIES

3      6.      Clear Channel is the successor-in-interest to all right, title and interest in the lease,

4    contracts and other rights referenced herein.

5

6      7.      Defendant is the current owner of the real property at 1801 Turk Street, San

7    Francisco, California (the "Turk Street Property").  Clear Channel's outdoor, general advertising

8    sign structure is located on the Turk Street Property.  The Turk Street Property and Defendant are

9    and remain subject to the lease in dispute in this case.

10

11

GENERAL ALLEGATIONS

12

13      8.      Clear Channel is in the business of outdoor advertising.  It offers advertising on

14    traditional and non-traditional advertising media, including billboard advertising, posters, street

15    furniture, mall/retail advertising, airport advertising and mobile/transit advertising.  Clear Channel

16    manages and maintains sign structures for advertising purposes throughout the world, including its

17    sign inventory in San Francisco.

18

19      9.      On September 5, 1958, the predecessor-in-interest of Clear Channel applied for and

20    obtained permit no. 214477 from the San Francisco Department of Public Works to erect a general

21    advertising sign and billboard at the Turk Street Property.  For almost fifty years, Clear Channel,

22    through its predecessors-in-interest, has maintained a general advertising sign structure on the Turk

23    Street Property.

24

25      10.      On January 1, 1984 the predecessors-in-interest of Clear Channel as Lessee and

26    Defendant as Lessor entered into a written lease ("the Lease") for the purpose of continuing to

27    maintain an advertising sign on the upper-west wall of the building at the Turk Street Property.  The

28    Lease provides in Paragraph 8 that the "*Lessee shall remain the owner of all advertising signs,*

– 3 –

1   *structures, and improvements* erected or made by Lessee, and that, notwithstanding the fact that the

2   same constitute real estate fixtures, the *Lessee shall have the right to remove said signs, structures,*

3   *and improvements* at any time during the term of the lease, or after the expiration of this Lease."

4   (emphasis added). Thus, by the terms of the Lease, Defendant expressly acknowledged Clear

5   Channel's ownership of the signs, structures and improvements and its rights to remove said signs,

6   structures and improvements. A true and correct copy of the Lease is attached hereto as Exhibit **A**.

7

8        11.    On July 2, 1990, Clear Channel's predecessor-in-interest and Erkelens' predecessor-

9   in-interest entered a written letter amendment to the Lease whereby the annual rent increased and the

10   term of the Lease increased to seven years. The letter amendment specified that "[a]ll other terms

11   and conditions of the existing lease shall remain the same." A true and correct copy of the July 2,

12   1990 letter amendment is attached hereto as Exhibit **B**.

13

14        12.    On August 21, 2002, Clear Channel and Erkelens' predecessor-in-interest agreed to

15   another written letter amendment whereby the rent increased and the term of the Lease changed to

16   five years. The letter amendment again specified that "[a]ll other terms and conditions of the

17   existing Lease Agreement dated January 1, 1984 shall remain the same." A true and correct copy of

18   the August 21, 2002 letter amendment is attached hereto as Exhibit **C**.

19

20        13.    In a letter dated May 31, 2007, Defendant sent a purported notice to Clear Channel

21   alleging that the Lease would terminate effective July 31, 2007. Defendant further asked Clear

22   Channel to "make arrangements to remove the billboard and your lock box from our gate by that

23   time." Notably, in this termination notice, Defendant recognized that the sign structure on the Turk

24   Street Property belongs to Clear Channel. In the same letter, Defendant baselessly asserted that she

25   planned to claim ownership of Clear Channel's permit no. 214477, which Defendant erroneously

26   referred to as permit no. 144724477. A true and correct copy of the letter is attached hereto as

27   Exhibit **D**.

28

DOCSSFO-12492837.5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1      14.    Clear Channel honored Defendant's request to terminate the Lease and elected to

2   remove the sign structure from the wall, as was its right under the terms of the Lease.  In accordance

3   with Clear Channel's rights under the Lease, and pursuant to Defendant's request, Clear Channel

4   applied for a permit to remove the sign structure.  In accordance with Department of Building

5   Inspection ("DBI") policy and practice, Clear Channel properly applied for a "Building Additions,

6   Alterations or Repairs" permit (the "Removal Permit").

7

8      15.    On July 18, 2007, both the Planning Department and DBI approved and issued the

9   Removal Permit in their normal course of business, authorizing Clear Channel to remove its sign

10   structure from the Turk Street Property.  A true and correct copy of the Removal Permit is attached

11   hereto as Exhibit **E**.

12

13      16.    Two days later, Clear Channel sent a letter to Defendant with a copy of the Removal

14   Permit enclosed, advising Defendant that Clear Channel would exercise its rights under the Lease

15   and remove its sign structure from the Turk Street Property commencing July 30, 2007.  Clear

16   Channel further stated that Defendant was not authorized to use Clear Channel property for any

17   purpose and that she was not authorized to retain permit no. 214477.  Clear Channel asked

18   Defendant to provide a response, if any, in writing and no later than July 24, 2007 in light of Clear

19   Channel's need to schedule equipment and personnel to remove Clear Channel's sign structure.

20   Clear Channel specifically advised Defendant that Clear Channel would deem her silence to be

21   acquiescence to Clear Channel's removal of the property.  A true and correct copy of the letter is

22   attached hereto as Exhibit **F**.

23

24      17.    On July 23, 2007, Defendant sent a letter to Clear Channel acknowledging receipt of

25   the Removal Permit and informing Clear Channel that she expected Clear Channel to repair any and

26   all damage "the installation and removal" of the sign created.  Notably, Defendant once again

27   recognized that the sign structure on the Turk Street Property was the property of Clear Channel and

28   that Clear Channel had sole authority to install and remove the sign structure.  Further, Defendant

DOCSSFO-12492837.5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  did not contest that permit no. 214477 was the property of Clear Channel. A true and correct copy

2  of Defendant's letter is attached hereto as Exhibit **G**.

3

4       18.     In reliance on Defendant's July 23, 2007 letter, Clear Channel scheduled equipment

5  and personnel to remove the sign structure at the Turk Street Property. Clear Channel diverted its

6  Operations equipment and personnel from other projects. But for Defendant's repeated written

7  permission to enter the Turk Street Property in order to remove Clear Channel's sign structure, Clear

8  Channel would have avoided the costs of scheduling the equipment and personnel to the Turk Street

9  Property and the equipment and personnel would have continued to work on other Clear Channel

10  projects without interruption.

11

12       19.     On July 25, 2007, Clear Channel sent another letter to Defendant confirming again

13  that removal of Clear Channel's sign structure would commence first thing the morning of Monday,

14  July 30, 2007. A true and correct copy of this letter is attached hereto as Exhibit **H**.

15

16       20.     On July 27, 2007, the Friday before the commencement of Clear Channel's removal

17  efforts, Defendant reversed course and filed an appeal of the Removal Permit with the Board of

18  Appeals (No. 07-128), seeking rescission of the Removal Permit. A true and correct copy of the

19  appeal is attached hereto as Exhibit **I**.

20

21       21.     In a letter dated July 26, 2007, Defendant falsely asserted that she owns permit no.

22  214477 and the right to maintain a general advertising sign at the Turk Street Property. A true and

23  correct copy of the July 26, 2007 letter is attached hereto as Exhibit **J**. Notwithstanding Clear

24  Channel's clear and unequivocal personal property rights in the sign structure, which Defendant had

25  acknowledged several times over, Defendant demanded that Clear Channel *not* remove the sign

26  structure from the Turk Street Property or perform work under the Removal Permit. Defendant

27  advised Clear Channel for the first time the she intended to appeal the Removal Permit and that

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

1 | Advertising Display Systems ("ADS"), a direct competitor of Clear Channel, would join her in the

2 | appeal.

3 |

4 | 22.    On October 17, 2007, Defendant's appeal came on for hearing before the Board of

5 | Appeals. During the hearing, the Board confined all discussion to the application and issuance of the

6 | Removal Permit. Indeed, the Board expressly declined to consider any private agreement between

7 | Clear Channel and Defendant, including the Lease, in connection with the appeal. The Board issued

8 | no substantive ruling on the appeal and instead continued the hearing until December 12, 2007. On

9 | December 4, 2007, Clear Channel terminated and surrendered the Removal Permit, thereby mooting

10 | Defendant's appeal of the Removal Permit. A true and correct copy of Clear Channel's terminating

11 | letter is attached hereto as Exhibit **K**.

12 |

13 | 23.    In light of Defendant's prior contradictory correspondence, Clear Channel asked

14 | Defendant to acknowledge in writing no later than November 16, 2007 that: (1) Defendant does not

15 | assert any claim of ownership or control over the general advertising Sign; and (2) Defendant

16 | authorizes Clear Channel to enter the Turk Street Property to remove Clear Channel's sign structure.

17 | Clear Channel further informed Defendant that, without such written confirmation, Clear Channel

18 | would assume that Defendant does assert ownership interests over Clear Channel's sign structure

19 | and intends to unlawfully interfere with Clear Channel's right to remove its sign structure. A true

20 | and correct copy of Clear Channel's November 9, 2007 letter is attached hereto as Exhibit **L**.

21 |

22 | 24.    Defendant has not provided the written confirmation that Clear Channel demanded,

23 | nor has she has she responded to Clear Channel's November 9, 2007 letter in any way. By virtue of

24 | her silence and her earlier statements and actions, Defendant has repudiated Clear Channel's rights

25 | and wrongfully exercised control over Clear Channel's property by falsely claiming that she

26 | maintains the right to Clear Channel's general advertising sign. All of Defendant's statements and

27 | actions are in derogation of Clear Channel's rights to control its personal property and to exercise its

28 | rights under the lease. Clear Channel is informed and believes and thereon alleges that all of

1   Defendant's statements and actions are intended to appropriate Clear Channel's property for the

2   benefit of ADS.

3

### FIRST CLAIM FOR RELIEF
(Breach of Written Contract)

4

5

6      25.    Clear Channel repeats and re-alleges each and every allegation in the foregoing

7   paragraphs as though fully set forth herein.

8

9      26.    Clear Channel has performed all conditions, covenants and promises required to be

10   performed by it in accordance with the terms and conditions of the Lease, except as to those

11   conditions which have been excused.

12

13      27.    By reason of Defendant's foregoing acts and omissions, including but not limited to

14   Defendant' wrongful exercise of dominion over Clear Channel's sign structure, Defendant has

15   repudiated her obligations and materially breached her obligations under the Lease.

16

17      28.    Defendant's material breaches of the Lease have irreparably injured and, unless

18   enjoined, will continue to irreparably injure, Clear Channel.  Damages alone are inadequate to

19   compensate Clear Channel for Defendant's wrongful conduct, and Clear Channel is entitled to

20   injunctive relief.  Among other things, Defendant should be enjoined from denying Clear Channel its

21   right remove the sign structure from the premises, pursuant to both the terms of the Lease and the

22   express authority granted by the Planning Department and DBI in the Removal Permit.

23

24      29.    In addition, and/or in the alternative, as a direct and proximate result of Defendant's

25   breaches of the Lease, Clear Channel has incurred extensive monetary damages in an amount to be

26   proven at the time of trial, but in all events, a sum or value far in excess of $75,000, exclusive of

27   interest and costs.

28

DOCSSFO-12492837.5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

WHEREFORE, Clear Channel prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF
(Conversion)

30.     Clear Channel repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

31.     At all times herein mentioned, Clear Channel was, and still is, the owner and was, and still is, entitled to possession of the sign structure on the Turk Street Property.

32.     Notwithstanding Clear Channel's property rights in the sign structure, Defendant has wrongfully exercised dominion over Clear Channel's property.  Defendant has denied Clear Channel its right to remove its personal property from the premises, has claimed Clear Channel's property as its own and has purported to appropriate Clear Channel's sign structure for her own financial benefit including purporting to grant rights to the sign structure to ADS, a direct competitor of Clear Channel.

33.     Clear Channel is informed and believes and thereon alleges that the foregoing actions of Defendant have been knowing, intentional, willful, and in utter disregard of Clear Channel's rights.

34.     Clear Channel has not consented to any of Defendant's misconduct and does not consent to Defendant's continued use of the sign structure or Defendant's refusal to allow Clear Channel to exercise its right to remove the sign structure.

35.     The above acts by Defendant constitute conversion.  By reason of the foregoing, Defendant has wrongfully exercised dominion over Clear Channel's personal property and, on

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

1    information and belief, will continue to do so unless the above acts, among others, are enjoined by

2    the Court.

3

4        36.    Alternatively, and/or additionally, as a direct and proximate result of Defendant's

5    conversion of the sign structure, Clear Channel has incurred extensive monetary damages in an

6    amount to be proven at trial.

7

8        37.    Defendant's misconduct is malicious, fraudulent and oppressive.  Clear Channel

9    therefore seeks punitive damages.

10

11        WHEREFORE, Clear Channel prays for relief as set forth below.

12

13                          **THIRD CLAIM FOR RELIEF**
                                (Trespass to Chattels)

14

15        38.    Clear Channel repeats and re-alleges each and every allegation in the foregoing

16    paragraphs as though fully set forth herein.

17

18        39.    At all times herein mentioned, Clear Channel was, and still is, the owner and was, and

19    still is, entitled to possession of the sign structure on the Turk Street Property.

20

21        40.    Notwithstanding Clear Channel's property rights in the sign structure, Defendant has

22    interfered with Clear Channel's use and possession of its sign structure on the Turk Street Property.

23    Accordingly, Defendant has denied Clear Channel its right to remove its personal property from the

24    premises and has claimed Clear Channel's property as its own.

25

26        41.    Clear Channel is informed and believes and thereon alleges that the foregoing actions

27    of Defendant have been knowing, intentional, willful, and in utter disregard of Clear Channel's

28    rights.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

42.    Clear Channel has not consented to any of Defendant's misconduct.

43.    The above acts by Defendant constitute trespass to chattels.  By reason of the foregoing, Defendant has interfered with Clear Channel's personal property, and, on information and belief, will continue to do so unless the above acts, among others, are enjoined by the Court.

44.    Alternatively, and/or additionally, as a direct and proximate result of Defendant's trespass to chattels, Clear Channel has incurred extensive monetary damages in an amount to be proven at trial.

WHEREFORE, Clear Channel prays for relief as set forth below.

### **FOURTH CLAIM FOR RELIEF**
(Promissory Estoppel)

45.    Clear Channel repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

46.    Defendant has explicitly acknowledged Clear Channel's ownership of the sign structure and repeatedly given Clear Channel permission to enter the Turk Street Property to remove the sign structure, constituting a clear and unambiguous promise to allow Clear Channel onto the Turk Street Property to remove its personal property without interference.

47.    Defendant has breached its clear and unambiguous promise by ultimately denying Clear Channel its right to remove its personal property from the premises and has claimed Clear Channel's property as its own.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

48.    Clear Channel has actually relied on Defendant's promise, including but not limited to scheduling equipment and personal to remove the personal property. Such reliance was both reasonable and foreseeable in light of Defendant's statements and actions.

49.    Clear Channel has suffered and is suffering unconscionable injury resulting from its reliance on Defendant's promise and injustice can only be avoided by enforcing the promise. Absent enforcement of Defendant's promise, Clear Channel's personal property shall continue to be appropriated for the benefit of ADS, a direct competitor of Clear Channel.

WHEREFORE, Clear Channel prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

50.    Clear Channel repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

51.    As a result of Defendant's actions, including but not limited to her denial of Clear Channel's right to remove its sign structure from the premises and her unauthorized possession of Clear Channel's sign structure, Defendant has been unjustly enriched in an amount to be determined at trial.

52.    Defendant's unjust enrichment comes at the expense and to the detriment of Clear Channel, the lawful owner of the sign structure. It is unconscionable and unjust for Defendant to retain possession of Clear Channel sign structure and the benefits therein.

WHEREFORE, Clear Channel prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment)

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

53.     Clear Channel repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

54.     An actual controversy has arisen and now exists between Clear Channel and Defendant concerning their respective rights in that Clear Channel contends that (a) Clear Channel is the sole owner of the sign structure on the Turk Street Property, (b) Defendant purportedly terminated the Lease and asked Clear Channel to remove said sign structure from the Turk Street Property, (c) Clear Channel has and at all relevant times herein had the right to remove said sign structure from the Property whether before or after expiration of the Lease, and (e) Defendant has materially breached the Lease, repudiated her obligations thereunder and wrongfully exercised, or purported to exercise, control over Clear Channel's sign structure.

55.     On information and belief, Defendant contests each of the allegations in the foregoing paragraph and these issues are ripe for decision.

56.     Clear Channel seeks a judicial declaration of its rights to its property and rights under the Lease.

WHEREFORE, Clear Channel prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Clear Channel prays for relief as follows:

1.      That judgment be entered in favor of Clear Channel and against Defendant on all claims;

2.      For an Order declaring that (a) Clear Channel is the sole owner of the sign structure on the Turk Street Property, (b) Clear Channel is entitled to all rights under the Lease until legally

– 13 –

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   terminated, (c) Clear Channel has the right to remove said sign structure from the property whether

2   before or after expiration of the Lease, and (d) Defendant has materially breached the Lease,

3   repudiated her obligations thereunder and has wrongfully exercised, or purported to exercise, control

4   over Clear Channel's sign structure;

5

6       3.      For an Order temporarily restraining and preliminarily and permanently enjoining

7   Defendant, her officers, directors, principals, agents, servants, employees, successors and assigns,

8   and all other persons in active concert, privity or in participation with Defendant, jointly and

9   severally, from continuing to deny Clear Channel the right to remove its sign structure from the Turk

10  Street Property;

11

12      4.      For an Order temporarily restraining and preliminarily and permanently enjoining

13  Defendant, her officers, directors, principals, agents, servants, employees, successors and assigns,

14  and all other persons in active concert, privity or in participation with Defendant, jointly and

15  severally, from taking possession of, or making use of, Clear Channel's sign structure for her own

16  benefit, and from undertaking any act designed to deprive Clear Channel of its ownership and/or

17  possessory rights in the sign structure;

18

19      5.      For an Order temporarily restraining and preliminarily and permanently enjoining

20  Defendant, her officers, directors, principals, agents, servants, employees, successors and assigns,

21  and all other persons in active concert, privity or in participation with Defendant, jointly and

22  severally, from committing any further acts of conversion or trespass to chattel with respect to Clear

23  Channel's billboard and billboard structure;

24

25      6.      For an Order temporarily restraining and preliminarily and permanently enjoining

26  Defendant, her officers, directors, principals, agents, servants, employees, successors and assigns,

27  and all other persons in active concert, privity or in participation with Defendant, jointly and

28  severally, from altering, destroying or removing all or any part of the sign structure;

DOCSSFO-12492837.5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    7.    For an Order temporarily restraining and preliminarily and permanently enjoining

2    Defendant, her officers, directors, principals, agents, servants, employees, successors and assigns,

3    and all other persons in active concert, privity or in participation with Defendant, jointly and

4    severally, from denying Clear Channel access to the billboard and billboard structure by way of

5    ingress and egress to the wall and sign structure;

6

7    8.    For an Order awarding Clear Channel restitution in the amount of Defendant's unjust

8    enrichment according to proof;

9

10    9.    For actual damages in an amount to be determined at trial;

11

12    10.    For an Order awarding penalties and exemplary damages for Defendant's wrongful

13    conduct;

14

15    11.    For any attorneys' fees and costs of suit incurred herein;

16

17    12.    For pre-judgment interest according to proof; and

18

19    13.    For such other relief as the Court deems just and proper.

20

21    DATED: December 4, 2007.

22        REED SMITH LLP

23

24    By _____
           James A. Daire
25           Attorneys for Plaintiff
           Clear Channel Outdoor, Inc.

26

27

28

DOCSSFO-12492837.5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

## DEMAND FOR JURY TRIAL

2

3    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Clear Channel Outdoor,

4  Inc. hereby demands a jury trial on all issues triable by a jury.

5

6    DATED: December 4, 2007.

7                                REED SMITH LLP

8                                By    ̶ ̶A. D.

9                                  James A. Daire
                                   Attorneys for Plaintiff
10                                 Clear Channel Outdoor, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOCSSFO-12492837.5

# EXHIBIT 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLEAR CHANNEL OUTDOOR,

        Plaintiff,

    v.

LINDA ERKELENS,

        Defendant.
_____/

No. C07-06138 MJJ

**ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

      Before the Court is Plaintiff Clear Channel Outdoor, Inc.'s ("Clear Channel") *Ex Parte* Motion For A Temporary Restraining Order And An Order To Show Cause Re Preliminary Injunction.  (Docket No. 6.)

      To succeed on a motion for a temporary restraining order, a plaintiff must demonstrate it is entitled to such preliminary relief under either one of two standards.  Under the traditional criteria, a plaintiff must show: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if the Court does not grant preliminary relief; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest (in certain cases).  *See Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006).  Alternatively, a plaintiff may establish "either a combination of probable success on the merits and the possibility of irreparable harm or that serious questions are raised and the balance of hardships tips sharply in his favor."  *Id.*  "These two formulations represent two points on a sliding scale in which the required degree of irreparable

1  harm increases as the probability of success decreases." *Oakland Tribune, Inc. v. Chronicle Publ'g*

2  *Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985). "Under any formulation of the test, [the] plaintiff

3  must demonstrate that there exists a significant threat of irreparable injury." *Id.*  In the absence of a

4  significant showing of irreparable injury, the Court need not reach the issue of likelihood of success

5  on the merits. *See id.* at 1378.

6          After review of the *ex parte* application, the Court finds that Clear Channel has failed to

7  demonstrate that there exists a significant threat of irreparable injury.  All injuries alleged by Clear

8  Channel can be adequately remedied by money damages.  Even assuming Clear Channel is correct

9  that advertising on the sign structure is a "unique" property right, or an unreplaceable economic

10  opportunity, because of San Francisco's ban on erecting new advertising signs, Defendant's alleged

11  unlawful conversion of the sign, and refusal to allow Clear Channel access to the property, is not

12  depriving Clear Channel of an ongoing right to utilize that "unique" advertising opportunity given

13  the termination of the lease between Clear Channel and Defendant.  Indeed, Clear Channel concedes

14  in its moving papers that it is seeking to access the property to ***remove*** the sign structure, not to

15  continue to use it for advertisements.  Accordingly, the actual injury that Clear Channel identifies,

16  on the record before the Court, is limited to an alleged inability to exercise rights under the lease

17  agreement to remove the sign structure, and alleged competitive injury to the extent a direct

18  competitor is permitted by Defendant to operate or profit from use of the sign structure.  Either kind

19  of injury, if ultimately proven, can be adequately remedied by monetary damages.

20          Because Clear Channel has not made a significant showing of irreparable injury, the Court

21  need not reach the issue of likelihood of success on the merits to resolve the motion.  The Court

22  **DENIES** Clear Channel's *ex parte* request for a temporary restraining order and for an order

23  showing cause.

24  **IT IS SO ORDERED.**

25  Dated: December 7, 2007

26  _____
     MARTIN J. JENKINS
     UNITED STATES DISTRICT JUDGE

27

28

United States District Court
For the Northern District of California

2