1   Scott D. Baker (SBN 84923)
    *Email: sbaker@reedsmith.com*
2   James A. Daire (SBN 239637)
    *Email: jdaire@reedsmith.com*
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:    +1 415 543 8700
    Facsimile:    +1 415 391 8269
8
    Attorneys for Plaintiff
9   Clear Channel Outdoor, Inc.

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13  CLEAR CHANNEL OUTDOOR, INC., a          Case No.: C 07-06138 SBA (JL)
    Delaware Corporation,
14                                          **CLEAR CHANNEL OUTDOOR, INC.'S**
                      Plaintiff,            **REPLY BRIEF IN SUPPORT OF MOTION**
15                                          **TO COMPEL PRODUCTION OF**
         vs.                                **DOCUMENTS, FURTHER RESPONSES**
16                                          **AND DEPOSITION OF LINDA**
    LINDA ERKELENS, an individual,          **ERKELENS**
17
                      Defendant.            **[Fed.R.Civ.P. 37]**
18
                                            Date:      July 9, 2008
19                                          Time:      9:30 a.m.
                                            Place:     Courtroom F, 15th Floor
20
                                            Compl. Filed: December 4, 2007
21                                          Trial Date: November 10, 2008

22                                          Hon. James Larson

23

24

25

26

27

28

Case No.: C 07-06138 SBA (JL)                                    DOCSSFO-12519637.3

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

## I.    INTRODUCTION

To distract from her failure to comply with basic discovery obligations, Ms. Erkelens attempts to put Clear Channel Outdoor, Inc. ("Clear Channel") in the miscast and clichéd role of corporate bully. It is Ms. Erkelens, not Clear Channel, who refuses to produce non-privileged and relevant written records of communications between her and non-party Advertising Display Systems 1, LLC ("ADS"), despite several weeks of meet and confer efforts by Clear Channel and her promise to amend her responses. This is not acceptable.

Clear Channel initiated this lawsuit to get its sign structure back. Among other claims, it alleges that Ms. Erkelens has converted its sign structure for the benefit of ADS. It seeks production of two documents that Ms. Erkelens erroneously logged as "privileged," other relevant communications with ADS, and further responses and documents in response to its Requests For Production Numbers 3, 4, 6, 16, 29, 30 and 32. Accordingly to Ms. Erkelens, Clear Channel is not entitled to the discovery it seeks because the discovery is irrelevant and infringes her supposed right to financial privacy. Neither is true. At bottom, Ms. Erkelens refuses to produce these materials because she wants to prevent Clear Channel's access to documents relevant to proving its claims.

## II.    LEGAL ANALYSIS

### A.    Ms. Erkelens' Logging Of The Withheld Documents As "Privileged" Constitutes An Admission That They Are Otherwise Discoverable

Much of Ms. Erkelens' Oppositions focuses on two documents – a letter and an agreement with ADS – that Ms. Erkelens identified and logged as "privileged" with her initial responses. [Declaration of James A. Daire ("Daire Decl."), Exh. D.]

Ms. Erkelens' inclusion of these documents on her "privilege" log constituted an admission that the documents are otherwise discoverable, and she cannot assert now that they are irrelevant. *See* Fed.R. Civ.P. 26(b)(5) (requiring a party claiming privilege to log documents "when

1    a party withholds information otherwise discoverable.") In her initial responses, Ms. Erkelens

2    asserted boilerplate relevancy objections to every single Clear Channel discovery request.

3    Importantly, though, she did not contend that the documents she logged were irrelevant. Instead, she

4    notified Clear Channel that she was withholding relevant documents by logging them as privileged

5    and claiming the benefit of two non-existent privileges: "proprietary" and "confidential." If the

6    documents were irrelevant and outside the scope of discovery, the documents would not have

7    appeared on a "privilege" log of otherwise discoverable information at the time of the initial

8    responses. *After* Clear Channel pointed out that the documents could not be withheld because of the

9    "privilege of proprietary" or the "privilege of confidentiality," Ms. Erkelens' counsel concocted a

10   relevancy objection to their production. The difficulty of addressing Ms. Erkelens' moving target

11   objections are precisely why a responding party must state all objections at the time of its initial

12   responses. Putting the documents on a privilege log, as Ms. Erkelens did, constituted a concession

13   that the documents are otherwise discoverable. Ms. Erkelens has waived any objection to the

14   relevancy of these two documents.

15

16   **B.     All of The ADS Documents Clear Channel Seeks Are Within The Scope of Discovery**

17

18           If Ms. Erkelens perfunctory raising of the relevancy objection in her discovery

19   responses suffices to avoid a waiver of the objection as to the purportedly "privileged" documents,

20   the objection should be overruled. The documents, like any other communications with ADS

21   relating to the sign structure, lease, or permit, are within the scope of discovery.

22           Ironically, Ms. Erkelens baselessly accuses Clear Channel of citing an "incorrect

23   standard" for the scope of permissible discovery, then immediately constructs her own incorrect

24   standard. Under Federal Rule of Civil Procedure 26(b)(1), each party has the right to discovery any

25   nonprivileged matter that is relevant to any parties' claim or defense. *See* Fed.R.Civ.P 26(b)(1). In

26   addition, the court may permit discovery of information relevant to the subject matter of the

27   litigation for good cause shown. *Id.* Thus, matters relevant to "claims and defenses" *and* matters

28   relevant to the "subject matter" of litigation (albeit with good cause shown) are within the scope of

1   discovery.

2           Moreover, Ms. Erkelens rightly concedes that there is no bright line distinguishing

3   between "relevant to claims and defenses" and "relevant to the subject matter." [Opposition p.5.]

4   As a practical matter, courts routinely focus on the limits of permissible discovery contained in

5   Federal Rule of Civil Procedure 26(b)(2) instead of attempting "to divine some bright line difference

6   between 'claims and defenses' and 'subject matter.'" *Thompson v. Department of Housing & Urban*

7   *Develop.*, 199 F.R.D. 168, 171 (D. MD 2001).  Here, the Court need not get mired in the thin

8   difference between the two:  the withheld agreement and letter are both "relevant to claims and

9   defenses" and "relevant to the subject matter" of the litigation, and are squarely within the scope of

10  discovery.

11

12      **1.      Clear Channel Has A Right To Discover The ADS Documents It Seeks Because**

13              **They Are Relevant To Clear Channel's Claims**

14

15          Accordingly to Ms. Erkelens, the withheld documents and any other related

16  communications with ADS are irrelevant because Clear Channel's claims "hinge entirely on whether

17  or not Clear Channel has the right to remove the Billboard."  [Opp. p. 6.]  Clear Channel's "right to

18  remove the Billboard," however, is just one disputed issue in this case.  There are others.  As Clear

19  Channel previously explained to Ms. Erkelens during the meet and confer process and as set forth in

20  its Motion to Compel, other disputed issues make the discovery at issue directly relevant to Clear

21  Channel's claims.  For example, Clear Channel claims that Ms. Erkelens has converted Clear

22  Channel's sign structure for ADS.  [Docket No. 1 (Complaint), ¶¶ 30-37.]  Specifically, Clear

23  Channel claims that Ms. Erkelens "has purported to appropriate Clear Channel's sign structure for

24  her own financial benefit including purporting to grant rights to the sign structure to ADS, a direct

25  competitor of Clear Channel."  [Id. ¶ 32.]  Ms. Erkelens denies this claim.  [Docket No. 20

26  (Answer), ¶ 32.]  The letter and the agreement between Ms. Erkelens and ADS are dated

27  approximately one month before Ms. Erkelens barred Clear Channel from entering her property to

28  take down Clear Channel's sign structure.  Both are probative as to whether she converted the sign

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

1   for ADS' benefit.

2           One example is sufficient to establish the relevance of the withheld documents, but

3   there are more. The letter and the agreement are also relevant to Clear Channel's trespass to chattels

4   claim, for the same reasons set forth above. In addition, the letter and agreement are relevant to

5   Clear Channel's claim that it is entitled to restitution in the amount of Ms. Erkelens' unjust

6   enrichment. [Docket No. 1 (Complaint Prayer for Relief), ¶ 8.] If Ms. Erkelens is being unjustly

7   compensated for giving ADS rights to Clear Channel's property, as Clear Channel has alleged (and

8   as Ms. Erkelens denies), Clear Channel has a right to discover this information. Ms. Erkelens cannot

9   simultaneously deny Clear Channel's claim that she has converted Clear Channel's property for

10  ADS' benefit, but withhold all written communications with ADS on the grounds that they are

11  "irrelevant."

12

13  **2.       There Is Also Good Cause For Ms. Erkelens To Produce The Withheld**

14  **Documents And Other Relevant Communications With ADS**

15

16          Clear Channel is entitled to production of these documents as a matter of right, but

17  there is also good cause for the Court to order production of the ADS related documents. There is no

18  dispute that the documents are within Ms. Erkelens' possession, as she logged them as "privileged"

19  with her initial responses. Ms. Erkelens does not (and cannot) contend that production of the

20  withheld documents and any other relevant communications with ADS would be unduly burdensome

21  or taxing on her.

22          On the other hand, the documents are highly relevant to the subject matter of the

23  dispute. More specifically, the subject matter of the dispute includes whether Ms. Erkelens has

24  improperly purported to grant rights to Clear Channel's property to ADS. The documents, which

25  Ms. Erkelens describes as a "letter" and an "agreement" – dated the virtual eve of her termination of

26  the Clear Channel lease – are probative as to whether Ms. Erkelens granted any rights in the sign to

27  ADS.

28          Indeed, the documents are relevant to the subject matter of the litigation even under

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

1   Ms. Erkelens' theory of the case. Ms. Erkelens believes that the prior Board of Appeals hearing on

2   Clear Channel's removal permit is somehow relevant both to this discovery motion and to the

3   subject matter of the litigation. [Opposition p. 2.] Clear Channel's position is that the Board of

4   Appeals proceeding is not relevant to this dispute because the Board of Appeals expressly declined

5   to consider the parties' private agreement and because the Board of Appeals never issued a

6   substantive ruling. [Docket No. 1 (Complaint), ¶ 22.] If the Board of Appeals proceeding is

7   relevant subject matter, however, then so are Ms. Erkelens' communications with ADS. By her own

8   admission, Ms. Erkelens intended for ADS to join her in appealing the removal permit. [Docket No.

9   1 (Complaint), Exh. J ¶ 2.] Clear Channel should be allowed non-privileged discovery into the

10  factual impetus for this joint appeal because Ms. Erkelens seeks to make it an issue at trial.

11

12  **C.    Ms. Erkelens' Right To Privacy Objection Does Not Justify Withholding The ADS**

13  **Documents Clear Channel Seeks**

14

15         Before filing this motion, Clear Channel repeatedly invited Ms. Erkelens to explain to

16  Clear Channel why she believed production of the withheld documents and all other

17  communications with ADS affects her right to privacy. Ms. Erkelens, though, continued to baldly

18  assert the "constitutional right to privacy" without explaining the nature of this purported right. [*See*

19  Daire Decl., Exhs. C, H, N.] Now, for the first time, Ms. Erkelens identifies a right to privacy in

20  "confidential financial affairs" which purportedly excuses her from complying with her discovery

21  obligations. [Opposition p. 8.] Ms. Erkelens has no constitutional right to financial privacy in the

22  requested documents, and the Court should order her to produce the withheld documents and any

23  other written communications with ADS.

24

25  **1.    Ms. Erkelens Has No Right To Privacy In The Documents Clear Channel Seeks**

26

27         Ms. Erkelens has no right to privacy in the withheld letter, agreement or any other

28  ADS communication. Initially, Ms. Erkelens fundamentally mischaracterizes the nature of the

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

1  discovery Clear Channel seeks.  Ms. Erkelens claims that the "financial terms of any agreement

2  between Defendant and other competitor advertisers" is the product of confidential negotiations.

3  Clear Channel, however, does not seek production of "any agreement" with all competitors.  Clear

4  Channel seeks a narrow production of the agreement, letter and other relevant communications with

5  ADS only.

6            Notably, Mrs. Erkelens also never offers an explanation as to what she believes

7  makes the written records or agreement relating to ADS "confidential" in the first place.  The

8  withheld letter and agreement between Ms. Erkelens and ADS may or may not contain a

9  confidentiality clause; Ms. Erkelens has opted to keep both Clear Channel and the Court in the dark.

10  Ms. Erkelens' suggestion that agreements between sign owners and land owners are routinely kept

11  secret is also false.  Clear Channel, for example, publically attached its lease agreement with Ms.

12  Erkelens to the Complaint.  [Docket No. 1 (Complaint), Exhs. A-C.]

13            Ms. Erkelens' belated financial privacy objection is also nonsensical in light her of

14  initial responses to Clear Channel's discovery.  When Clear Channel requested communications

15  regarding the lease with "any third party." Ms. Erkelens did not assert any right to privacy, financial

16  or otherwise, in connection with her response.  [*See* Daire Decl., Exh. C, p.4 (Req. No. 4).]  But

17  when Clear Channel posed the same request narrowly confined to ADS – itself a third party – Ms.

18  Erkelens suddenly asserted the right to privacy as to all communications.  [*See* Daire Decl., Exh. B,

19  p.4 (Req. No. 3).]  Not surprisingly, Ms. Erkelens makes no attempt to explain this contradiction,

20  because there is no legitimate explanation.  Ms. Erkelens has baselessly asserted her right to

21  financial privacy only in written communications with ADS in an attempt to prevent Clear Channel

22  from proving that she converted its property for ADS' benefit.

23            Moreover, Ms. Erkelens' bare assertion that the documents are "confidential" does

24  not establish, or even support, the conclusion that production of the documents would violate her

25  right to financial privacy.  True, persons may have limited rights to financial privacy in closely-held

26  financial information such as bank records or income tax returns.  *See Valley Bank of Nevada v.*

27  *Superior Court*  15 Cal. 3d 652, 658 (1975)*; Premium Service Corp. v. Sperry & Hutchinson Co.*

28  511 F. 2d 225, 229 (9th Cir. 1975).  "What Defendant herself would be willing to take" in a lease

1    agreement for Clear Channel's property, however, is not closely-held financial information. [Opp.

2    At 7.] Ms. Erkelens cites no authority (and Clear Channel is aware of none) for the remarkable

3    proposition that a constitutional right to privacy lies in relevant written communications and a

4    relevant lease agreement entered into by a party to the litigation. *See Estate of John Gallio*, 33 Cal.

5    App. 4th 592, 594 (1995) (production of a living person's will precluded by right to privacy and

6    California Family Code); *Hill v. Nat'l Collegiate Ath. Ass'n*, 7 Cal. 4th 1, 35 (1994) (setting forth the

7    elements of the substantive right to privacy under California law); *Davis v. Superior Court* 7 Cal.

8    App. 4th 1008, 1020 (1992) (plaintiff who brings garden variety motor vehicle personal injury action

9    has right to privacy in irrelevant medical records); *Cobb v. Superior Court,* 99 Cal. App. 3d 543,

10   566-67 (1979) (where the net worth of defendant is sufficient to establish his ability to pay a claim,

11   defendant's financial statement may be produced instead of answering detailed questions dealing

12   with assets, liabilities, property ownership and cash on hand). None of these decisions suggest that

13   Ms. Erkelens' constitutional right to financial privacy would be violated if she were ordered to

14   produce the documents Clear Channel seeks.

15          Ms. Erkelens' argument that that production of information purportedly sensitive to

16   ADS violates *her* right to privacy is also misplaced. Ms. Erkelens' has no alleged interest or right in

17   the finances of ADS. Accordingly, she cannot raise an alleged competitive injury to ADS as a

18   violation of her personal right to privacy. And, despite Ms. Erkelens' consistent

19   mischaracterizations, Clear Channel is not broadly seeking the private financial records of ADS. It

20   is seeking a single letter, agreement and any other written communications relevant to prove its

21   claims against Ms. Erkelens and to prove the amount of restitution she owes.

22

23   **2.     Any Purported Privacy Rights Would Have Been Protected By The Protective**

24   **Order Ms. Erkelens Refused To Entertain**

25

26          As Ms. Erkelens acknowledges, the right to privacy is far from absolute, and absent a

27   serious invasion the Court should compel her production of the documents and responses at issue.

28   [Opp. p. 8.] Here, there is no serious invasion of any right to privacy.

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

1    Before filing this motion, Clear Channel drafted and offered to stipulate on three

2    different occasions to a proposed two-tier protective order.  Ms. Erkelens, though she claims that her

3    withheld documents are "confidential," refused to even consider the proposed protective order.

4    [Daire Decl., Exh. K.]  Protective orders are routinely used to protect allegedly confidential

5    documents from unnecessary disclosure after they are produced.  *See, e.g., A. Farber and Partners,*

6    *Inc. v. Garber*, 234 F.R.D. 186, 192 (C.D. Cal. 2006) ("[p]laintiff has proposed a two-tier protective

7    order to protect defendant[]'s private financial information and defendant [] must produce these

8    records to plaintiff subject to the protective order.") (citations omitted.); *Valley Bank of Nevada*, 15

9    Cal. 3d at 658 (1975) (before confidential customer information could be disclosed, bank must take

10   reasonable steps to protect nonparty customers by, among other things, seeking an appropriate

11   protective order).  Here, a protective order would have protected the withheld documents from

12   unnecessary disclosures and prevented any alleged injury to Ms. Erkelens' purported privacy rights.

13   That Ms. Erkelens refused to even entertain the proposed protective order further contradicts her

14   claim that the documents Clear Channel seeks are "confidential."

15   Ms. Erkelens' curious defense of her refusal to consider the proposed protective order

16   is that "[a] protective order does no good when the wolf himself [*i.e.* Clear Channel] is the one

17   guarding the confidences that a protective order is intended to protect."  [Opp. at 9.]  To state the

18   obvious, Clear Channel does not guard the confidences that a protective order is intended to protect;

19   the Court does.  Ms. Erkelens' suggestion that Clear Channel would violate a court order, like her

20   conclusory allegation that the withheld documents are confidential, is not credible.  The Court

21   should order production without restriction.

22

23   **D.    Although Ms. Erkelens Ignores Them, Clear Channel Is Entitled To Further Responses**

24   **And Documents In Response To Request Numbers 29, 30 and 32**

25

26   Notably, Ms. Erkelens fails to discuss any of her deficient responses to Clear

27   Channel's "non-ADS" discovery requests, including Request Numbers 29, 30, and 32, on which

28   Clear Channel has also moved to compel.

1    Request Numbers 29 and 30 seek documents related Ms. Erkelens' activities with

2    respect to other signs and her ownership and rental rights with respect to those signs. These

3    documents are relevant to Clear Channel's conversion claim, its trespass to chattel claim and its

4    request for punitive damages, among other things.

5    Request Number 32 seeks documents related to Ms. Erkelens' acquisition of the

6    property on which Clear Channel's property still sits. Ms. Erkelens argues that she should not be

7    bound by a "technical term" in the parties' lease. [Opposition p. 3.] The material responsive to

8    Request Number 32 is plainly relevant to Ms. Erkelens' knowledge of the Lease at the time she

9    acquired the Turk Street Property, and Clear Channel is entitled by right to this discovery. Ms.

10   Erkelens apparently does not dispute that the information sought in these requests is relevant.

11   Accordingly, Clear Channel is entitled to all of these documents, or at least a definitive response that

12   they do not exist, as a matter of right. *See* Fed.R.Civ.P. 26(b)(1).

13

14                        III.    CONCLUSION

15

16   Rather then attempting to justify the unjustifiable, Mrs. Erkelens calls Clear Channel

17   names and stands by her refusal to produce relevant and non-privileged documents. Ms. Erkelens'

18   baseless relevancy and financial privacy objections, and her failure to even address the "non-ADS"

19   discovery requests, confirms that she and her counsel have wasted this Court's time by opposing

20   without merit Clear Channel's legitimate discovery requests.

21

22        DATED: July 2, 2008.

23                                       REED SMITH LLP

24

25                              By    /s/ James A. Daire
                                      James A. Daire
26                                    Attorneys for Plaintiff
                                      Clear Channel Outdoor, Inc
27

28

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION

1

**Certificate of Service**

2

    The undersigned hereby certifies that all counsel of record who are deemed to have

3

consented to electronic service are being served this 2nd day of July 2008, with a copy of this

4

document via the Court's CM/ECF system.  I certify that all parties in this case are represented by

5

counsel who are CM/ECF participants.

6

7

                                       _____/s/_____

8

                                         James A. Daire

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLEAR CHANNEL OUTDOOR, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS, FURTHER RESPONSES AND DEPOSITION