Scott D. Baker (SBN 84923)
*Email: sbaker@reedsmith.com*
James A. Daire (SBN 239637)
*Email: jdaire@reedsmith.com*
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936

Telephone:     +1 415 543 8700
Facsimile:     +1 415 391 8269

Attorneys for Plaintiff
Clear Channel Outdoor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br>  vs.<br><br>LINDA ERKELENS, an individual,<br><br>         Defendant. | Case No.:  C 07-06138 SBA (JL)<br><br>**CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Fed.R.Civ.P. 56]**<br><br>Date:      September 23rd, 2008<br>Time:     1 p.m.<br>Place:    Courtroom 3, 3rd Floor<br><br>Compl. Filed:  December 4, 2007<br>Trial Date:  November 10, 2008<br><br>Hon. Saundra Brown Armstrong |

**RE-SUBMITTED FOR FILING IN THE PUBLIC RECORD**

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 23, 2008, at 1:00 p.m., in Courtroom 3 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612-5212, Plaintiff Clear Channel Outdoor, Inc. ("Clear Channel") will and hereby does move the Court for partial summary judgment, pending the Court's order on the accompanying *ex parte* application. The motion cut-off date in this action is 9/16/2008 and this is an even-numbered action. Pursuant to the Court's Scheduling Information, Clear Channel submits an *ex parte* application along with its motion papers requesting that the motion cut-off deadline be extended to the Court's next available hearing date on September 23, 2008.

Clear Channel moves the Court for summary judgment of its first (breach of contract), second (conversion) and sixth (declaratory relief) claims for relief on the ground that that the plain language of the contract between the parties establishes as a matter of law that: (1) Clear Channel is the owner of the signs, structures, and improvements at 1801 Turk Street; and (2) the parties have voluntarily agreed by virtue of their contract that Clear Channel has the right to voluntarily remove (or to not remove) the signs, structures and improvements at its sole discretion, including the right to retain all permits necessary to effectuate the removal. In addition, Clear Channel seeks an injunction preventing Defendant Linda Erkelens, and her officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Defendant, jointly and severally, from denying Clear Channel access to the sign structure for the purpose of completing Clear Channel's voluntary removal.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of James A. Daire, the Declaration of Patrick Powers, all pleadings and paper on file in this action and such further evidence that may be submitted to the Court at or before the hearing.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

    A.  The Parties ...................................................................................................2

    B.  Clear Channel Acquires The Sign Structure At 1801 Turk Street And The Sole Right To Remove It .............................................................................3

    C.  Ms. Erkelens Purchases 1801 Turk Street Subject To Clear Channel's Ownership Of The Sign ...............................................................................4

    D.  Ms. Erkelens Terminates The Parties' Agreement And Asks Clear Channel To Remove Its Sign, But Agrees To Sell The Sign To ADS .......5

    E.  Clear Channel Obtains The Requisite Removal Permit With Ms. Erkelens' Thanks .........................................................................................6

    F.  Erkelens Appeals The Removal Permit And Prohibits Clear Channel From Removing Its Sign Structure ..............................................................7

III.  LEGAL ANALYSIS ..............................................................................................8

    A.  Summary Judgment Is Appropriate Because No Disputed Material Facts Exist And Contract Interpretation Is A Question Of Law ............................8

    B.  The Only Plausible Interpretation Of The Contract Is That Clear Channel Owns The Sign And May Choose To Remove It .........................................9

        1.  The Language Of The Parties' Contract Establishes Clear Channel's Unequivocal Ownership Of And Right To Remove The Sign Structure......................................................................................9

        2.  The Parties' Conduct Further Supports The Common Sense Interpretation That Clear Channel Owns The Sign Structure And Has The Right To Remove It ...................................................................11

    C.  San Francisco's Land Use Ordinances Are Not Material To Clear Channel's Contract Rights .........................................................................13

    D.  There Is No Credible Dispute That Mr. Erkelens Is In Breach Of The Lease ..........................................................................................................16

        1.  Ms. Erkelens' Last Minute Objection To Clear Channel's Removal And Claim That She Owns The Sign Is A Breach ..........................16

        2.  Declaratory Relief Is An Appropriate Remedy For Ms. Erkelens' Breach of Contact ...........................................................................16

    E.  The Undisputed Facts Also Demonstrate The Ms. Erkelens Has Converted The Sign ...................................................................................17

**TABLE OF CONTENTS
(CONTINUED)**

**Page**

1.    Ms. Erkelens' Agreement With ADS Establishes That She Intends To Take Clear Channel's Sign ........................................................................17

2.    Clear Channel Is Also Entitled To Remove Its Sign Structure Under Applicable Conversion Law ...............................................................18

F.    Clear Channel Is Also Entitled To An Injunction Preventing Ms. Erkelens From Denying Clear Channel Access To Remove The Sign Structure.....................18

IV .    CONCLUSION..........................................................................................................20

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986).................................................................................8

Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.,
7 Cal. 4th 503, 28 Cal. Rptr. 2d 475 (1994) ....................................16

Burlesci v. Petersen,
68 Cal. App. 4th 1062 (1998) ..............................................................17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986).................................................................................8

Clark v. Tallmadge,
23 Cal. App. 2d 703 (1937) ................................................10, 11, 16

County of Los Angeles v. State Dep't of Public Health,
158 Cal. App. 2d 425 (1958) ...............................................................18

Crestview Cemetery Assn. v. Dieden,
54 Cal. 2d 744 (1960) ...........................................................................12

Earle v. Kelly,
21 Cal. App.480 (1913) .........................................................................10

Express Media Group, LLC v. Express Corp.,
2007 U.S. Dist. LEXIS 34800 ............................................................18

Founding Members of the Newport Beach Country Club v. Newport Beach Country Club,
109 Cal. App. 4th 944 (2003) ...............................................................9

Knox v. Wolfe,
73 Cal. App. 2d 494 (1946) .................................................................19

Nat'l Diversified Servs. v. Bernstein,
168 Cal. App. 3d 410 (1985) ...............................................................18

Oakdale Village Group v. Fong,
43 Cal. App. 4th 539 (1996) ................................................................17

Pearl Investment Co. v. City and County of San Francisco,
774 F.2d 1460 (9th Cir. 1985) .............................................................14

Southwest Diversified v. Brisbane,
652 F. Supp. 788 (N.D. Cal. 1986)......................................................14

Sullivan v. Massachusetts Mut. Life Ins. Co.,
611 F.2d 261 (9th Cir. 1979) .................................................................8

Swenson v. File,
3 Cal. 3d 389 (1970) .............................................................................15

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

Tillis v. Western Fruit Growers, Inc.,
    44 Cal. App. 2d 826 (1941) ........................................................................................9

Wise v. Southern Pac. Co.,
    223 Cal. App. 2d 50, 35 Cal. Rptr. 652 (1963).......................................................16

**STATUTES**

Cal. Civ. Code § 1636........................................................................................................9

Cal. Civ. Code § 1639........................................................................................................9

Cal. Civ. Code § 1646........................................................................................................8

Cal. Civ. Code § 3379......................................................................................................18

Cal. Civ. Code § 3380......................................................................................................18

San Francisco Planning Code § 611 ............................................................................6, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 ................................................................................................................8

Fed. R. Civ. P. 56(c) .........................................................................................................8

Witkin, Summary of California Law, Contracts, § 749 ...................................................12

Witkin, Summary of California Law, Contracts, § 853 ...................................................16

Witkin, Summary of California Law, Torts, § 700 ..........................................................18

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Clear Channel Outdoor, Inc. ("Clear Channel") initiated this lawsuit against rental property owner Linda Erkelens to recover its sign structure at Ms. Erkelens' 1801 Turk Street property in San Francisco.

The material facts are not in dispute.  Clear Channel and Ms. Erkelens are the successors-in-interest to a written lease agreement to erect and maintain advertising signs on the upper-west wall of the building at 1801 Turk Street ("the Lease").  The parties agreed that, as the lessee, Clear Channel: (1) would remain the owner of all advertising signs, structures, and improvements (collectively, the "sign structure") made by Clear Channel; and (2) would have the right to remove the sign structure at any time during the Lease, or after the expiration of the Lease.  After notifying Clear Channel that she intended to terminate the Lease effective July 31, 2007, Ms. Erkelens told Clear Channel in writing to arrange to remove "the billboard" before the date of termination.  In reliance on her directive – as well as its authority under the terms of the Lease – Clear Channel obtained the requisite permit from the City of San Francisco to remove the sign structure (the "Removal Permit") before the termination date.

Meanwhile, and unbeknownst to Clear Channel, Ms. Erkelens had signed another agreement with Advertising Display Systems 1, LLC ("ADS"), Clear Channel's direct competitor.  That agreement purports to give ADS ownership over all advertising structures at 1801 Turk Street that are "placed or used" by ADS.  In the ADS agreement, Ms. Erkelens also agrees to use her "best efforts" to deliver possession of the existing sign structure to ADS, directly contradicting her existing contractual obligations to Clear Channel.  A month after asking Clear Channel to remove its sign structure, Ms. Erkelens forbade Clear Channel from entering her property to take down the sign structure.  Without explanation, Ms. Erkelens claimed that the Removal Permit was invalid, that she

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

1    owned the sign structure, and that Clear Channel did not have the right to remove it.

2

3        Although not material to this dispute, the reason for this subterfuge stems from San

4    Francisco's regulations and ordinances relating to general advertising signs, which since 2002 have

5    prohibited the erection of new general advertising signs within the City.  In recent years, San

6    Francisco has enacted detailed and elaborate ordinances which, among other things, reaffirm that

7    once a sign is voluntarily removed by its owner, it cannot be replaced without violating the

8    prohibition.  Fortunately, the Court need not inject itself into interpreting these ordinances, because

9    Clear Channel seeks a declaration of its rights under the Lease – not under San Francisco's local

10   land use ordinances.

11

12       A plain reading of the Lease demonstrates that Clear Channel owns the sign structure and

13   may (or may not) remove it upon termination of the Lease.  Simply put, the sign structure was never

14   Ms. Erkelens' to sell.  Accordingly, Ms. Erkelens is liable for both breach of contract and conversion

15   of the sign structure.  Moreover, California law allows a party recovering for conversion, at its

16   election, to specifically recover the personal property at issue if it still exists. Thus, Clear Channel is

17   entitled to: (1) Clear Channel is the owner of the signs, structures, and improvements at 1801 Turk

18   Street; (2) the parties have voluntarily agreed by virtue of their contract that Clear Channel has the

19   right to voluntarily remove (or to not remove) the signs, structures and improvements at its sole

20   discretion, including the right to retain all permits necessary to effectuate the removal; and (3) an

21   injunction preventing Defendant from denying Clear Channel access to the sign structure for the

22   purpose of completing its voluntary removal.

23

24                        **II.        FACTUAL BACKGROUND**

25

26   **A.        The Parties**

27

28       Defendant Linda Erkelens is a licensed broker in real estate transactions of approximately 30

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

years.  In whole or in part, she owns four apartment buildings and a mini-storage business in the City of San Francisco.  [Declaration of James A, Daire ("Daire Decl."), Exh. A (July 14, 2008 Deposition of Linda Erkelens ("Erkelens Depo.")) pp. 11:17–20, 17:10-19; 26:12-17.]  Ms. Erkelens and her husband have at various times done business as Macintosh Property Services and still use the name in connection with their own property management business.  [Daire Decl., Exh. A (Erkelens Depo.) pp. 21:10–20.]  In August 2004, Ms. Erkelens and her husband purchased the real property at 1801 Turk Street.  [Daire Decl., Exh. A (Erkelens Depo.) p. 29:4– 11.]

Plaintiff Clear Channel is in the business of outdoor advertising.  Among other things, Clear Channel manages and maintains sign structures for advertising purposes throughout the world, including its sign inventory in San Francisco.  Included in its San Francisco inventory is the sign structure that Clear Channel's predecessor erected on the property located at 1801 Turk Street.  Clear Channel and its predecessor have owned and maintained the sign structure at 1801 Turk Street, without interruption, since at least 1958.  [Complaint ¶ 9; Answer ¶ 9; Declaration of Patrick Powers ("Powers Decl.") ¶ 2.]

**B.      Clear Channel Acquires The Sign Structure At 1801 Turk Street And The Sole Right To Remove It**

On or about January 1, 1984, Clear Channel's predecessor-in-interest (Foster & Kleiser) and Erkelens' predecessor-in-interest (Los Dos Investment Co.) entered into the Lease "for the purpose of erecting and maintaining advertising signs" on the upper-west wall of the building at the Turk Street Property.  [Daire Decl., Exh. A (Erkelens Depo.) pp. 88:9 – 89:11, Exh. 6; Powers Decl. ¶ 2, Exh. A.]  The Lease provides that the sign structure is and shall remain Clear Channel's sole property and may be removed by Clear Channel at any time before or after the expiration of the Lease.  Paragraph 8 states in relevant part:

> Lessee [Clear Channel] shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee [Clear Channel], and that, notwithstanding the fact

that the same constitute real estate fixtures, the Lessee [Clear Channel] shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease.  [*Id.*]

Absent proper termination, the Lease automatically renewed for successive five year terms. On July 2, 1990, Clear Channel's predecessor-in-interest (Patrick Media Group, Inc.) and Erkelens' predecessor-in-interest (Los Dos Investment Co.) increased the annual rent and changed the term of the Lease to seven years. [Daire Decl., Exh. A (Erkelens Depo.) pp. 88:9 – 89:11, Exh. 6; Powers Decl. ¶ 2, Exh. A.]  The parties also specified that "[a]ll other terms and conditions of the existing lease shall remain the same."  [*Id.*]

On August 21, 2002, Clear Channel and Erkelens' predecessor-in-interest (Maven Investments) agreed to another amendment whereby the rent increased and the term of the Lease changed to five years. [*Id.*]  The parties again specified in writing that "[a]ll other terms and conditions of the existing Lease Agreement dated January 1, 1984 shall remain the same."  [*Id.*] Thus, the parties again affirmed Clear Channel's ownership of all "signs, structures or improvements" throughout the life of Lease and never amended Clear Channel's unequivocal right to remove all "signs, structures or improvements" during or after expiration of the Lease.

**C.    Ms. Erkelens Purchases 1801 Turk Street Subject To Clear Channel's Ownership Of The Sign**

In 2004, Ms. Erkelens and her husband began looking for a mid-1920s apartment building in the marina style to add to their residential and commercial property interests.  [Daire Decl., Exh. A (Erkelens Depo.) pp. 29:19 –31:23.]  They became interested in 1801 Turk Street because, in Ms. Erkelens' judgment, it would attract the kind of tenants to the kind of building she likes to own.  [*Id.*] Before purchasing 1801 Turk Street, Ms. Erkelens reviewed all of her predecessor-in-interest's relevant financial documents, including the Lease with Clear Channel.  [Daire Decl., Exh. A (Erkelens Depo.) p. 43:3-14.]  Ms. Erkelens did not consult with a real estate agent, a lawyer, or

anyone else in connection with her review of the relevant financial documents. [Daire Decl., Exh. A (Erkelens Depo.) p. 30:15-20; 44:24 – 46:2.] Ms. Erkelens was confident of her own abilities to review and pass judgment on the relevant financial materials, including the Lease, in light of her many years of owning rental properties. [Daire Decl., Exh. A (Erkelens Depo.) pp. 44:24 – 46:2.] Prior to closing on 1801 Turk Street, she read the Lease and needed no clarification regarding the Lease from any third party. [Daire Decl., Exh. A (Erkelens Depo.) pp. 47:11-48:19.]

After her review of financial documents, Ms. Erkelens and her husband closed on 1801 Turk Street for a purchase price of $ 3.97 million on August 17, 2004. [Daire Decl., Exh. A (Erkelens Depo.) p. 29:4-22.] Ms. Erkelens concluded that the purchase price made sense based on the income and expenses from 1801 Turk Street and the cost of the loan used to finance the purchase. [Daire Decl., Exh. A (Erkelens Depo.) pp 59:18-60:11.] Clear Channel's sign structure was not material to any of these variables. In fact, during the calendar year before her purchase, the total gross income from the property – including rent from tenants, parking, storage, laundry charges, and renting space for the billboard– was $286,639. [Daire Decl., Exh. A (Erkelens Depo.) pp. 55:24-57:9.] Of that amount, the gross income from renting the land for Clear Channel's sign $1,974. [*Id.*] Indeed, according to Ms. Erkelens, she had no plans for the real estate used for the sign structure prior to the close of escrow. [Daire Decl., Exh. A (Erkelens Depo.) p. 49:11-17.]

**D.    Ms. Erkelens Terminates The Parties' Agreement And Asks Clear Channel To Remove Its Sign, But Agrees To Sell The Sign To ADS**

Nonetheless, on May 31, 2007, Erkelens sent a notice to terminate the Lease effective July 31, 2007 ("the Termination Notice"). [Daire Decl., Exh. A (Erkelens Depo.) pp. 101:19-102:10; 104:2-7.] Consistent with her obligations under the agreement, Erkelens specifically acknowledged that Clear Channel owned the sign structure as well as the right to remove the sign structure. Erkelens asked Clear Channel to "make arrangements to remove the billboard and [] lock box from our gate by [July 31, 2007]." [*Id.*; Daire Decl., Exh. A (Erkelens Depo.) pp. 97:3-14, Exh. 8.]

1    Unbeknownst to Clear Channel Ms. Erkelens had signed another agreement with ADS two

2    days before which purports to give ADS ownership over "all advertising structures" "placed or used"

3    by ADS at 1801 Turk Street.  [Daire Decl., Exh. A (Erkelens Depo.) pp. 163:17-165:13, Exh. 17.]

4    The ADS agreement also purports to obligate Ms. Erkelens to use her "best efforts" to deliver

5    possession of the existing sign structure to ADS.  [*Id.*]  At the time, Ms. Erkelens did not disclose to

6    Clear Channel that it had "leased" Clear Channel's sign structure to ADS.  [Daire Decl., Exh. A

7    (Erkelens Depo.) pp. 157:11-13.]

8

9    **E.    Clear Channel Obtains The Requisite Removal Permit With Ms. Erkelens' Thanks**

10

11    In response to the Termination Notice, Clear Channel chose to remove the sign structure

12    from the Turk Street Property, as was its right under the Lease.  In order to lawfully remove the sign

13    structure, Clear Channel applied to the Department of Building Inspection ("DBI") for a permit to

14    remove it.  DBI issued the Removal Permit on July 18, 2007.  [Complaint ¶ 15; Answer ¶ 15.]  Two

15    days later, Clear Channel sent a letter to Erkelens along with a copy of the Removal Permit.  [Daire

16    Decl., Exh. A (Erkelens Depo.) pp. 110:18-112:1, Exh. 9.]  In the letter, Clear Channel advised

17    Erkelens that it would exercise its rights to remove its sign structure from the Turk Street Property

18    commencing July 30, 2007.  [*Id.*]  In addition, Clear Channel informed Erkelens that, under the San

19    Francisco Planning Code, the sign structure could not be rebuilt once Clear Channel removed it.[1]

20    [*Id.*]

21

22    In light of Clear Channel's need to schedule equipment and personnel to remove the sign

23    structure, it asked Erkelens to provide a response, if any, no later than July 24, 2007 and advised

24    _____

25         1    The San Francisco Planning Code provides in relevant part:

26    A sign which is voluntarily destroyed or removed by its owner or which is required by law to be removed may be
restored only in full conformity with the provisions of this Code….A general advertising sign that has been removed

27    shall not be reinstalled, replaced, or reconstructed at the same location, and the erection, construction, and/or installation
of a general advertising sign at that location to replace the previously existing sign shall be deemed to be a new sign in

28    violation of Section 611(a) of this Code….[Request For Judicial Notice ("RJN"), Exh. B.]

Erkelens that Clear Channel would deem her silence to be acquiescence to Clear Channel's removal of the property, which she herself had originally requested. [*Id.*] In a July 23, 2007 letter, Erkelens acknowledged receipt of the Removal Permit. [Daire Decl., Exh. A (Erkelens Depo.) pp 112:16-114:21, Exh. 10.] Notably, she raised no objection to the Removal Permit or offered any comment on the City's ban on new general advertising signs. [*Id.*] To the contrary, Erkelens thanked Clear Channel for sending the letter and Removal Permit to her. [*Id.*]

There is more. Erkelens also informed Clear Channel that she expected it to repair any and all damage "the installation and removal" of the sign created. [*Id.*] Again, Erkelens explicitly recognized that the sign structure was the property of Clear Channel and that Clear Channel has sole authority to install and remove the sign structure. [*Id.*]

## F.    Erkelens Appeals The Removal Permit And Prohibits Clear Channel From Removing Its Sign Structure

On July 26, 2007, however, Erkelens did an about face and sent a letter to Clear Channel informing it that she intended to appeal the Removal Permit before the San Francisco Board of Appeals, an administrative body which, among other things, reviews building permits like the one Clear Channel obtained. [Complaint ¶21, Exh. J; Answer ¶ 21.] In the letter, Erkelens failed to offer any reason for the appeal and did not explain why Erkelens had earlier acknowledged the Removal Permit with her thanks. [*Id.*] Although Erkelens had previously authorized Clear Channel to enter her property and remove the sign, she purported to "suspend[] any prior authorization for [Clear Channel] to remove the sign structure from the property." [*Id.*] And contrary to her earlier acknowledgment of Clear Channel's unequivocal right to remove the sign structure, Erkelens now "forb[ade] [Clear Channel] from interfering with her entitlements to maintain general advertising signage there." [*Id.*]

1    Importantly, when the San Francisco Board of Appeals heard Erkelens' appeal of the

2  Removal Permit, it expressly declined to consider any private agreements between the parties.

3  [Complaint ¶ 22; Answer ¶ 22.]  Subsequently, and in light of the Board of Appeals declining

4  authority to interpret the Lease, Clear Channel terminated the Removal Permit and initiated this

5  lawsuit.  [*Id.*]  Thus, the parties' dispute now centers squarely on interpretation of the Lease, which

6  the Board of Appeals explicitly declined to consider.

7

8                              III.    **LEGAL ANALYSIS**

9

10  **A.     Summary Judgment Is Appropriate Because No Disputed Material Facts Exist And**

11          **Contract Interpretation Is A Question Of Law**

12

13    Summary judgment is "an integral part of the Federal Rules as a whole, which are designed

14  'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*,

15  477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  Summary judgment is appropriate where no

16  genuine and disputed issues of material fact remain, and the movant is entitled to prevail as a matter

17  of law.  Fed. R. Civ. Proc. 56(c); *Celotex*, 477 U.S. at 322-23.  A disputed fact is material only

18  where, under applicable substantive law, it may affect the outcome of the case.  *Anderson v. Liberty*

19  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is proper where, as here, the legal effect

20  or construction of a contract is at issue.  *See Sullivan v. Massachusetts Mut. Life Ins. Co.*, 611 F.2d

21  261, 264 (9th Cir. 1979) (the district court's ruling on a contract integration issue involved questions

22  of law, suitable for disposition on summary judgment).[2]

23

24

25

26  _____

27  2       California state substantive law applies to interpretation of the Lease here.  There is no choice of law provision
    in the Lease, and California substantive law applies to commercial real estate leases made and performed in California.
28  *See* Cal. Civ. Code § 1646.

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

**B.    The Only Plausible Interpretation Of The Contract Is That Clear Channel Owns The Sign And May Choose To Remove It**

**1.    The Language Of The Parties' Contract Establishes Clear Channel's Unequivocal Ownership Of And Right To Remove The Sign Structure**

Clear Channel's ownership of the sign structure and right to remove it are unambiguously set forth in the parties' written contract.  Under California law, a contract "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ. Code § 1636.  Although California Civil Code uses the phrase "mutual intention," courts look to the parties' expressed intent under an objective standard. Subjective intent is irrelevant.  *See, e.g., Founding Members of the Newport Beach Country Club v. Newport Beach Country Club*, 109 Cal.App.4th 944, 955, (2003) (under objective standard, right to make first offer for purchase of club stock to organization "then in existence" was clear on its face, and extrinsic evidence showing that subjective intent was that right of first offer was to be granted to founding members as group was inadmissible).  Where, as here, a contract is reduced to writing, the expressed intention of the parties is to be ascertained from the writing alone, if possible.  *See* Cal. Civ. Code § 1639; *Tillis v. Western Fruit Growers, Inc.*, 44 Cal.App.2d 826, 831 (1941) ("where a contract has been reduced to writing the instrument measures the rights, duties and obligations of the parties.").  A written contract should be interpreted so as to give effect to every part, and the words of written contract should be understood in their ordinary and popular sense absent a contrary expressed intent.  *See* Cal. Civ. Code § 1639.

Here, the Court need only interpret Paragraph 8 of the parties' Lease, which establishes that Clear Channel owns the sign structure at issue.  Paragraph 8 states that "[Clear Channel] shall remain the owner of all advertising signs, structures, and improvements erected or made by [Clear Channel]." [Daire Decl., Exh. A (Erkelens Depo.) pp. 88:9 – 89:11, Exh. 6; Powers Decl. ¶ 2, Exh. A.]  The provision that Clear Channel "shall remain" the owner of the sign structure means that

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

Clear Channel owned it before entering the contract with Ms. Erkelens' predecessor-in-interest and would continue to own it through the life of the contract. Indeed, Ms. Erkelens now concedes, as she must, that Clear Channel owns the sign structure (though she still refuses to let Clear Channel exercise its right to remove). [Daire Decl., Exh. A (Erkelens Depo.) p. 114:16-115:6.] No other interpretation of this provision is reasonable.

Paragraph 8 also establishes that Clear Channel has the right to remove its sign structure. Paragraph 8 states that "[Clear Channel] shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease." The ordinary meaning of this provision gives Clear Channel the sole right to take all necessary steps to complete the removal, including obtaining necessary San Francisco permits and entering Ms. Erkelens' property for the limited purpose of taking the sign down. As above, no other interpretation of this provision is plausible.

It is well-settled that such a provision gives Clear Channel the sole right to remove the sign structure. *See Clark v. Tallmadge*, 23 Cal.App.2d 703, 706-707 (1937) (lessee has right to remove property affixed to the land as lessee's personal property because of express agreement); *Earle v. Kelly*, 21 Cal.App.480, 483 (1913) (same). In *Clark*, for example, the court awarded possession of personal property to the lessee on the basis of a contractual right to remove. There, the plaintiff ranch owner entered a written lease agreement with a corporation to use her land as a fur farm. *Clark* 23 Cal.App.2d at 708. The lease provided in relevant part:

> (3) Any new buildings constructed upon said property subsequent to the date hereof or prior to the termination of the lease are to be the property of the lessees and are subject to removal at the termination of the lease.

> (4) Said improvements which may be placed upon said property by the lessees may consist of fox kennels, fencing, etc. *Id.* at 705.

Three years before the expiration of the lease term, the lessee failed to timely pay rent for the

1   land, and possession reverted to the ranch owner. Soon after, the lessee sold the kennels and fences

2   to a successor-in-interest. *Id.* at 704. When the lessee attempted to remove the kennels and fences,

3   the ranch owner prevented the lessee from coming onto the land and filed a lawsuit. The ranch

4   owner sought a declaratory judgment to prevent the lessee from taking the kennels and fences. *Id.* at

5   704-705. The ranch owner argued that the original lessee's failure to pay rent extinguished its right

6   to remove the improvements and that the lessee never had the right to remove because the definition

7   of "buildings" in clause 3 did not include the "improvements" in clause 4. *Id.* at 705-707. The trial

8   court rejected the ranch owner's interpretation of the lease and entered declaratory judgment in favor

9   of the lessee's successor-in-interest. *Id.*

11      On appeal, the court affirmed judgment for the lessee, determining that the lease provided

12   that the lessee was entitled to remove the improvements at the termination of the lease, whether by

13   expiration of the term or by failure to pay rent, and that no other interpretation was reasonable. In

14   addition, the court rejected the ranch owner's argument that "improvements" in clause 4 was outside

15   the definition of "buildings" in clause 3. Accordingly, the lessee had the sole right to remove all if

16   the kennels and fences. *Id.* at 704-706.

18      The right to remove provision here is similar to the provision at issue in *Clark*, except that

19   the right to remove provision here removes *any* ambiguity about what Clear Channel can remove.

20   The Lease provides that Clear Channel may remove "all advertising signs, structures, and

21   improvements erected or made by [Clear Channel]." There is no dispute that Clear Channel

22   maintained the sign structure at 1801 Turk Street for almost fifty years. [Complaint ¶ 8, Answer ¶8.]

23   Accordingly, Clear Channel has the unequivocal contractual right to remove the sign structure.

25      **2.      The Parties' Conduct Further Supports The Common Sense Interpretation That**

26              **Clear Channel Owns The Sign Structure And Has The Right To Remove It**

28      The Court need not look further than the four corners of the Lease to establish that Clear

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

1   Channel owns the sign structure and may (or may not) remove it at the termination of the Lease.  If

2   the Court were to look beyond the Lease to the parties' subsequent conduct, however, it would only

3   confirm this common sense interpretation.  "Acts of the parties, subsequent to the execution of the

4   contract and before any controversy has arisen as to its effect, may be looked to in determining the

5   meaning" of a contract.  WITKIN, SUMMARY OF CALIFORNIA LAW, CONTRACTS, § 749.  "This rule of

6   practical construction is predicated on the common sense concept that 'actions speak louder than

7   words.'  Words are frequently but an imperfect medium to convey thought and intention.  When the

8   parties to a contract perform under it and demonstrate by their conduct that they knew what they

9   were talking about the courts should enforce that intent."  *Crestview Cemetery Assn. v. Dieden*, 54

10  Cal.2d 744, 754 (1960).

11

12          Here, the parties' actions before the expiration of the Lease all support Clear Channel's

13  interpretation.  Indeed, Ms. Erkelens ceded total control of the sign structure to Clear Channel during

14  the term of the Lease.  For example, in or about November 2005, Ms. Erkelens read an article that

15  the City of San Francisco required all billboards to have a posted permit and dimensions.  [Daire

16  Decl., Exh. A (Erkelens Depo.) pp. 73:20 – 75:1.]  Ms. Erkelens could have posted the permit and

17  dimensions herself, but she did not.  Instead, she contacted Clear Channel and told it to post the

18  permit and dimensions.  It never occurred to Ms. Erkelens to put up the permit and dimensions

19  herself.  *Id.*  Moreover, Ms. Erkelens did not restrict Clear Channel's access to her real property in

20  any way.  [Daire Decl., Exh. A (Erkelens Depo.) pp. 78:9 – 79:20.]  Clear Channel was free to

21  change the advertising copy on the sign structure at any time.  [*Id.*]  And Clear Channel and its

22  predecessors– not Ms. Erkelens – has paid all property taxes incurred by the sign structure at 1801

23  Turk Street since the erection of the sign structure.  [Powers Decl. ¶ 2.]  These actions are wholly

24  consistent with Clear Channel's ownership of the sign structure.

25

26          Moreover, before the present dispute, Ms. Erkelens also did not object to Clear Channel

27  obtaining a permit for the sign structure.  In 2005 or 2006, Ms. Erkelens hired a contractor to paint

28  the building at 1801 Turk Street, which required temporarily taking down the sign structure.  [Daire

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

1  Decl., Exh. A (Erkelens Depo.) pp. 80:6–84:24.] Clear Channel, not Ms. Erkelens or her contractor,

2  obtained the permit. [*Id.*] Ms. Erkelens did not pay for the permit or obtain a copy of the permit at

3  the time of the painting project. [*Id.*] According to Ms. Erkelens, she considered dealing with the

4  sign structure part of the "minutia" required to run her rental properties. [Daire Decl., Exh. A

5  (Erkelens Depo.) p. 107:7-24.]

6

7          Indeed, until her deal with ADS required her to use her "best efforts" to deliver Clear

8  Channel's sign structure to ADS, Ms. Erkelens continued to act consistent with Clear Channel's

9  right to remove the sign structure. On May 31, 2007, Erkelens sent to Clear Channel a notice

10  terminating the Lease. Again, Erkelens specifically acknowledged that Clear Channel owned the

11  sign structure as well as the right to remove the sign structure. Erkelens asked Clear Channel to

12  "make arrangements to remove the billboard and [] lock box from our gate by [July 31, 2007]."

13  [Daire Decl., Exh. A (Erkelens Depo.) p. 97:3-14, Exh. 8; Complaint ¶ 13, Exh. D; Answer ¶ 13.]  In

14  response, and just as it had in earlier times, Clear Channel obtained a permit to remove the sign

15  structure. [Complaint ¶ 15; Answer ¶ 15.] Clear Channel provided a copy of the permit to Ms.

16  Erkelens, and she thanked Clear Channel for providing the permit. [Daire Decl., Exh. A (Erkelens

17  Depo.) pp. 110:18-112:1, Exh. 9; pp 112:16-113:4, Exh. 10.] Not until July 26, 2007, after getting a

18  better deal on rent from ADS, did Ms. Erkelens raise any objection to Clear Channel exercising its

19  right to remove the sign structure. [Complaint ¶21; Answer ¶ 21.]

20

21  **C.      San Francisco's Land Use Ordinances Are Not Material To Clear Channel's Contract**

22  **          Rights**

23

24          Ms. Erkelens cannot credibly argue that Paragraph 8 of the parties' contract is susceptible to

25  any interpretation other than that Clear Channel owns the sign structure and has the sole right to

26  remove it. As a result, Clear Channel anticipates that Ms. Erkelens will urge the Court to ignore the

27  Lease and instead consider the land use regulations of San Francisco's local ordinances. The Court

28  should decline this invitation.

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

1    By way of immaterial background, in March 2002 –over two years before Ms. Erkelens

2  purchased the real property at 1801 Turk Street – the City's voters adopted Proposition G (codified

3  at Planning Code Section 611), which prohibits the erection of new general advertising signs in San

4  Francisco.  [RJN, Exh. A.]  The prohibition is clear:  "[n]o new general advertising signs shall be

5  permitted at any location within the City as of March 5, 2002" except on motor vehicles or in the

6  public right-of-way as permitted by local law.  [*Id.*]  In 2006, the City amended the Planning Code

7  to, among other things, provide specific examples of sign maintenance which would not run afoul of

8  Proposition G, including "alterations of a structural nature required to reinforce a part or parts of a

9  lawfully existing sign to meet the standards of seismic loads and forces of the Building Code, to

10  replace a damaged or weathered signboard, to ensure safe use and maintenance of that sign, to

11  remediate hazardous materials, or any combination of the above alterations."   [RJN, Exh. B.]  The

12  City also, however, distinguished maintenance from voluntary removal and replacement of a general

13  advertising sign, which is prohibited.[3]

14

15    San Francisco's local land use ordinances are not material for purpose of this Motion.  As an

16  initial matter, the City's administrative agencies have primary jurisdiction over the interpretation of

17  local land use regulations such as Proposition G.  *Southwest Diversified v. Brisbane*, 652 F. Supp.

18  788, 791 (N.D. Cal. 1986) (the "Ninth Circuit has repeatedly held that 'land-use planning questions

19  touch a sensitive area of social policy' into which the federal courts should not lightly intrude.'")

20  *citing Pearl Investment Co. v. City and County of San Francisco*, 774 F. 2d 1460, 1463 (9th Cir.

21  1985).  More importantly, the only issue before the Court for the purpose of this motion is

22  interpretation of the parties' Lease, not the subsequently enacted Proposition G or any other local

23  ordinance.

24

25

---

26  [3]    Specifically, "[a] general advertising sign that has been removed shall not be reinstalled, replaced, or
reconstructed at the same location, and the erection, construction, and/or installation of a general advertising sign at that

27  location to replace the previously existing sign shall be deemed to be a new sign in violation of Section 611(a) of this
Code."  [RJN, Exh. B.]

28

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

The City's myriad general advertising sign regulations are also irrelevant to the contract interpretation issue because they were enacted after execution of the agreement. Laws enacted subsequent to the execution of an agreement are not deemed part of the agreement unless the language of the agreement clearly indicates that the parties intend to be bound by future laws. *See, e.g., Swenson v. File*, 3 Cal.3d 389, 393 (1970). In *Swenson*, for example, a partnership agreement made in 1960 contained a covenant restricting competition by a retiring partner within a 20-mile radius of any partnership office existing on the date of his or her retirement. *Id.* at 391. In 1960, this covenant was invalid under state statute. In 1961, the statute was revised to permit countywide covenants. *Id.* at 392. A few weeks later, the retiring partner withdrew from the partnership and set up a business within the county. The court held that the 1960 version of the statute applied to the partnership agreement. Thus, the covenant remained unenforceable because it was unenforceable at the time of the partnership agreement. *Id.*

Here, Clear Channel is not asking the Court to deem San Francisco's land use ordinances part of the Lease, and the Court need not inject itself into interpretation of those ordinances. Changes to San Francisco's land use ordinances do not make Clear Channel's ownership and right to remove its sign illegal or unenforceable. Clear Channel has owned the sign structure and had the enforceable right to remove it at all times, regardless of the land use regulations of San Francisco's ordinances. Put simply, Clear Channel's rights were not unenforceable before the City's voters passed Proposition G, and they are not unenforceable now.

Further, the undisputed fact is that Ms. Erkelens bought the property *after* the City of San Francisco enacted its prohibition on new sign structures and *after* reading the Lease. Accordingly, she bought the property subject to Clear Channel's right to takes its sign structure. The City's voters adopted Proposition G –which prohibits the erection of new general advertising signs in San Francisco – in March 2002. Over two years later, Ms. Erkelens purchased 1801 Turk Street. Before she bought the property, she reviewed the entire Lease and relied on her own expertise to pass judgment on the relevant financial materials, including the Lease, in light of her years of owning

1  rental properties.[4]  [Daire Decl., Exh. A (Erkelens Depo.) pp. 44:24 – 46:2.]

2

3  **D.    There Is No Credible Dispute That Mr. Erkelens Is In Breach Of The Lease**

4

5      **1.    Ms. Erkelens' Last Minute Objection To Clear Channel's Removal And Claim**

6          **That She Owns The Sign Is A Breach**

7

8      Given the only common sense interpretation Lease and the undisputed facts, Ms. Erkelens

9  breached the Lease.  Specifically, and contrary to Clear Channel's contractual rights, she demanded

10 that Clear Channel *not* remove the sign structure before the termination of the Lease.  [Answer ¶ 21,

11 Daire Decl., Exh. A (Erkelens Depo.) pp. 162:24-163:16.]  In addition, she claimed that she, not

12 Clear Channel, owned the sign structure.  This conduct, in whole or in part, is in breach of the Lease.

13 *See Wise v. Southern Pac. Co*., 223 Cal.App.2d 50, 60, 35 Cal. Rptr. 652, 657-58 (1963) (breach can

14 be the result of  the defendant's specific acts or conduct); *disapproved on other grounds*, *Applied*

15 *Equip. Corp. v. Litton Saudi Arabia, Ltd*., 7 Cal.4th 503, 510, 28 Cal. Rptr. 2d 475 (1994).

16 Accordingly, Clear Channel is entitled to an appropriate remedy for Ms. Erkelens' breach.

17

18      **2.    Declaratory Relief Is An Appropriate Remedy For Ms. Erkelens' Breach of**

19          **Contact**

20

21      Ms. Erkelens' conduct since terminating the Lease more than justifies the declaratory relief

22 Clear Channel seeks.  "The remedy of declaratory relief is often used, either alone or with a demand

23 for other relief" in a breach of contract action.  WITKIN, SUMMARY OF CALIFORNIA LAW,

24 CONTRACTS, §853 (available remedies).  *See, e.g. Clark* 23 Cal.App.2d. at 706-707.

25 _____

4      As it turned out, Ms. Erkelens' confidence was justified.  Indeed, her due diligence demonstrated that the right
26 to keep Clear Channel's sign structure was not at issue during escrow for the 1801 Turk Street purchase. In the year prior
to her purchase, the income from renting Clear Channel space for its sign was only approximately .6% of the property's
27 total gross income.  It is clear that Ms. Erkelens never purchased the right to keep the sign structure at 1801 Turk Street –
Clear Channel already owned it.

28

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

Here, Ms. Erkelens has barred Clear Channel from entry to her property and claimed that Clear Channel has no right to remove the sign. Worse, she signed an agreement with ADS, Clear Channel's direct competitor, attempting to give ADS ownership over all advertising structures at 1801 Turk Street that are "placed or used" by ADS. [Daire Decl., Exh. A (Erkelens Depo.) pp. 163:19-165:13, Exh. 17.] In the ADS agreement, Ms. Erkelens agrees to use her "best efforts" to deliver possession of the existing sign structure to ADS. [*Id.*] In the absence of an unambiguous declaration of Clear Channel's right to remove its sign structure under the Lease, Ms. Erkelens purported obligation to ADS would require her to turn Clear Channel's property – which Ms,. Erkelens does not own – to Clear Channel's competitor.

**E.     The Undisputed Facts Also Demonstrate The Ms. Erkelens Has Converted The Sign**

**1.     Ms. Erkelens' Agreement With ADS Establishes That She Intends To Take Clear Channel's Sign**

There is also no question that Ms. Erkelens has converted Clear Channel's sign structure and intends to hand it over to ADS. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages resulting from the conversion. *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1065 (1998); *Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543-545 (1996). There is no credible dispute that each of these elements is present here. First, as set forth above, Clear Channel owns the sign structure and has the sole right to remove it under Paragraph 8 of the Lease. Second, Ms. Erkelens erroneously claims that she owns the sign and is interfering with Clear Channel's right to remove it. Third, Clear Channel has suffered damages. In addition to damages incurred by Clear Channel from being deprived of the sign structure itself from the termination of the Lease to the present, Ms. Erkelens has entered an agreement to transfer total ownership of the sign to ADS, Clear Channel's direct competitor, with a substantial windfall to Ms. Erkelens. [Daire Decl., Exh. A (Erkelens Depo.) pp. 163:19-165:13, Exh. 17.]

**2.    Clear Channel Is Also Entitled To Remove Its Sign Structure Under Applicable Conversion Law**

Clear Channel anticipates that Ms. Erkelens will argue that Clear Channel should be limited to monetary damages for her conversion of Clear Channel's sign structure, rather than a judgment that would authorize Clear Channel to remove the sign structure. Not so. If Ms. Erkelens were correct, a tortfeasor could convert a plaintiff's personal property without fear of having to return the property. California law does not tolerate this nonsensical result. Under California state conversion law, an injured party may *specifically recover* the property at issue, provided that the property still exists. *See* Cal. Civ. Code §§ 3379, 3380. And it is the injured party – not the tortfeasor – who may choose between the alternative remedies of recovery of the specific property or damages. WITKIN, SUMMARY OF CALIFORNIA LAW, TORTS, § 700. *See Nat'l Diversified Servs. v. Bernstein*, 168 Cal.App.3d 410, 418 (1985) (the owner's remedies include specific recovery of the property, *or* its present value, plus damages for the period of its detention; "the unsuccessful party must deliver the property if possible and has no option to pay for it and keep it."); *see also Express Media Group, LLC v. Express Corp.*, 2007 U.S. Dist. LEXIS 34800, *12 (granting motion for partial summary judgment of conversion; plaintiffs entitled to return of their domain name under California Civil Code section 3380.) In this case, and for the purpose of this motion, Clear Channel seeks a judgment providing for the recovery of its sign structure. The issue of any remaining monetary damages is for a later date.

**F.    Clear Channel Is Also Entitled To An Injunction Preventing Ms. Erkelens From Denying Clear Channel Access To Remove The Sign Structure**

Clear Channel is also entitled to an injunction preventing Ms. Erkelens from denying Clear Channel access to her real property for the limited purpose of removing the sign structure. An injunction is permissible, and often advisable, in conjunction with a declaratory judgment. *See County of Los Angeles v. State Dep't of Public Health*, 158 Cal.App.2d 425, 445 (1958); *see also*

1    *Knox v. Wolfe*, 73 Cal.App.2d 494, 505-506 (1946).  In *Knox*, a lessee sought declaratory relief

2    based on its contractual right to remove certain chattel from the lessor's real property.  *Id.* at 497-

3    498.  The trial court granted declaratory judgment of possession of the personal property to the

4    lessee pursuant to lessee's right to remove.  The trial court also entered an injunction restraining the

5    lessor from interfering with the lessee's recovery of the property and the lessor appealed.  *Id.* at 505-

6    506.  The appellate court affirmed the injunction because of lessee's right to remove.  "[I]njunctive

7    relief was necessary to a complete determination of the controversy.  [Lessee's] tenancy having been

8    terminated, his right to remove the fixtures … was immediate."  *Id.*

9

10          As in *Knox*, an injunction here is appropriate.  The injunction Clear Channel seeks would

11   prevent Ms. Erkelens' further interference with Clear Channel's sole right to remove its sign

12   structure.  There is no dispute that Ms. Erkelens disputed the legitimacy of Clear Channel's first

13   Removal Permit, forbade Clear Channel from entering her property to complete removal of the sign

14   structure, and has still not allowed Clear Channel on the property for the limited purpose of

15   removing the sign structure.  Clear Channel is entitled by contractual right to an injunction to

16   guarantee that it can take down its sign structure once it obtains the necessary permit to remove it.

17

18          ///

19

20

21

22          ///

23

24

25

26          ///

27

28

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT

# IV.    CONCLUSION

Clear Channel's ownership rights in the sign structure and right to remove are plainly set forth in the Lease.  In addition, Ms. Erkelens has acknowledged both before and after this dispute that Clear Channel owns the sign structure.  Ms. Erkelens is unable to seriously dispute liability for her attempt to wrest ownership of this sign structure from Clear Channel.  Clear Channel is therefore entitled to a judicial declaration of its rights under the Lease in addition to an injunction to prevent further interference from Clear Channel's completion of the removal.

DATED:  August 6, 2008.

REED SMITH LLP

By    /s/ James A. Daire
    James A. Daire
    Attorneys for Plaintiff
    Clear Channel Outdoor, Inc

CLEAR CHANNEL OUTDOOR, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 11th day of August 2008, with this document via the Court's CM/ECF system.  I certify that all parties in this case are represented by counsel who are CM/ECF participants.

_____/s/_____
James A. Daire

**Meet and Confer Certification**

I certify pursuant to ¶ 5 of Judge Armstrong's Standing Order that the parties have met and conferred by telephone regarding this motion.

_____/s/_____
James A. Daire