Gerald M. Murphy, State Bar No. 99994
Andrew S. Azarmi, State Bar No. 241407
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Tel:    415.356.4600
Fax:   415.356.4610
E-mail: gmurphy@luce.com
E-mail: aazarmi@luce.com

Attorneys for Defendant
LINDA ERKELENS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>LINDA ERKELENS, an individual,<br><br>            Defendant. | Case No. C 07-06138 SBA<br><br>**DEFENDANT LINDA ERKELEN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    To be determined<br>Time:   To be determined<br>Place:   Courtroom 3, 3rd Floor<br><br>Complaint Filed:  December 4, 2007<br>Trial Date:       November 10, 2008<br><br>Hon. Saundra Brown Armstrong |

301044693.1

Case No. C 07-06138 SBA
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF DEFENDANT LINDA ERKELENS

PLEASE TAKE NOTICE that on September 23, at 1:00 p.m., in Courtroom 3 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612-5212, Defendant Linda Erkelens ("Defendant" or "Erkelens") will and hereby does move for summary judgment. The motion cut-off date in this action is September 16, 2008, and this is an even-numbered action. Pursuant to the Court's Scheduling Information, Erkelens submits an ex parte application along with its motion papers requesting that the motion cut-off deadline be extended to the Court's next available hearing date on September 23, 2008.

Erkelens moves the Court for summary judgment of all Clear Channel's causes of action on the ground that the portion of the lease between Clear Channel and Erkelens ("the Lease") that is material to this lawsuit is unenforceable as a matter of California law. The pertinent provision in the Lease purports to give Clear Channel the right to remove the advertising sign that has been located on Erkelens' property since 1958 (the "Billboard"). The provision relating to ownership and removal of the Billboard is unenforceable because the relevant San Francisco Planning Code (the "Code") provisions that were in place at the time the Lease was entered into have changed such that the Code now imposes a city-wide ban on the construction of any new advertising signs and prohibits the replacement of lawfully existing signs. As a result, the current Lease no longer embodies the intent of the parties when they entered into the Lease and instead adds substantial burdens and unforeseen economic detriments and imposes the forfeiture of land use rights to maintain a non-conforming use to Erkelens, which were never intended in the Lease. For that reason, the Lease provision relating to ownership and removal of the Billboard is unenforceable as a matter of law.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 and is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Andrew S. Azarmi, all pleadings and papers on file in this action and such further evidence that may be submitted to the Court at or before the hearing.

Dated: August 12, 2008          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

                                By: _____
                                    Attorneys for Defendant
                                    LINDA ERKELENS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTS & PROCEDURAL HISTORY ............................................................................... 2

    A. The Billboard and the 1081 Turk Street Property. ................................................... 3

    B. Erkelens Terminates Her Lease With Clear Channel. .............................................. 3

    C. Clear Channel Obtains Removal Permit And Attempts To Abandon Erkelens' Right To Advertise On The Property. ...................................................... 4

    D. Erkelens' Appeals The Issuance of The Removal Permit ........................................ 5

    E. Clear Channel Files Its Complaint And Its TRO Application Is Denied By Judge Jenkins. .......................................................................................................... 5

    F. Clear Channel's Removal Permit Is Revoked By The Board Of Appeal ................ 5

III. ARGUMENT ....................................................................................................................... 6

    A. Summary Judgment Is Appropriate Because No Disputed Material Facts Exist And Contract Interpretation Is A Question Of Law ........................................ 6

    B. Under California Law, Contracts Must Be Interpreted To Avoid An Interpretation That Will Make The Contract Harsh, Unjust, or Inequitable ............ 7

    C. Under California Law, Laws Or Ordinances Enacted Subsequent To The Execution Of A Contract Which Add Burdens Or Responsibilities On The Parties To The Contract Do Not Become Part Of The Contract ............................. 7

    D. Due To The Subsequent Changes In The Planning Code, Allowing Clear Channel To Enforce the Lease Provision Relating To Removal Of The Billboard Would Unfairly Impose A Greater Burden on Erkelens Than Was Imposed By The Law That Existed When The Lease Was Entered Into ................ 10

        1. Nothing In The Lease Incorporates Subsequent Changes In Law Related To Removal Of The Billboard ...................................................... 11

    E. Enforcing The Provision In The Lease Pertaining To Removal Of The Billboard Would Grant Clear Channel The Unilateral Right To Abandon A Valuable Property Right That Belongs To The Landowner ................................. 11

    F. Clear Channel's Aggressive Campaign To Remove The Billboard Is Part Of Clear Channel's Business Practice Designed To Prevent Competition And Strong-arm Property Owners Into Accepting Less Than Fair Market Rent ............ 12

IV. CONCLUSION .................................................................................................................. 14

|   |   |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |

**Page**

**CASES**

*Alpha Beta Food Markets, Inc. v. Retail Clerks Union,*
    45 Cal. 2d 764 (1955) .................................................................................................. 10

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................................... 7

*Anza Parking Corp. v. City of Burlingame,*
    195 Cal. App. 3d 855 (1987) ....................................................................................... 13

*Caletti v. State,*
    45 Cal. App. 2d 302 (1941) .......................................................................................... 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................................. 6, 7

*City of Torrance v. Workers' Comp. App. Bd. & State Comp. Ins. Fund,*
    32 Cal. 3d 371 (1982) ................................................................................................... 8

*Clear Channel Outdoor, Inc. v. Lee,*
    U.S. District Court, Northern District, Case No. 3:08-cv-02955-PJH ....................... 15

*Cohn v. Cohn,*
    20 Cal.2d 65 (1942) ...................................................................................................... 7

*County of Marin v. Assessment Appeals Bd.,*
    64 Cal. App. 3d 319 (1976) ......................................................................................... 7

*Equitable Bldg. & Loan Assn. v. Wolfangle,*
    111 Cal. App. 119 (1931) ..................................................................................... passim

*Fuller v. Kane,*
    110 Mich. 549, LEXIS 746 (1896) ............................................................................ 10

*Harris v. Klure,*
    205 Cal. App. 2d 574 (1962) ................................................................................. 7, 13

*Miracle Auto Center v. Sup. Ct. (Pacific Specialty Ins. Co.),*
    68 Cal. App. 4th 818 (1998) ........................................................................................ 8

*Pacific Tel. & Tel. Co. v. City of Lodi,*
    58 Cal. App. 2d 888 (1943) ......................................................................................... 8

*Roberts v. Pfefer,*
    13 Cal. App. 3d 93 (1970) ........................................................................................... 8

*Straus v. North Hollywood Hosp., Inc.,*
    150 Cal. App. 2d 306 (1957) ....................................................................................... 8

*Sullivan v. Massachusetts Mut. Life Ins. Co.,*
    611 F.2d 261 (9th Cir. 1979) ........................................................................................ 7

*Swenson v. File*,
    3 Cal. 3d 389 (1970) .................................................................................................... passim

**STATUTES**

Cal. Civ. Code § 1643 ............................................................................................................... 7

Cal. Civ. Code § 1646 ............................................................................................................... 7

Cal. Civ. Code § 1647 ............................................................................................................... 8

**RULES**

Fed R. Civ. P. 1 ........................................................................................................................ 6

Fed R. Civ. P. 56(c) .................................................................................................................. 7

**TREATISES**

1 Bernard E. Witkin,
    *Summary of California Law*, Contracts § 748, at 836 (10th ed. 2005) .............................. 8, 9

**REGULATIONS**

San Francisco Planning Code Section 183 .............................................................................. 13

San Francisco Planning Code Section 604(h) ............................................................. 4, 11, 13

San Francisco Planning Code Section 611 .............................................................................. 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Clear Channel Outdoor, Inc. ("Plaintiff" or "Clear Channel") wants to tear down a 12' x 24' advertising sign ("Billboard") erected on Defendant Linda Erkelens ("Erkelens") property, located at 1801 Turk Street in San Francisco, California (the "Property"). Clear Channel wants to tear down the Billboard because it knows that, under the current Code, Erkelens will never be able to replace the sign after removal of the Billboard. Clear Channel's lease with Erkelens has expired, and thus Clear Channel has no future economic expectation from the Billboard and can derive no future economic benefit from the Billboard. The Billboard, once removed, cannot be used anywhere else, and has scrap metal value, less the cost of demolition.

Clear Channel's purpose for aggressively seeking to tear down a sign that is virtually worthless to them is two-fold: (1) this tactic allows Clear Channel to monopolize the outdoor advertising market, by ensuring that property owners such as Erkelens are never allowed to rent their property to Clear Channel's competitors for general advertising purposes; and (2) Clear Channel uses this tactic to strong-arm property owners such as Erkelens into taking far less than market value for signs located on their property because the sign cannot be replaced under current law, by expressly telling property owners that Clear Channel will remove the sign and leave them with no revenue if they don't accept their below market offers.

Clear Channel relies on a provision in the lease entered into by its predecessor, which says that the lessee owns the sign structure and can remove the sign structure at any time upon expiration of the lease. However, the lease between Erkelens' and Clear Channel's predecessors was entered into in 1984 when the removal of the structure would not result in the forfeiture of a land use right. In 1984, the Code allowed property owners to erect new advertising signs on their property or replace existing signs lawfully. Thus, when the parties entered into the Lease, the provision allowing the Clear Channel's predecessor to remove the Billboard did not affect Erkelens' predecessors' right to maintain an advertising sign on its property in any way. 18 years after the Lease was entered into, the law changed drastically. In 2002, San Francisco enacted a city-wide ban on the construction of any new general advertising signs. Existing advertising signs

would be allowed to remain, and would be lawful. In 2006, a San Francisco City Ordinance amended the Code to state that any sign voluntarily removed by its owner could not be replaced. Thus, in 1984 Erkelens' predecessor could have replaced the Billboard if it were removed by Clear Channel's predecessor, but today Erkelens' is not be allowed to replace the Billboard if Clear Channel is permitted to remove it. Erkelens' predecessor and Clear Channel's predecessor never intended this inequitable result, and Erkelens' predecessor never intended to permanently transfer away the right to advertise on the Property or allow the lessee to encumber the property beyond the unexpected term of the lease.

Under California law, the applicable laws in existence at the time the contract is entered into become part of the agreement, and the parties to the contract are presumed to have intended for the current laws in place to have effect absent an express manifestation of intent to the contrary. Here, there was a drastic change in law decades after the lease was entered into, and almost 50 years after the Billboard was first erected. The parties intended that Erkelens would be able to replace any sign that was removed, and never intended to give Clear Channel the right to forever rob Erkelens' of her right to advertise on the Property. The unforeseen change in law makes the provision in the lease purport to give Clear Channel the right to remove the Billboard unenforceable as a matter of California law. Moreover, allowing Clear Channel to right to enforce the removal provision, which in 1984 did not have the same meaning or effect as it does in 2008, would lead to a manifestly unfair and inequitable result, especially since the Billboard is virtually worthless to Clear Channel.

Accordingly, Erkelens' moves this Court for an order that the provision of the lease relating to ownership and removal of the Billboard is unenforceable as a matter of law. Because all of Clear Channel's causes of action in this lawsuit hinge on the enforceability of that provision seeks Summary Judgment of all Clear Channel's causes of action is proper.

## II.   FACTS & PROCEDURAL HISTORY[1]

The material facts are not in dispute. The facts are as follows:

---

[1] Citations to declarations are in the format "[Declarant's last name] Decl. ¶__." Citations to Linda Erkelens' deposition are "Erkelens Depo. [page:line]" and are attached as Exhibit 3 to the Azarmi Decl.

A. **The Billboard and the 1081 Turk Street Property.**

The Billboard affixed to the Property was built in 1958. Azarmi Decl. ¶2, Ex. 1. In 1984, Erkelens' predecessor in interest entered into a Lease with Foster & Kleiser, Clear Channel's predecessor in interest (the "Lease"). Azarmi Decl. ¶3, Ex. 2. The Lease included the provision relied upon by Clear Channel:

> ". . . Lessee shall remain the owner of all advertising signs, structures, and improvements . . . the Lessee shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease."

Erkelens Depo. 88:9-21

When the Lease was entered into in 1984, the Code at that time did not prohibit property owners from building a general advertising sign on their property. *See*, Linda Erkelens' Request for Judicial Notice filed herewith ("Erkelens' RJN"), ¶¶ 1, 3. Furthermore, in 1984 the Code did not prohibit property owners from replacing signs that were removed from their property. *Id.*

In 2004, Erkelens and her husband purchased the Property. Erkelens Depo. 43:18-44:10; Azarmi Decl. ¶5, Ex. 4. In 2004, at the time that the Erkelens purchased the Property, the Code did not prohibit property owners from replacing signs that had been removed from their property. *See*, Erkelens' RJN, ¶3.

B. **Erkelens Terminates Her Lease With Clear Channel.**

On February 14, 2007, Erkelens gave notice to Clear Channel that she would not be renewing the Lease, which was due to expire on July 31, 2007. Erkelens Depo. 90:5-19; Azarmi Decl. ¶6, Ex. 5. Shortly after the February 14, 2007 letter, Erkelens began negotiating with a locally-based outdoor advertising company, Advertising Display Systems I ("ADS"), who was interested in leasing the Billboard. Erkelens Depo. 131:23-134:5. Ultimately, Erkelens decided to enter a new lease with ADS. *Id.* On May 31, 2007, Defendant again gave notice to Clear Channel that she would not be renewing the Lease and told Clear Channel that she would be retaining the original sign permit issued by the San Francisco Department of Public Works. Erkelens Depo. 97:3-14; Azarmi Decl. ¶7, Ex. 6. In the same May 31 letter, Erkelens also instructed Clear

Channel to remove the Billboard from the Property. *Id.* However, when she made this statement, Erkelens had no idea that, in 2006, the San Francisco Planning Code had been amended to prohibit property owners from replacing or rebuilding advertising signs located on their property that had been voluntarily removed or destroyed. Erkelens Depo. 102:4-103:9. Erkelens also did not know that Clear Channel would subsequently draft a removal permit in such a way that she would permanently lose her right to have a billboard on her Property. *Id.* Erkelens never intended to, and never consented to, give up her property right to the advertise on the Property. *Id.*

### C. Clear Channel Obtains Removal Permit And Attempts To Abandon Erkelens' Right To Advertise On The Property.

On June 26, 2007, without Erkelens' consent, Clear Channel applied to the Department of Building Inspection for a permit to remove the Billboard ("Removal Permit"). Erkelens Depo. 111:3-112:9. In its application for the Removal Permit, Clear Channel described the removal work to be done as "Voluntary removal, razing, and demolition of nonconforming noncomplying general advertising sign . . . ." *Id*; Azarmi Decl., ¶8 Ex. 7.

After obtaining approval from the Department of Building Inspection for the Removal Permit on July 18, 2007, Clear Channel finally responded to Erkelens' May 31, 2007 letter by sending a July 20, 2007 letter from Clear Channel's attorneys in which Clear Channel: (1) implied that it, and not Erkelens, was the owner of the original Billboard permit; and (2) informed Erkelens that once Clear Channel removed the sign, Erkelens would not be allowed to rebuild the sign due to San Francisco Planning Code Section 604(h).[2] Azarmi Decl. ¶9, Ex. 8.

An illegible copy of the Removal Permit was enclosed with Clear Channel's July 20 letter. *Id.* Subsequently, after Erkelens' obtained a legible copy of the Removal Permit, she realized that due to the way Clear Channel had unilaterally worded the Removal Permit, she would lose her right to advertise on the Property. Erkelens Depo. 113:20-114:9. This is because on the Removal Permit Clear Channel wrote that Erkelens was voluntarily abandoning her rights to maintain the Billboard on the Removal Permit. *Id.* Clear Channel has no right to affect land use rights beyond the unexpired term of its Lease.

---

[2] Planning Code Section 604, and its effect, is explained in greater detail in the Argument section below.

### D. Erkelens' Appeals The Issuance of The Removal Permit

Upon learning that Clear Channel, in its Removal Permit application, purported to abandon her right to advertise on the Property, Erkelens' appealed the issuance of the Removal Permit to the San Francisco Board of Appeals ("Board of Appeals" or the "Board"). On October 17, 2007, Erkelens' appeal was heard before the Board of Appeal. Azarmi Decl. ¶10, Ex. 9. At that hearing, Board members chastised Clear Channel for engaging in "predatory pricing" and stated that "the behavior manifested by Clear Channel is not very attractive." *Id.* at pp. 18:16-19:13. After suggesting that they were inclined to revoke Clear Channel's Removal Permit, the Board of Appeal decided to continue the hearing until December 12, 2007, to give Erkelens and Clear Channel a chance to negotiate a settlement in good faith, with the hope that Clear Channel "try to seek a solution and would not deprive [Erkelens] of a source of income." Azarmi Decl. ¶11, Ex. 10 at pp. 59:23-60:3.

### E. Clear Channel Files Its Complaint And Its TRO Application Is Denied By Judge Jenkins

After the October 17, 2007 hearing, Clear Channel withdrew its Removal Permit application and filed the Complaint in this action on December 4, 2008, 8 days before it was to appear before the Board of Appeal for a final decision. In connection with its Complaint, Clear Channel sought a Temporary Restraining Order and Order to Show Cause ("TRO"). Judge Jenkins denied Clear Channel's TRO application and succinctly outlined what this case was really about: whether Clear Channel could **remove** the Billboard. Notably, Judge Jenkins' Order underscored the fact that, because the Lease between Erkelens and Clear Channel had been terminated, Clear Channel was only seeking to remove the Billboard and had **no** continuing right to **use** the Billboard.

### F. Clear Channel's Removal Permit Is Revoked By The Board Of Appeal

At the December 12, 2007 hearing, the Board of Appeal voted 5-0 to revoke Clear Channel's Removal Permit. Azarmi Decl. ¶11, Ex. 10 at pp. 30:5-30:23. In its Findings of Fact and Conclusions of Law, the Board of Appeal found that:

[Erkelens] did not intend or authorize Clear Channel to submit a

> building permit application to "voluntarily" forfeit [Erkelens'] right to future general advertising at the Property. Clear Channel did not show [Erkelens] the application for the Building Permit, [Erkelens] did not authorize the application, and [Erkelens] did not agree to any permit to "voluntarily" surrender [Erkelens'] right to general advertising at the Property.

Erkelens RJN ¶ 5.

In addition to finding that Ms. Erkelens never intended to voluntarily forfeit her rights to general advertising at the Property, the Board of Appeal also went further to chastise Clear Channel for its' unfair business practices:

> Based on the competent testimony of property owners testifying by letter and during public comment, we find a pattern of heavy-handed business practices by certain general advertising sign companies in lease renewal negotiations that is not in the best interests of the City's business community or residents. We decline to approve a building permit that would encourage and reward such practices.

*Id.*

Accordingly, the Board of Appeal revoked Clear Channel's Removal Permit.

### III. ARGUMENT

#### A. **Summary Judgment Is Appropriate Because No Disputed Material Facts Exist And Contract Interpretation Is A Question Of Law**

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed.R.Civ.P. 1). Summary judgment is appropriate where no genuine and disputed issues of material fact remain, and the movant is entitled to prevail as a matter of law. Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23. A disputed fact is material only where, under applicable substantive law, it may affect the outcome

1  of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is
2  proper where, as here, the legal effect or construction of a contract is at issue. *See Sullivan v.*
3  *Massachusetts Mut. Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir. 1979) (the district court's ruling on a
4  contract integration issue involved questions of law, suitable for disposition on summary
5  judgment).[3]

**B. Under California Law, Contracts Must Be Interpreted To Avoid An Interpretation That Will Make The Contract Harsh, Unjust, or Inequitable**

Under California law, courts construing a contract should adopt that construction which will make the contract reasonable, fair and just. *Harris v. Klure*, 205 Cal. App. 2d 574, 578 (1962); *Cohn v. Cohn,* 20 Cal. 2d 65, 69 (1942); *Caletti v. State,* 45 Cal. App. 2d 302, 305 (1941). Further courts should give the contract such interpretation "as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. **However, the interpreting court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable**. *County of Marin v. Assessment Appeals Bd.*, 64 Cal. App. 3d 319, 324-325 (1976); *Harris*, at 578; *Straus v. North Hollywood Hosp., Inc.*, 150 Cal. App. 2d 306, 311 (1957); *Pacific Tel. & Tel. Co. v. City of Lodi*, 58 Cal. App. 2d 888, 892 (1943). Finally, an interpreting court is not limited to only interpreting the "plain meaning" of the terms of the contract, rather the contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates. Cal Civ. Code § 1647; *see also* 1 Bernard E. Witkin, *Summary of California Law*, Contracts § 748, at 836 (10th ed. 2005).

**C. Under California Law, Laws Or Ordinances Enacted Subsequent To The Execution Of A Contract Which Add Burdens Or Responsibilities On The Parties To The Contract Do Not Become Part Of The Contract**

In California, it is well settled that laws enacted subsequent to the execution of a contract are not deemed part of the contract unless the language of the contract clearly indicates that the parties intend to be bound by future laws. *Swenson v. File*, 3 Cal. 3d 389, 393, 394-95 (1970);

---

[3] California state substantive law applies to interpretation of the Lease here. There is no choice of law provision in the Lease, and California substantive law applies to commercial real estate leases made and performed in California. *See* Cal. Civ. Code § 1646.

*City of Torrance v. Workers' Comp. App. Bd. & State Comp. Ins. Fund*, 32 Cal. 3d 371, 378-79 (1982) (finding that parties had expressly agreed to incorporate subsequent changes in law and therefore contract could be enforced according to subsequent change in law); *Equitable Bldg. & Loan Assn. v. Wolfangle*, 111 Cal. App. 119, 123 (1931); *Roberts v. Pfefer*, 13 Cal. App. 3d 93, 97-98 (1970); *Miracle Auto Center v. Sup. Ct. (Pacific Specialty Ins. Co.)*, 68 Cal. App. 4th 818, 821 (1998); 1 Bernard E. Witkin, *Summary of California Law*, Contracts § 753, at 844 (10th ed. 2005). Hence, parties are presumed to have had existing law in mind when they executed their agreement. *Id.* **However, subsequent changes in law which impose greater burdens or responsibilities upon the parties to the contract do not become part of the contract, because to give effect to such greater burdens would result in modifying the contract without the parties' consent and would promote uncertainty in commercial transactions.** *Id.*

In *Wolfangle*, the owners of adjoining lots built a brick wall dividing their property lines out of twelve inch thick wall. 111 Cal. App. at 120-21 (1931). In 1905, both parties agreed that should either party wish to extend the wall in the future, both neighbors would split the cost of the work, but that they would continue to use twelve inch thick wall, . *Id.* The Pasadena city ordinances in effect in 1905 permitted 12 inch walls. *Id.* at 122. In 1926, 21 years after the contract was entered into, one of the parties decided to extend the brick wall, except he used 16 inch thick wall, which was required by a subsequently enacted Pasadena city ordinance. *Id.* at 121-22. When the owner who had extended the wall asked for contribution from his neighbor per their contract, the neighbor refused. *Id.*

The California Court of Appeal held that the neighbor was not liable on the contract, and that the contract provision requiring him to split the costs of the wall addition was unenforceable because the subsequent Pasadena ordinance imposed additional burdens on the neighbor beyond that which he had originally contracted for. *Id.* at 122-23. It was unfair to impose upon him the additional requirements created by an ordinance he had never agreed to be governed by. *Id.* To enforce the contract against the neighbor would ignore what the parties had actually bargained for when they entered into the contract. As the *Wolfangle* court put it, "[i]n effect this would amount to the creation of a new and different contract by mere operation of law. It would result in

impairing the obligations of the contract. This is neither law nor justice."

The *Wolfangle* court, elucidating the rule on which it had based its decision, further stated:

> The rule in this regard is clearly stated in the case of *Fuller v. Kane*, 110 Mich. 549 (1896) as follows: "Every contract (which does not expressly provide the contrary) must be considered as made with reference to the existing state of the law, and, **if, by the intervention of the legislature, a change is made in the law, which in any degree affects the contract, such contract**, made without some clear and distinct reference to the prospect or possibility of a change, **does not hold with reference to the state of things as altered by the new law**."

111 Cal. App. at 123 (emphasis added).

In other words, according to the *Wolfangle* court, if a subsequent change in law affects a contract, the contract is unenforceable to the extent that its terms are affected by the change in law.

In *Swenson*, the California Supreme Court cited *Wolfangle* with approval and further enunciated the California rule of law:

> The parties are presumed to have had existing law in mind when they executed their agreement. *Alpha Beta Food Markets, Inc. v. Retail Clerks Union*, 45 Cal. 2d 764, 771 (1955); **to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent**, and would promote uncertainty in commercial transactions. See *Equitable Bldg. & Loan Assn. v. Wolfangle, supra.*, 111 Cal. App. 119, 122-123. We recognize that the parties could have originally agreed to incorporate subsequent changes in the law, or could have reexecuted their agreement to accomplish this purpose, but there is no evidence that they did so in this case.

1 | *Swenson v. File*, 3 Cal. 3d at 394 -395.

**D. Due To The Subsequent Changes In The Planning Code, Allowing Clear Channel To Enforce the Lease Provision Relating To Removal Of The Billboard Would Unfairly Impose A Greater Burden on Erkelens Than Was Imposed By The Law That Existed When The Lease Was Entered Into**

The California principal of law set forth in *Wolfangle*, *Swenson*, and its progeny is directly applicable here, because major changes to the San Francisco Planning Code law enacted subsequent to the formation of the Lease make Erkelens' obligations under the Lease much more onerous and inequitable.

In 1984, when the Lease was entered into, nothing in the San Francisco Planning Code prohibited a property owner from erecting a new general advertising sign or from replacing a sign that had been voluntarily removed. Erkelens' RJN, ¶¶ 1, 3. Subsequently, in 2002, Proposition G was adopted and Planning Code Section 611 was added. Erkelens' RJN, ¶ 1. Section 611(a) states: "No new general advertising signs shall be permitted at any location within the City as of March 5, 2002 . . . ." *Id.* Although the 2002 enactment of Section 611 had put in place a citywide moratorium on **new** advertising signs, when Erkelens subsequently purchased the Property in 2004, property owners were still entitled to replace **existing** advertising signs that were voluntarily removed or destroyed. Erkelens' RJN, ¶ 3. However, another important change in the law occurred when, in 2006, a San Francisco City Ordinance was enacted and Planning Code Section 604(h) was amended to prohibit property owners from replacing or rebuilding advertising signs that had been removed from their property. Erkelens' RJN, ¶ 2. This subsequent change in the Planning Code gave Clear Channel an unfair power under the Lease that they never had prior to the 2006 amendment. It is this precise change in the law that Clear Channel used to threaten Erkelens into submission to its will. Azarmi Decl. ¶9, Ex. 10.

The provision purporting to allow Clear Channel to remove the Billboard, due to 2006 change in the Code, directly abrogates on Erkelens' right to advertise on her property and imposes burdens on and forfeiture of land use rights on Erkelens far beyond what was envisioned when the Lease was originally entered into. When the Lease was entered into in 1984, nobody could have envisioned that 22 years later a City Ordinance would be enacted which would attach paramount

significance to what appears to have been intended to be a relatively minor provision in the overall context of a continuing five year lease. Moreover, nothing in the Lease itself indicates that Erkelens' predecessor ever intended to permanently transfer away the valuable property to advertise on the Property or otherwise encumber the Property beyond the unexpired terms of the Lease. Rather, consistent with the *Swenson* and *Wolfangle* line of cases, the parties appear to have intended to incorporate the laws as they existed at the time the Lease was entered into. Clear Channel should not be allowed to enforce a provision that no longer embodies what the parties intended when they entered the Lease. To allow Clear Channel to enforce the provision allowing it to remove the Billboard would unjustly deprive Erkelens' of a property right which she, nor her predecessor, never meant to give away or forfeit. Further, this result would directly contradict the spirit and letter of the law that the California Supreme Court's decision in *Swenson* embodies.

        1.      **Nothing In The Lease Incorporates Subsequent Changes In Law Related To Removal Of The Billboard**

Erkelens' arguments based on the *Swenson* and *Wolfangle* line of cases are further supported by the Lease itself, which contains no provision incorporating subsequent changes in law. Erkelens Depo. 88:9-21; Azarmi Decl. ¶4, Ex. 3. Significantly, Paragraph 6 of the Lease states: "If Lessee is prevented by law . . . from illuminating its signs, the Lessee may reduce the rental . . . ." Thus, the parties anticipated that future changes in the law might affect the Lessee's right to illuminate the Billboard, and the parties expressly provided for that eventuality. The Lease's absolute silence as to any other possible future changes in the law directly indicates that the parties intended that the law that existed at the time the Lease was entered into, was the law to be incorporated into the contract.

    E.    **Enforcing The Provision In The Lease Pertaining To Removal Of The Billboard Would Grant Clear Channel The Unilateral Right To Abandon A Valuable Property Right That Belongs To The Landowner**

Allowing Clear Channel to enforce the provision in the Lease pertaining to removal of the Billboard would lead to the perverse result that Erkelens' would be deemed to forever have given up a valuable property income stream, through a provision agreed to in 1984 that did not have any of the significance it has today. This is an unjust and inequitable result, and would require the

1   Court to interpret the Lease to forever transfer a property right from the lessor to her tenant. This
2   is not a fair or reasonable interpretation of a contract that was meant to govern a leasing
3   relationship between property owner and an advertising company who wished to advertise on the
4   Property. *See, Harris* at 578 (courts should give contracts a construction that is reasonable, fair
5   and just). The Lease must be interpreted to give effect to the intentions of the parties at the time
6   the Lease was entered into, and the parties are presumed to intend that the law in effect at that
7   time will govern. *See, Swenson*, 3 Cal. 3d at 394-95. To allow Clear Channel to enforce the
8   removal provision of the Lease, and thus override any reasonable interpretation of the original
9   intention of the parties when they entered into the Lease by giving away Erkelens' property rights
10  permanently, would directly violate the spirit of the *Swenson* and *Wolfangle* line of cases, and give
11  effect to an interpretation of the Lease which only became possible after the 2006 amendment to
12  Planning Code Section 604(h).

13         Moreover, this contradicts Planning Code Section 183, which provides that only the
14  property owner can abandon a non-conforming use. Erkelens RJN, ¶4. To give Clear Channel the
15  unilateral power to abandon Ms. Erkelens' right to advertise on the Property would violate the San
16  Francisco Planning Code as well as established California caselaw, which says that the property
17  owners own land use permits attached to their land, and that land use rights run with the land. *See*
18  *Anza Parking Corp. v. City of Burlingame*, 195 Cal. App. 3d 855, 858-60 (1987).[4] Moreover,
19  such an interpretation would be an unjust and inequitable interpretation, and would ignore the
20  objective intent of the parties at the time the Lease was entered into.

21         F.   **Clear Channel's Aggressive Campaign To Remove The Billboard Is Part Of Clear Channel's Business Practice Designed To Prevent Competition And Strong-arm Property Owners Into Accepting Less Than Fair Market Rent.**
22  

23         At first glance, one might wonder why Clear Channel would be so persistent in its efforts
24  to tear down Erkelens' one and only Billboard. Especially given that Clear Channel stands to gain
25  no future economic benefit from the Billboard, as the Lease has expired and Erkelens has no
26  intention to rent to Clear Channel. The answer is that this tactic, combined with the outdated

---

27  [4] *See also*, Erkelens RJN ¶ 5 (San Francisco Board of Appeal finding: ". . . . Section 106.3.1.6 of
28  the San Francisco Building Code requires building permits to be issued only to an authorized agent of the owner of the real property to which the permit pertains. . . .").

removal provisions in place in most of its commercial billboard leases, prevents property owners from renting their billboards space to anyone but Clear Channel, and allows Clear Channel to force property owners to accept far less than fair market value for their billboards when it comes time to renew.

Clear Channel's leases, much like the one at issue here, have a provision permitting Clear Channel to remove advertising signs when the lease terminates. These leases were designed decades ago, when the understanding was that a property owner would be free to rent the billboard space to a competing advertising company, who would erect their own signs and pay the property owner a rent for advertising. The subsequent change in the San Francisco Planning Code has unjustly equipped Clear Channel with a powerful provision that, when combined with Clear Channel's immense resources and aggressive litigation tactics, leaves property owners with almost no negotiation leverage. This is precisely what the Board of Appeal found and why, in its Findings of Fact and Conclusions of Law, the Board chastised Clear Channel for their unfair business practices. Erkelens RJN, ¶ 5.

Moreover, this unscrupulous business activity is no isolated instance, but rather has become a pattern and practice for Clear Channel. Indeed, in this very same court, on June 13, 2008, another San Francisco billboard case with nearly identical facts was filed by Clear Channel. *See, Clear Channel Outdoor, Inc. v. Lee*, Case No. 3:08-cv-02955-PJH.

To let Clear Channel further its unscrupulous tactics at Erkelens' expense, by relying on a provision in the Lease that meant something entirely different before the subsequent 2006 change in law, would not only be unjust, it would also completely ignore the laws related to advertising signs that were in effect when the parties entered into the Lease.

## IV. CONCLUSION

Under California law, a subsequent change in law that increases the burden on a contracting party is unfair and does not become part of the contract. Here, Erkelens' predecessor and Clear Channel's predecessor clearly did not intend to permanently transfer the right to advertise on the Property. Moreover, it would defy reasonableness and fairness to interpret a provision that posed no substantial burden on either of the parties in 1984, as justifying removal of

the Billboard, thereby permanently depriving Erkelens' of a valuable property right. Accordingly, Erkelens moves for summary judgment on the grounds that the provision in the Lease related to the ownership and removal of the Billboard is unenforceable as a matter of law.

DATED: August 12, 2008                LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Gerald M. Murphy
Andrew S. Azarmi
Attorneys for Defendant
Linda Erkelens