Gerald M. Murphy, State Bar No. 99994
Andrew S. Azarmi, State Bar No. 241407
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Tel:    415.356.4600
Fax:    415.356.4610
E-mail:  gmurphy@luce.com
E-mail:  aazarmi@luce.com

Attorneys for Defendant
LINDA ERKELENS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>LINDA ERKELENS, an individual,<br><br>       Defendant. | Case No. C 07-06138 SBA<br><br>**DEFENDANT LINDA ERKELEN'S OPPOSITION TO PLAINTIFF CLEAR CHANNEL OUTDOOR, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     September 23, 2008<br>Time:    9:00 a.m.<br>Place:   Courtroom 3, 3rd Floor - Oakland<br><br>Complaint Filed:  December 4, 2007<br>Trial Date:      November 10, 2008<br><br>Hon. Saundra Brown Armstrong |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. FACTS & PROCEDURAL HISTORY ..................................................................... 3
    A. The Billboard and the 1081 Turk Street Property. ......................................... 3
    B. Erkelens Terminates Her Lease With Clear Channel. .................................... 4
    C. Clear Channel Obtains Removal Permit And Attempts To Abandon Erkelens' Right To Advertise On The Property. ............................................. 5
    D. Erkelens' Appeals The Issuance of The Removal Permit .............................. 5
    E. Clear Channel Files Its Complaint And Its TRO Application Is Denied By Judge Jenkins. ................................................................................................. 6
    F. Clear Channel's Removal Permit Is Revoked By The Board Of Appeal ....... 6

III. ARGUMENT ........................................................................................................... 7
    A. Standard of Review ......................................................................................... 7
    B. Under California Law, Contracts Must Be Interpreted To Avoid An Interpretation That Will Make The Contract Harsh, Unjust, or Inequitable ............. 8
    C. Under California Law, Laws Or Ordinances Enacted Subsequent To The Execution Of A Contract Which Add Burdens Or Responsibilities On The Parties To The Contract Do Not Become Part Of The Contract ................................ 8
    D. Due To The Subsequent Changes In The Planning Code, Allowing Clear Channel To Enforce the Lease Provision Relating To Removal Of The Billboard Would Unfairly Impose A Greater Burden on Erkelens Than Was Imposed By The Law That Existed When The Lease Was Entered Into ................ 10
        1. Allowing Clear Channel To Abandon Erkelens' Property Rights Conflicts With San Francisco Land Use Law And California Case Law .................................................................................................... 12
    E. Clear Channel Is Not Entitled To Specific Relief Because Specific Relief Would Force Erkelens To Forfeit Her Right To Advertise On The Property ......... 12
        1. Clear Channel Is Not Entitled To Specific Relief Because It Would Forfeit Erkelens Right To Advertise On Her Property. ............................... 14
    F. Specific Performance Cannot Be Enforced Against Erkelens Because To Do So Would Be Manifestly Unjust And Unreasonable. ................................... 15
    G. Specific Relief Is Not Appropriate Here Because Clear Channel Can Be Adequately Remedied By Money Damages ...................................................... 16
    H. Specific Relief Is Not Available As a Remedy For Conversion Due To The California Policy Against Forfeiture And Civil Code Section 3369 ....................... 16
    I. Clear Channel Is Not Entitled To An Injunction. ........................................ 18

IV. CONCLUSION ..................................................................................................... 18

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alpha Beta Food Markets, Inc. v. Retail Clerks Union,*
45 Cal. 2d 764 (1955)................................................................. 10

*Anderson v. Liberty Lobby, Inc.,*
477 US 242 (1986)..................................................................... 7

*Anza Parking Corp. v. City of Burlingame,*
195 Cal. App. 3d 855 (1987)....................................................... 12

*Ascherman v. McKee,*
143 Cal. App. 2d 277 (1956)....................................................... 14

*Caletti v. State,*
45 Cal. App. 2d 302 (1941)......................................................... 8

*City of Torrance v. Workers' Comp. App. Bd. & State Comp. Ins. Fund,*
32 Cal. 3d 371 (1982)................................................................. 9

*Cohn v. Cohn,*
20 Cal. 2d 65 (1942)................................................................... 8

*County of Marin v. Assessment Appeals Bd.,*
64 Cal. App. 3d 319 (1976)......................................................... 8

*Eastman Kodak Co. v. Image Technical Services, Inc.,*
504 US 451 (1992)..................................................................... 7

*Ebbert v. Mercantile Trust,*
213 Cal. 496 (1931)................................................................... 13

*Equitable Bldg. & Loan Assn. v. Wolfangle,*
111 Cal. App. 119 (1931)...................................................... 9, 10, 17

*Freedman v. The Rector,*
37 Cal. 2d 16 (1951)................................................................. 14

*Fuller v. Kane,*
110 Mich. 549 (1896)................................................................ 10

*Harris v. Klure,*
205 Cal. App. 2d 574 (1962)....................................................... 8

*Jacklich v. Bauer,*
57 Cal. App. 2d 684 (1943)......................................................... 15

*Keller v. Lewis,*
53 Cal. 113 (1878)................................................................... 13

ii

Case No. C 07-06138 SBA

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

*Lonergan v. Monroe,*
    77 Cal. App. 2d 223 (1947)...........................................................................................18

*Long Beach Drug Co. v. United Drug Co.,*
    13 Cal. 2d 158 (1939)...................................................................................................18

*MacFadden v. Walker,*
    5 Cal. 3d 809 (1971)....................................................................................................14

*McCabe v. General Foods Corp.,*
    811 F.2d 1336 (9th Cir. 1987).......................................................................................7

*Miracle Auto Center v. Sup. Ct. (Pacific Specialty Ins. Co.),*
    68 Cal. App. 4th 818 (1998)..........................................................................................9

*Morrison v. Land,*
    169 Cal. 580 (1915).....................................................................................................16

*Pacific Tel. & Tel. Co. v. City of Lodi,*
    58 Cal. App. 2d 888 (1943)...........................................................................................8

*Quan v. Kraseman,*
    84 Cal. App. 2d 550 (1948).........................................................................................15

*Roberts v. Pfefer,*
    13 Cal. App. 3d 93 (1970).............................................................................................9

*Sheppard v. Banner Food Products,*
    78 Cal. App. 2d 808 (1947).........................................................................................16

*Straus v. North Hollywood Hosp., Inc.,*
    150 Cal. App. 2d 306, 311 (1957)..................................................................................8

*Swenson v. File,*
    3 Cal. 3d 389 (1970)..................................................................................8, 10, 12, 17

*Tamarind Lithography Workshop v. Sanders,*
    143 Cal. App. 3d 571 (1983).......................................................................................16

*Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.,*
    255 Cal. App. 2d 300 (4th Dist. 1967).........................................................................18

*Triton Energy Corp. v. Square D Co.,*
    68 F.3d 1216 (9th Cir. 1995).....................................................................................7, 8

*Van Hoosear v. Railroad Commission of California,*
    189 Cal. 228 (1922).....................................................................................................18

## STATUTES

Cal Civ. Code § 1647 ..................................................................................................................8

Cal. Civ. Code § 3275 ..........................................................................................................13, 14

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Cal. Civ. Code § 3369 ................................................................. 13, 14, 17

Cal. Civ. Code § 3379 ................................................................. 17

Cal. Civ. Code § 3423(e) ............................................................. 18

Cal. Civ. Code § 526(b)(5) .......................................................... 18

Cal. Civ. Code § 691 .................................................................. 15

## OTHER AUTHORITIES

1 Bernard E. Witkin, *Summary of California Law*,
    Contracts § 748, at 836 (10th ed. 2005) ............................... 8, 9

58 Cal. Jur. 3d (Rev)
    *Specific Performance* § 30 (2008) ........................................ 15

Miller & Starr,
    12 Cal. Real Est. § 34:17 (3d ed. 2008) ............................... 16

## REGULATIONS

San Francisco Building Code Section 106.3.1.6 .......................... 12

San Francisco Planning Code Section 183 .................................. 12

San Francisco Planning Code Section 604(h) ...................... 1, 5, 11, 14

San Francisco Planning Code Section 611 .................................. 11

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    Defendant Linda Erkelens hereby submits its opposition to Plaintiff Clear Channel

3    Outdoor, Inc.'s motion for partial summary judgment.

4    **I.**

5    **INTRODUCTION**

6    In its motion for partial summary judgment ("MPSJ"), Clear Channel Outdoor, Inc.

7    ("Plaintiff" or "Clear Channel") wants to tear down a 12' x 24' advertising sign ("Billboard")

8    erected on Defendant Linda Erkelens ("Erkelens") property, located at 1801 Turk Street in San

9    Francisco, California (the "Property"). Azarmi Decl. ¶ 12, Ex. 11.[1]

10    In its MPSJ, Clear Channel asks the Court to interpret the Billboard lease agreement ("the

11    Lease") between Clear Channel and Erkelens as giving Clear Channel the right to remove the

12    Billboard and thereby divest and deprive Erkelens, the property owner, of the right to advertise on

13    her own property thereby diminishing the capitalized value of the Property.    However, as

14    explained below, <u>and more fully in Erkelens' own Motion for Summary Judgment on file with the

15    Court</u>, such an interpretation would ignore directly relevant California Supreme Court law.  Under

16    California law, the applicable laws in existence at the time the contract is entered into become part

17    of the agreement, and the parties to the contract are presumed to have intended for the then-current

18    laws in place to govern absent an express manifestation of intent to the contrary.  Here, there was a

19    drastic change in law decades after the lease was entered into, and almost 50 years after the

20    Billboard was first erected.

21    At the time the Lease was entered, the parties intended that Erkelens' Predecessor would

22    be able to replace any sign that was removed, and never intended to give Clear Channel's

23    Predecessor the right to forever deprive Erkelens' of her right to advertise on the Property.    The

24    fortuitous consequences of the July 2006 Amendment to Planning Code Section 604(h) that now

25    prohibits a property owner from replacing a lawfully existing sign voluntarily removed from the

26

27    [1] Citations to declarations are in the format "Declarant's last name Decl. ¶__." Citations to Linda Erkelens' deposition are "Erkelens Depo. page:line" and are attached as Exhibit 3 to the Azarmi Decl.

28

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Property.  **The unforeseen change in law makes the Lease provision purporting to give Clear**

2  **Channel the right to remove the Billboard unenforceable as a matter of law.**  Furthermore,

3  interpreting the Lease to allow Clear Channel to remove the Billboard would lead to a harsh,

4  unjust, and inequitable result because it would unfairly deprive Erkelens of a valuable property

5  right she never intended to give away; a right that was not bargained for.

6        In its MPSJ, Clear Channel also seeks a declaration that Clear Channel owns the Billboard

7  and Clear Channel has the right to remove it.  MPSJ at "Notice of Motion".  In substance, asking

8  for this declaration means that Clear Channel seeks specific enforcement of the Lease instead of

9  money damages.  Clear Channel seeks specific enforcement because it knows that, under the

10 current San Francisco Planning Code, if the Billboard is removed Erkelens will be barred from

11 ever rebuilding it.  Clear Channel wants this result so that it can: (1) keep its control over its

12 market share of the existing Billboards in San Francisco, and (2) strong-arm property owners into

13 accepting rent well below market by threatening to remove the advertising signs, and telling the

14 property owners they will never be able to rebuild the sign if they don't accept Clear Channel's

15 unilateral terms.  **However, under the California Civil Code and under well-established**

16 **California Supreme Court case law, specific performance may not be ordered where to do so**

17 **would result in a forfeiture.**  Here, should specific enforcement of the Lease be ordered, Erkelens

18 would forever forfeit her right to conduct general advertising on her Property or lease that right to

19 Clear Channel competitors.  This would forfeit a valuable property right that belongs to the

20 property owner under California law, and would allow Clear Channel (the tenant) to control the

21 Property beyond the expiration of the term of the Lease.

22        Clear Channel is also barred from seeking the equitable remedy of specific performance

23 under the California Civil Code section 3391 because **ordering specific performance here, thus**

24 **forever depriving Erkelens of her right to advertise or lease to others the right to advertise**

25 **on her Property, would be manifestly unjust and unreasonable.**  This is underscored by the

26 reality that the Billboard is worthless to Clear Channel once it is removed because the Lease has

27 expired – it is scrap metal.

28        Specific performance is not an appropriate remedy here for the additional reason that Clear

1 Channel has an adequate remedy at law. Under California law, a party is not entitled to

2 specifically enforce a contract where they may be adequately remedied by money damages.

3 Assuming, *arguendo*, that the Lease provision relating to ownership of the sign is enforceable,

4 **Clear Channel can be wholly compensated at law with an award of compensatory damages.**

5 Clear Channel has no expectation of future revenue from the Billboard, and has therefore only

6 been damaged by the value of the Billboard itself, the used scrap metal, nuts, and bolts that Clear

7 Channel wants so desperately to tear down. As Judge Jenkins emphasized in his December 7,

8 2007 order denying Clear Channel's Temporary Restraining Order, any injury suffered by Clear

9 Channel can be adequately be remedied by money damages.

10 In its MPSJ, Clear Channel also seeks specific recovery of the Billboard under a

11 conversion theory. However, similar to the remedies available under the Lease, **specific recovery**

12 **of the Billboard is not an available remedy for conversion in this case because ordering**

13 **specific enforcement here would cause Erkelens' to forfeit her property right to advertise on**

14 **the Property.** Moreover, Clear Channel has no future expectation of economic benefit from the

15 Billboard because the Lease has expired. Therefore, Clear Channel has suffered no detriment

16 beyond the salvage value of the scrap metal for the sign itself, minus removal costs of $3,000.[2]

17 Finally, Clear Channel's MPSJ seeks an injunction preventing Erkelens from denying

18 Clear Channel access onto the Property to remove the Billboard. This has the same effect as

19 ordering specific performance. **Under California law, a court cannot grant a mandatory**

20 **injunction in any case where specific performance cannot be granted** because the injunction is

21 in, in effect, an award of specific performance. Accordingly, this Court should not grant any

22 injunction in Clear Channel's favor.

### II.

### FACTS & PROCEDURAL HISTORY

25 A.    The Billboard and the 1081 Turk Street Property.

26 The Billboard affixed to the Property was built in 1958. Azarmi Decl. ¶2, Ex. 1. In 1984,

27 ─────────────────
[2] Clear Channel stated that $3,000 was the cost of removing the Billboard when it applied for the Removal Permit (see below). Azarmi Decl. ¶ 8, Ex. 7

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Erkelens' predecessor in interest entered into a Lease with Foster & Kleiser, Clear Channel's

2   predecessor in interest (the "Lease"). Azarmi Decl. ¶3, Ex. 2. The Lease included the provision

3   relied upon by Clear Channel:

> ". . . Lessee shall remain the owner of all advertising signs,
> structures, and improvements . . . the Lessee shall have the right to
> remove said signs, structures, and improvements at any time during
> the term of the Lease, or after the expiration of this Lease."

7   Erkelens Depo. 88:9-21

8          When the Lease was entered into in 1984, the Code at that time did not prohibit property

9   owners from building a general advertising sign on their property. *See*, Linda Erkelens' Request

10  for Judicial Notice filed herewith ("Erkelens' RJN"), ¶¶ 1, 3. Furthermore, in 1984 the Code did

11  not prohibit property owners from replacing signs that were removed from their property. *Id.*

12         In 2004, Erkelens and her husband purchased the Property. Erkelens Depo. 43:18-44:10;

13  Azarmi Decl. ¶5, Ex. 4. In 2004, at the time that the Erkelens purchased the Property, the Code

14  did not prohibit property owners from replacing signs lawfully existing that had been removed

15  from their property. *See*, Erkelens' RJN, ¶3.

16  **B.     Erkelens Terminates Her Lease With Clear Channel.**

17         On February 14, 2007, Erkelens gave notice to Clear Channel that she would not be

18  renewing the Lease, which was due to expire on July 31, 2007. Erkelens Depo. 90:5-19; Azarmi

19  Decl. ¶6, Ex. 5. Shortly after the February 14, 2007 letter, Erkelens began negotiating with a

20  locally-based outdoor advertising company, Advertising Display Systems I ("ADS"), who was

21  interested in leasing the Billboard. Erkelens Depo. 131:23-134:5. Ultimately, Erkelens decided to

22  enter a new lease with ADS. *Id.* On May 31, 2007, Defendant again gave notice to Clear Channel

23  that she would not be renewing the Lease and told Clear Channel that she would be retaining the

24  original sign permit issued by the San Francisco Department of Public Works. Erkelens Depo.

25  97:3-14; Azarmi Decl. ¶7, Ex. 6. In the same May 31 letter, Erkelens also instructed Clear

26  Channel to remove the Billboard from the Property. *Id.* However, when she made this statement,

27  Erkelens had no idea that, in 2006, the San Francisco Planning Code had been amended to prohibit

28  property owners from replacing or rebuilding advertising signs located on their property that had

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   been voluntarily removed or destroyed. Erkelens Depo. 102:4-103:9. Erkelens also did not know

2   that Clear Channel would subsequently draft a removal permit in such a way that she would

3   permanently lose her right to have a billboard on her Property. *Id.* Erkelens never intended to,

4   and never consented to, give up her property right to the advertise on the Property. *Id.*

5   **C.    Clear Channel Obtains Removal Permit And Attempts To Abandon Erkelens' Right To Advertise On The Property.**

6

7          On June 26, 2007, without Erkelens' consent, Clear Channel applied to the Department of

8   Building Inspection for a permit to remove the Billboard ("Removal Permit"). Erkelens Depo.

9   111:3-112:9. In its application for the Removal Permit, Clear Channel described the removal

10  work to be done as "Voluntary removal, razing, and demolition of nonconforming noncomplying

11  general advertising sign . . . ." *Id*; Azarmi Decl., ¶8 Ex. 7.

12         After obtaining approval from the Department of Building Inspection for the Removal

13  Permit on July 18, 2007, Clear Channel finally responded to Erkelens' May 31, 2007 letter by

14  sending a July 20, 2007 letter from Clear Channel's attorneys in which Clear Channel: (1) said

15  that it, and not Erkelens, was the owner of the original Billboard permit; and (2) informed

16  Erkelens that once Clear Channel removed the sign, Erkelens would not be allowed to rebuild the

17  sign due to San Francisco Planning Code Section 604(h).[3] Azarmi Decl. ¶9, Ex. 8.

18         An illegible copy of the Removal Permit was enclosed with Clear Channel's July 20 letter.

19  *Id.* Subsequently, after Erkelens' obtained a legible copy of the Removal Permit, she realized that

20  due to the way Clear Channel had unilaterally worded the Removal Permit, she would lose her

21  right to advertise on the Property. Erkelens Depo. 113:20-114:9. This is because on the Removal

22  Permit Clear Channel wrote that Erkelens was voluntarily abandoning her rights to maintain the

23  Billboard on the Removal Permit. *Id.* In her view, Clear Channel has no right to affect land use

24  rights beyond the unexpired term of its Lease. *Id.*

25  **D.    Erkelens' Appeals The Issuance of The Removal Permit**

26         Upon learning that Clear Channel, in its Removal Permit application, purported to abandon

27

28  _____
    [3] Planning Code Section 604, and its effect, is explained in greater detail in the Argument section below.

1    her right to advertise on the Property, divesting her vested non-conforming land use entitlement,

2    Erkelens' appealed the issuance of the Removal Permit to the San Francisco Board of Appeals

3    ("Board of Appeals" or the "Board").  On October 17, 2007, Erkelens' appeal was heard before

4    the Board of Appeal.  Azarmi Decl. ¶10, Ex. 9.  At that hearing, Board members chastised Clear

5    Channel for engaging in "predatory pricing" and stated that "the behavior manifested by Clear

6    Channel is not very attractive." *Id.* at pp. 18:16-19:13.  After suggesting that they were inclined to

7    revoke Clear Channel's Removal Permit, the Board of Appeal decided to continue the hearing

8    until December 12, 2007, to give Erkelens and Clear Channel a chance to negotiate a settlement in

9    good faith, with the hope that Clear Channel "try to seek a solution and would not deprive

10   [Erkelens] of a source of income." Azarmi Decl. ¶11, Ex. 10 at pp. 59:23-60:3.

11   **E.    Clear Channel Files Its Complaint And Its TRO Application Is Denied By Judge**

12   **Jenkins**

13   After the October 17, 2007 hearing, Clear Channel withdrew its Removal Permit

14   application and filed the Complaint in this action on December 4, 2008, 8 days before it was to

15   appear before the Board of Appeal for a final decision.  In connection with its Complaint, Clear

16   Channel sought a Temporary Restraining Order and Order to Show Cause ("TRO").  Judge

17   Jenkins denied Clear Channel's TRO application and succinctly outlined what this case was really

18   about: whether Clear Channel could **remove** the Billboard.  Notably, Judge Jenkins' Order

19   underscored the fact that, because the Lease between Erkelens and Clear Channel had been

20   terminated, Clear Channel was only seeking to remove the Billboard and had **no** continuing right

21   to **use** the Billboard.  Clearly, Clear Channel is attempting to control the property beyond the

22   expired terms of its lease by extinguishing a land use entitlement.

23   **F.    Clear Channel's Removal Permit Is Revoked By The Board Of Appeal**

24   At the December 12, 2007 hearing, the Board of Appeal voted 5-0 to revoke Clear

25   Channel's Removal Permit.  Azarmi Decl. ¶11, Ex. 10 at pp. 30:5-30:23.  In its Findings of Fact

26   and Conclusions of Law, the Board of Appeal found that:

27             [Erkelens] did not intend or authorize Clear Channel to submit a
              building permit application to "voluntarily" forfeit [Erkelens']
28            right to future general advertising at the Property.  Clear Channel

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1           did not show [Erkelens] the application for the Building Permit,
       [Erkelens] did not authorize the application, and [Erkelens] did not
2           agree to any permit to "voluntarily" surrender [Erkelens'] right to
       general advertising at the Property.

3

4    Erkelens RJN ¶ 5.

5         In addition to finding that Ms. Erkelens never intended to voluntarily forfeit her rights to

6    general advertising at the Property, the Board of Appeal also went further to chastise Clear

7    Channel for its' unfair business practices:

8           Based on the competent testimony of property owners testifying by
       letter and during public comment, we find a pattern of heavy-
9           handed business practices by certain general advertising sign
       companies in lease renewal negotiations that is not in the best
10          interests of the City's business community or residents.  We
       decline to approve a building permit that would encourage and
11          reward such practices.

12   *Id.*

13        Accordingly, the Board of Appeal revoked Clear Channel's Removal Permit.

14   **III.**

15   **ARGUMENT**

16   **A.**    **Standard of Review**

17        To withstand summary judgment, an opposing party must present evidence sufficient to

18   create a genuine issue of fact material to the outcome of the suit.  *McCabe v. General Foods*

19   *Corp.*, 811 F.2d 1336, 1340 (9th Cir. 1987).  Inferences drawn from the evidence must be viewed

20   in the light most favorable to the nonmoving party.  *Eastman Kodak Co. v. Image Technical*

21   *Services, Inc.*, 504 US 451, 456 (1992).  The opposing evidence need not be conclusive, but only

22   need be probative enough to permit a reasonable trier of fact to find in favor of the opposing party.

23   *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 249–250 (1986); *Triton Energy Corp. v. Square D*

24   *Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) (parentheses added) (the test is whether the opposing

25   party "has come forward with sufficiently 'specific' facts from which to draw reasonable

26   inferences about other material facts that are necessary elements of the (opposing party's) claim.").

27        Here, Erkelens own testimony clearly show that Erkelens never intended to transfer her

28   right to advertise on the Property.  This fact is material to this case because it contradicts Clear

1  Channel's understanding of what the parties intended when their predecessors entered into the

2  contract.

3        When Erkelens initially agreed to let Clear Channel remove the Billboard, Erkelens had no

4  idea that, in 2006, the San Francisco Planning Code had been amended to prohibit property

5  owners from replacing or rebuilding advertising signs located on their property that had been

6  voluntarily removed or destroyed. Erkelens Depo. 102:4-103:9. Erkelens also did not know that

7  Clear Channel would subsequently draft a removal permit in such a way that she would

8  permanently lose her right to have a billboard on her Property. *Id.* Erkelens never intended to,

9  and never consented to, give up her property right to the advertise on the Property. *Id.*

10  **B.**   **Under California Law, Contracts Must Be Interpreted To Avoid An Interpretation**
    **That Will Make The Contract Harsh, Unjust, or Inequitable**

11

12        Under California law, courts construing a contract should adopt that construction which

13  will make the contract reasonable, fair and just. *Harris v. Klure,* 205 Cal. App. 2d 574, 578

14  (1962); *Cohn v. Cohn,* 20 Cal. 2d 65, 69 (1942); *Caletti v. State,* 45 Cal. App. 2d 302, 305 (1941).

15  **Further, the interpreting court must avoid an interpretation which will make a contract**

16  **extraordinary, harsh, unjust, or inequitable.** *County of Marin v. Assessment Appeals Bd.,* 64

17  Cal. App. 3d 319, 324-325 (1976); *Harris,* at 578; *Straus v. North Hollywood Hosp., Inc.,* 150 Cal.

18  App. 2d 306, 311 (1957); *Pacific Tel. & Tel. Co. v. City of Lodi,* 58 Cal. App. 2d 888, 892 (1943).

19  Finally, an interpreting court is not limited to only interpreting the "plain meaning" of the terms of

20  the contract, rather the contract may be explained by reference to the circumstances under which it

21  was made, and the matter to which it relates. Cal Civ. Code § 1647; *see also* 1 Bernard E. Witkin,

22  *Summary of California Law,* Contracts § 748, at 836 (10th ed. 2005).

23  **C.**   **Under California Law, Laws Or Ordinances Enacted Subsequent To The Execution**
    **Of A Contract Which Add Burdens Or Responsibilities On The Parties To The**

24  **Contract Do Not Become Part Of The Contract**

25        In California, it is well settled that laws enacted subsequent to the execution of a contract

26  are not deemed part of the contract unless the language of the contract clearly indicates that the

27  parties intend to be bound by future laws. *Swenson v. File,* 3 Cal. 3d 389, 393, 394-95 (1970);

28  *City of Torrance v. Workers' Comp. App. Bd. & State Comp. Ins. Fund,* 32 Cal. 3d 371, 378-79

1    (1982) (finding that parties had expressly agreed to incorporate subsequent changes in law and

2    therefore contract could be enforced according to subsequent change in law); *Equitable Bldg. &*

3    *Loan Assn. v. Wolfangle*, 111 Cal. App. 119, 123 (1931); *Roberts v. Pfefer*, 13 Cal. App. 3d 93,

4    97-98 (1970); *Miracle Auto Center v. Sup. Ct. (Pacific Specialty Ins. Co.)*, 68 Cal. App. 4th 818,

5    821 (1998); 1 Bernard E. Witkin, *Summary of California Law*, Contracts § 753, at 844 (10th ed.

6    2005).   Hence, parties are presumed to have had existing law in mind when they executed their

7    agreement.  *Id.*   **However, subsequent changes in law which impose greater burdens or**

8    **responsibilities upon the parties to the contract do not become part of the contract, because**

9    **to give effect to such greater burdens would result in modifying the contract without the**

10   **parties' consent and would promote uncertainty in commercial transactions.** *Id.*

11   In *Wolfangle*, the owners of adjoining lots built a brick wall dividing their property lines

12   out of twelve inch thick wall.  111 Cal. App. at 120-21 (1931).  In 1905, both parties agreed that

13   should either party wish to extend the wall in the future, both neighbors would split the cost of the

14   work, but that they would continue to use twelve inch thick wall, .   *Id.*   The Pasadena city

15   ordinances in effect in 1905 permitted 12 inch walls.  *Id.* at 122.  In 1926, 21 years after the

16   contract was entered into, one of the parties decided to extend the brick wall, except he used 16

17   inch thick wall, which was required by a subsequently enacted Pasadena city ordinance.  *Id.* at

18   121-22.  When the owner who had extended the wall asked for contribution from his neighbor per

19   their contract, the neighbor refused.  *Id.*

20   The California Court of Appeal held that the neighbor was not liable on the contract, and

21   that the contract provision requiring him to split the costs of the wall addition was unenforceable

22   because the subsequent Pasadena ordinance imposed additional burdens on the neighbor beyond

23   that which he had originally contracted for.  *Id.* at 122-23.  It was unfair to impose upon him the

24   additional requirements created by an ordinance he had never agreed to be governed by.  *Id.*  To

25   enforce the contract against the neighbor would ignore what the parties had actually bargained for

26   when they entered into the contract.  As the *Wolfangle* court put it, "[i]n effect this would amount

27   to the creation of a new and different contract by mere operation of law.  It would result in

28   impairing the obligations of the contract.  This is neither law nor justice."

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1    The *Wolfangle* court, elucidating the rule on which it had based its decision, further stated:

2    > The rule in this regard is clearly stated in the case of *Fuller v.*
3    > *Kane*, 110 Mich. 549 (1896) as follows: "Every contract (which
     > does not expressly provide the contrary) must be considered as
     > made with reference to the existing state of the law, and, **if, by the**
4    > **intervention of the legislature, a change is made in the law,**
     > **which in any degree affects the contract, such contract,** made
5    > without some clear and distinct reference to the prospect or
     > possibility of a change, **does not hold with reference to the state**
6    > **of things as altered by the new law."**

7    111 Cal. App. at 123 (emphasis added).

8    In other words, according to the *Wolfangle* court, if a subsequent change in law affects a

9    contract, the contract is unenforceable to the extent that its terms are affected by the change in law.

10   In *Swenson*, the California Supreme Court cited *Wolfangle* with approval and further

11   enunciated the California rule of law:

12

13   > The parties are presumed to have had existing law in mind when
     > they executed their agreement. *Alpha Beta Food Markets, Inc. v.*
     > *Retail Clerks Union*, 45 Cal. 2d 764, 771 (1955); **to hold that**
14   > **subsequent changes in the law which impose greater burdens**
     > **or responsibilities upon the parties become part of that**
15   > **agreement would result in modifying it without their consent,**
     > and would promote uncertainty in commercial transactions. *See*
16   > *Equitable Bldg. & Loan Assn. v. Wolfangle, supra.*, 111 Cal. App.
     > 119, 122-123. We recognize that the parties could have originally
17   > agreed to incorporate subsequent changes in the law, or could have
     > reexecuted their agreement to accomplish this purpose, but there is
18   > no evidence that they did so in this case.

19   *Swenson v. File*, 3 Cal. 3d at 394 -395.

20   **D.    Due To The Subsequent Changes In The Planning Code, Allowing Clear Channel To**
     **Enforce the Lease Provision Relating To Removal Of The Billboard Would Unfairly**
21   **Impose A Greater Burden on Erkelens Than Was Imposed By The Law That Existed**
     **When The Lease Was Entered Into**

22

23   In its MPSJ, Clear Channel argues that San Francisco land use ordinances are not material.

24   MPSJ at 14. This argument ignores the important principle of California contract law enunciated

25   in the *Wolfangle* and *Swenson* line of cases.   The California principal of law set forth in

26   *Wolfangle*, *Swenson*, and its progeny is directly applicable here for the very reason that major

27   changes to the San Francisco Planning Code law enacted subsequent to the formation of the Lease

28   make Erkelens' obligations under the Lease much more onerous and inequitable.   In effect,

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   subsequent change in San Francisco land use law has modified the agreement between the parties

2   without their consent.

3       In 1984, when the Lease was entered into, nothing in the San Francisco Planning Code

4   prohibited a property owner from erecting a new general advertising sign or from replacing a sign

5   that had been voluntarily removed. Erkelens' RJN, ¶¶ 1, 3. Subsequently, in 2002, Proposition G

6   was adopted and Planning Code Section 611 was added. Erkelens' RJN, ¶ 1. Section 611(a)

7   states: "No new general advertising signs shall be permitted at any location within the City as of

8   March 5, 2002 . . . ." *Id.* Although the 2002 enactment of Section 611 had put in place a citywide

9   moratorium on **new** advertising signs, when Erkelens subsequently purchased the Property in

10  2004, property owners were still entitled to replace lawfully **existing** general advertising signs that

11  were voluntarily removed or destroyed. Erkelens' RJN, ¶ 3. However, another important change

12  in the law occurred when, in 2006, a San Francisco City Ordinance was enacted and Planning

13  Code Section 604(h) was amended to prohibit property owners from replacing or rebuilding

14  lawfully existing advertising signs that had been "voluntarily" removed from their property.

15  Erkelens' RJN, ¶ 2. This subsequent change in the Planning Code gave Clear Channel the unfair

16  power under the Lease, which they never had prior to the 2006 amendment, to deprive property

17  owners of their rights to conduct general advertising on their properties unless they continued to

18  lease to Clear Channel on its terms. It is this precise change in the law that Clear Channel used to

19  threaten Erkelens that removal of the Billboard would leave her with no future right to continue

20  advertising on her property. Azarmi Decl. ¶9, Ex. 10.

21      The provision purporting to allow Clear Channel to remove the Billboard, due to 2006

22  change in the Code, forfeits Erkelens' right to conduct general advertising on her property, and

23  imposes burdens on Erkelens far beyond what was envisioned when the Lease was originally

24  entered into. When the Lease was entered into in 1984, nobody could have envisioned that 22

25  years later a City Ordinance would be enacted which would attach paramount significance to what

26  appears to have been intended to be a relatively minor provision in the overall context of a

27  continuing five year lease. Moreover, nothing in Clear Channel's MPSJ nor in the Lease itself

28  indicates that Erkelens' predecessor ever intended to permanently transfer away the valuable

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   property to conduct general advertising on the Property or otherwise control, encumber or
2   diminish the value of the Property beyond the unexpired terms of the Lease.  Rather, consistent
3   with the *Swenson* and *Wolfangle* line of cases, the parties appear to have intended to incorporate
4   the laws as they existed at the time the Lease was entered into.  Clear Channel should not be
5   allowed to enforce a provision that no longer embodies what the parties Predecessors intended
6   when they entered the Lease.  To allow Clear Channel to enforce the provision, that has no benefit
7   to them, allowing it to remove a valueless metal structure would unjustly deprive Erkelens' of a
8   property right which she, nor her predecessor, never meant to give away or forfeit.  Further, this
9   result would directly contradict the spirit and letter of the law that the California Supreme Court's
10  decision in *Swenson* embodies.

### 1.    Allowing Clear Channel To Abandon Erkelens' Property Rights Conflicts With San Francisco Land Use Law And California Case Law

12  Moreover, allowing Clear Channel to abandon Erkelens' right to conduct general
13  advertising on the Property would contradict Planning Code Section 183, which provides that **only**
14  **the property owner can abandon a non-conforming use**.  Erkelens RJN, ¶4.  In addition to
15  violating the San Francisco Planning Code, this result would be contrary to **established**
16  **California case law, which says that the property owners own land use permits attached to**
17  **their land, and that land use rights run with the land**.  *See Anza Parking Corp. v. City of*
18  *Burlingame*, 195 Cal. App. 3d 855, 858-60 (1987).[4]  Moreover, such an interpretation would be
19  an unjust and inequitable interpretation, and would ignore the objective intent of the parties at the
20  time the Lease was entered into

### E.    Clear Channel Is Not Entitled To Specific Relief Because Specific Relief Would Force Erkelens To Forfeit Her Right To Advertise On The Property

23  In its MPSJ, Clear Channel seeks a declaration that Clear Channel is the owner of the
24  Billboard and that Clear Channel has the right to remove its Billboard.  MPSJ at "Notice of
25  Motion."  In substance and effect, Clear Channel is requesting this Court to specifically enforce
26  the Lease provision relating to removal of the Billboard.  However, even assuming, *arguendo*, that

---

27  [4] *See also*, Erkelens RJN ¶ 5 (San Francisco Board of Appeal finding: ". . . . Section 106.3.1.6 of
28  the San Francisco Building Code requires building permits to be issued only to an authorized agent of the owner of the real property to which the permit pertains. . . .").

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Erkelens breached any enforceable provision of the Lease, Clear Channel is still not entitled to

2    specific enforcement of the Lease because specific relief would permanently forfeit Erkelens' right

3    to advertise on the Property.

4        California Civil Code § 3369 (2008) states:

5

6        **"Neither specific nor preventative relief can be granted to enforce a . . . forfeiture in any case . . . ."**

7    Further, California Civil Code § 3275 (2008) states:

8

9        **"Wherever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture,** by

10       reason of his failure to comply with its provisions, **he may be relieved therefrom, upon making full compensation to the other party,** except in case of a grossly negligent willful, or

11       fraudulent breach of duty."

12       Here, an order allowing Clear Channel to specifically enforce the Lease would violate

13   Section 3369 because it would permanently forfeit Erkelens' right to advertise on her own

14   Property and would unfairly give Clear Channel the right to control Erkelens' property after the

15   expiration of the term of the Lease.  Such an order would also directly contradict the purpose and

16   language of Section 3275.

17       Indeed, one of the longest standing principles of California law is that California courts

18   will not grant the equitable remedy of specific enforcement if to so would cause a forfeiture.  *See*

19   *Keller v. Lewis*, 53 Cal. 113, 118 (1878) (stating that "It is a *universal rule* in equity never to

20   enforce either a penalty or forfeiture. . . On the contrary, equity frequently interposes to prevent

21   the enforcement of a forfeiture at law.") (emphasis in original).

22       In 1951, speaking for the California Supreme Court, Justice Traynor stated the policy

23   against forfeitures, and the rationale underlying Sections 3369 and 3275, which provides that

24   parties should be relieved from forfeiture as long as they pay for any damages:

25           "Upon what principle can . . . damages in excess of compensation
             for the injury done be justified in the case at bar?  These are
26           questions that appeal both to the judgment and conscience of the
             court. . . '[A]ny provision by which money or property would
27           **be forfeited without regard to the actual damage suffered
             would be an unenforceable penalty.'** *Ebbert v. Mercantile Trust*,
28           213 Cal. 496, 499 (1931).  Such penalty cannot reasonably be

justified as punishment for one who wilfully breaches his contract."

*Freedman v. The Rector*, 37 Cal. 2d 16, 20-22 (1951); *see also MacFadden v. Walker*, 5 Cal. 3d 809, 813-14 (1971) (discussing *Freedman* and how Sections 3369 and 3275, along with other Civil Code provisions, "together **established a policy that precludes any forfeiture having no reasonable relation to the damage caused by [breaching party's] breach** even when that breach is willful.").

In *Ascherman v. McKee*, 143 Cal. App. 2d 277, 279-81 (1956), the Plaintiff sought a declaration that Defendant timber buyers had breached a contract to exclusively cut timber on the Plaintiff's land, and an injunction preventing Defendant from cutting any more timber. The court found that, in bringing an action for declaratory relief, Plaintiff had sought the aid of the court to specifically enforce a forfeiture of Defendant's right to cut timber that the Plaintiff claimed the contract gave her. *Id.* at 286-87. Citing Civil Code § 3369, the *Ascherman* court refused to enforce the forfeiture of Defendant's rights by granting Plaintiff's request for declaratory relief. *Id.* The court did order Defendant to compensate Plaintiff for any damage she had suffered with money damages.

### 1. Clear Channel Is Not Entitled To Specific Relief Because It Would Forfeit Erkelens Right To Advertise On Her Property

*Ascherman*, and the civil code sections and California supreme court cases it rests upon, is directly controlling here. Declaring that Clear Channel has the right to remove the Billboard, thus ordering Erkelens to let Clear Channel to tear down her sign and forever depriving Erkelens of any right to advertise on her Property, violate *Ascherman* and would be an unenforceable penalty in relation to the actual damage suffered by Clear Channel. *See Freedman*, 37 Cal. 2d at 20-22. As explained above (Section III. E.), under current San Francisco land use law and Section 604(h), Erkelens' will forever lose her right to advertise on the Property if Clear Channel is allowed to remove the Billboard. However, the record shows that Erkelens never intended to forfeit her rights to advertise on her Property. Erkelens Depo. 102:4-103:9 Further, Clear Channel has been unable, and cannot, identify any damage it has suffered as a result of not being able to remove the

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Billboard. This is because Clear Channel has suffered no damage beyond the salvage value of the

2    scrap metal minus its removal cost of $3,000. Azarmi Decl. ¶ 8, Ex. 7 Clear Channel's available

3    remedy is damages, not specific enforcement.

4    **F.    Specific Performance Cannot Be Enforced Against Erkelens Because To Do So
         Would Be Manifestly Unjust And Unreasonable**

5

6    California Civil Code § 691 (2008) states that:

7    > "Specific performance **cannot** be enforced against a party to a
     > contract in any of the following cases. . . .

8

9    > (2)    **If it is not, as to him, just and reasonable;"**

10    Even if the Lease provision purporting to allow Clear Channel to remove the Billboard is

11    enforceable, specific performance of the Lease should be denied because the result of the specific

12    enforcement, divesting Erkelens of her right to conduct general advertising on the Property, would

13    be inequitable, unjust, and unreasonable.

14    Under California law, if a contract valid at law is in any respect unfair or savors of

15    oppression, equity will not lend its aid but will leave the party to his or her remedy at law. *See* 58

16    Cal. Jur. 3d (Rev) *Specific Performance* § 30 (2008) (and cases cited therein); *Jacklich v. Bauer*,

17    57 Cal. App. 2d 684, 693-94 (1943). Moreover, the burden is on the plaintiff to allege and prove

18    that specific enforcement would be equitable. *Quan v. Kraseman*, 84 Cal. App. 2d 550, 551

19    (1948).

20    As the court stated in *Jacklich*:

21    > "[T]he doctrine that he who seeks equity must do equity means that
     > the party asking the aid of the court must stand in conscientious

22    > relation towards his adversary . . . the transaction from which is
     > claim arises must be fair and just **and the relief itself must not be**

23    > **harsh and oppressive upon the defendant. And that specific**
     > **performance will always be refused . . . when specific**

24    > **enforcement would be oppressive upon the defendant,** or would
     > prevent the enjoyment of his own rights, or would in any other

25    > manner work injustice."

26    57 Cal. App. 2d at 693 (internal citation omitted).

27    Here, ordering the relief that Clear Channel requests, removal of the Billboard, would work

28    a manifest injustice and reward Clear Channel's unfair business tactics. Specific performance in

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1    this case would divest Erkelens of her right as the property owner to conduct general advertising

2    on her Property.  By contrast, Clear Channel is unable to show how money damages would be any

3    less fair to Clear Channel.  Clear Channel has no future expectation of economic benefit from the

4    Billboard because the lease has terminated.  Their only purpose for seeking specific relief so

5    aggressively is their desire to monopolize the outdoor advertising market, and keep its ability to

6    pay below market rents to property owners.  To allow Clear Channel to perpetuate this goal by

7    divesting property owners such as Erkelens of their property rights would be unjust and

8    unreasonable, and in violation of California law.

9    **G.**    <u>**Specific Relief Is Not Appropriate Here Because Clear Channel Can Be Adequately**</u>
<u>**Remedied By Money Damages**</u>

10

11    Specific relief is likewise unavailable to Clear Channel because there exists an adequate

12    remedy at law.  Judge Jenkins, in his December 7, 2007 Order Denying Clear Channel's TRO

13    application, emphasized that injunctive relief was not available to Clear Channel because it had an

14    adequate remedy at law, and could be compensated by money damages.

15    Under California law, the remedy of specific performance will be denied where a party can

16    be adequately compensated for the breach of a contract by an award of money damages.  Miller &

17    Starr, 12 Cal. Real Est. § 34:17 (3d ed. 2008); *Morrison v. Land*, 169 Cal. 580, 588 (1915);

18    *Sheppard v. Banner Food Products*, 78 Cal. App. 2d 808, 813 (1947) (specific performance not

19    available because plaintiff could be adequately compensated at law by money damages);

20    *Tamarind Lithography Workshop v. Sanders*, 143 Cal. App. 3d 571, 576-78 (1983) (damages

21    related to future public acclaim could not be adequately remedied at law, however past damages

22    could be and therefore damages appropriate for past loss of publicity).

23    Here, there is absolutely no reason why Clear Channel would not be remedied by damages.

24    Clear Channel has no future right to use the Billboard.  The Lease has expired, and Clear Channel

25    has no expectation of future economic benefit from the Lease or the Billboard.  It is no more than

26    scrap metal to Clear Channel; scrap metal they would have to pay to remove.  Accordingly, Clear

27    Channel is not entitled to specific relief here.

28    **H.**    <u>**Specific Relief Is Not Available As a Remedy For Conversion Due To The California**</u>

## Policy Against Forfeiture And Civil Code Section 3369

In its MPSJ, Clear Channel further argues that Erkelens has converted the Billboard for the use of Advertising Display Systems (ADS), its competitor. Clear Channel further claims that it has suffered damage, due to it being deprived of the Billboard structure itself. Apparently Clear Channel's argument is that they are somehow suffering damage by not being in physical possession of the salvage metal, nuts, and bolts from the structure itself, since there is no dispute that Clear Channel has no right whatsoever to advertise on the Billboard in the future as the Lease has expired.

However, Clear Channel's conversion argument presumes that Clear Channel owns the sign and has the right to remove it. As argued in Erkelens Motion for Summary Judgment, and in Section III. B. above, the Lease provision under which Clear Channel claims the right to remove the Billboard is enforceable under the *Wolfangle* and *Swenson* line of cases.

Moreover, Clear Channel's claim that they have been damaged is nonsensical, other than as it related to the actual value of the scrap metal value of the sign itself, minus removal costs. They have no future economic expectation from the Billboard and therefore cannot say that they have been damaged by not having it in their possession.

More to the point, however, is that Clear Channel, in stating that it is entitled to the remedy of specific recovery of the Billboard, ignores the California statutory and case law rule that specific relief may not be ordered where the specific relied would cause a forfeiture. Cal. Civ. Code § 3369. Indeed, Cal. Civ. Code §§ 3379 and 3380 both state that a person entitled to possession *"may"* recover the property specifically. However, Cal. Civ. Code § 3369 is phrased in absolute terms: specific relief can not be granted to enforce a forfeiture **"in any case."** In other words, although a party entitled to possession of personal property may have the option of seeking specific recovery, a court cannot order specific recovery if to do so would cause a forfeiture. This reading is consistent with the California Civil Code as well as California case law.

Indeed, California courts find that the proper of measure of damages for conversion of an advertising sign is the fair market value of the advertising sign, taking into accounts the use it may be put to, plus interest from the date of conversion. *See Lonergan v. Monroe*, 77 Cal. App. 2d

DEFENDANT LINDA ERKELENS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

1     223, 225 (1947).

2     **I.**     <u>**Clear Channel Is Not Entitled To An Injunction**</u>

3     In its MPSJ, Clear Channel seeks an injunction preventing Erkelens from not allowing

4 Clear Channel to enter the Property to remove the Billboard. Put another way, Clear Channel

5 seeks an injunction mandating Erkelens to let Clear Channel enter the Property and remove the

6 Billboard.

7     A court cannot grant a mandatory injunction in any case where specific performance

8 cannot be granted since the injunction is, in effect, an award of specific performance. *See* Cal.

9 Civ. Code, § 3423(e); Cal. Civ. Code § 526(b)(5); *Long Beach Drug Co. v. United Drug Co.*, 13

10 Cal. 2d 158 (1939), reh'g denied; *Van Hoosear v. Railroad Commission of California*, 189 Cal.

11 228, 287 (1922); *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.*, 255 Cal. App. 2d 300,

12 304 (4th Dist. 1967). Accordingly, because specific relief is not available for the reasons

13 explained above, Clear Channel is also not entitled to any injunction ordering Ms. Erkelens to let

14 Clear Channel remove its sign.

15                                       **IV.**

16                            <u>**CONCLUSION**</u>

17     Under California law, a subsequent change in law that increases the burden on a

18 contracting party is unfair and does not become part of the contract. Here, Erkelens' predecessor

19 and Clear Channel's predecessor clearly did not intend to permanently transfer the right to

20 advertise on the Property. Moreover, it would defy reasonableness and fairness to interpret a

21 provision that posed no substantial burden on either of the parties in 1984, as justifying removal of

22 the Billboard, thereby permanently depriving Erkelens' of a valuable property right.

23     However, even if the provision in the Lease could be enforced, Clear Channel would not

24 be entitled to Specific Enforcement under any theory of liability (whether in contract or tort). This

25 is because California statutory law, and California Supreme Court case law clearly deny specific

26 relief where to order such relief would cause a forfeiture. In this case, allowing Clear Channel to

27 remove the Billboard would unfairly forfeit Erkelens' property right to advertise on the Property.

28 This is exactly the type of result the California law is designed to protect against.

1    DATED: August 26, 2008             LUCE, FORWARD, HAMILTON & SCRIPPS LLP

2

3                                        By: /s/ Andrew S. Azarmi

4                                            Andrew S. Azarmi
                                            Attorneys for Defendant Linda Erkelens

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28