Scott D. Baker (SBN 84923)
*Email: sbaker@reedsmith.com*
James A. Daire (SBN 239637)
*Email: jdaire@reedsmith.com*
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Plaintiff
Clear Channel Outdoor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,

Plaintiff,

vs.

LINDA ERKELENS, an individual,

Defendant.

Case No.: C 07-06138 SBA (JL)

**CLEAR CHANNEL OUTDOOR, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: September 23, 2008
Time: 1:00 p.m.
Place: Courtroom 3, 3rd Floor

Compl. Filed: December 4, 2007
Trial Date: November 10, 2008

Hon. Saundra Brown Armstrong

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. LEGAL ANALYSIS ..... 2

A. Ms. Erkelens Is Improperly Asking The Court To "Read In" Local Land Use Ordinances ..... 2

B. Ms. Erkelens' Never Owned The Right To Advertise Under Proposition G ..... 5

C. Ms. Erkelens' "Interpretation" Of The Lease As Unenforceable Is Unjust And Inequitable ..... 7

1. Clear Channel's Rights Of Ownership And To Remove Date From 1958 ..... 7

2. Ms. Erkelens Undisguised Goal Is To Give Clear Channel's Sign To A Clear Channel Competitor ..... 8

D. Clear Channel's Proposed Judgment Does Not Force Erkelens To "Forfeit" Any Rights ..... 8

E. Ms. Erkelens Should Be Ordered To Perform The Contract ..... 11

F. Clear Channel Is Entitled To The Return Of Its Property Under Conversion Law ..... 12

III. CONCLUSION ..... 14

Case No.: C 07-06138 SBA DOCSSFO-12526059.3

CLEAR CHANNEL OUTDOOR, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

Ascherman v. McKee,
143 Cal. App. 2d 277 .....9, 10

Clark v. Tallmadge,
23 Cal. App. 2d 703 (1937) .....13

Earle v. Kelly,
21 Cal. App.480 (1913) .....13

Equitable Bldg. & Loan Assn. v. Wolfangle,
111 Cal. App. 119 (1931) .....2, 3, 4

Express Media Group, LLC v. Express Corp.,
2007 U.S. Dist. LEXIS 34800 .....12

Fuller v. Kane,
110 Mich. 549 (1896) .....4

Harris v. Klure,
205 Cal. App. 2d 574 (1962) .....7

Lonergan v. Monroe,
77 Cal. App. 2d 223 (1947) .....13

Morrison v. Land,
169 Cal. 580 (1915) .....11

Nat'l Diversified Servs. v. Bernstein,
168 Cal. App. 3d 410 (1985) .....12

Pacific Tel. & Tel. Co. v. City of Lodi,
58 Cal. App. 2d 888 (1943) .....7

Sheppard v. Banner Food Products,
78 Cal. App. 808 (1947) .....11

Smith v. Mendonsa,
108 Cal. App. 2d 540 (1952) .....11

Swenson v. File,
3 Cal. 3d 389 (1970) .....2, 4

Tamarind Lithography Workshop v. Sanders,
143 Cal. App. 3d 571 (1983) .....11

Troughton v. Eakle,
58 Cal. App. 161 (1922) .....8

## STATUTES

Cal. Civ Code § 3275 .....8

Cal. Civ Code § 3369 .....8

Cal. Civ. Code § 3379 .....12

Cal. Civ Code § 3380 .....12

**MISCELLANEOUS**

Black's Law Dictionary at 677 (8th Ed.)(West 2004) .....8

Rest.2d, Contracts § 357 .....11

Rest.2d, Contracts § 359 .....11

Witkin, Summary of California Law, Contracts § 753, at 844 .....2

# I. INTRODUCTION

Defendant Linda Erkelens' Opposition to Clear Channel Outdoor, Inc.'s ("Clear Channel") Motion For Partial Summary Judgment confirms two undisputed facts. One, Clear Channel and Ms. Erkelens are parties to a written agreement to erect and maintain advertising signs on the upper-west wall of the building at 1801 Turk Street ("the Lease"). And two, the parties agreed in the Lease that Clear Channel: (1) would remain the owner of all advertising signs, structures, and improvements (collectively, the "sign structure") made by Clear Channel; and (2) would have the right to remove the sign structure at any time during the Lease, or after the expiration of the Lease.

There is also no real dispute about the meaning of this provision: it means that the sign structure at issue belongs to Clear Channel and that Clear Channel may remove (or not remove) the sign structure at the termination of the Lease. Instead of advocating a different interpretation of the Lease, Ms. Erkelens argues that the provision is not enforceable because, in the context of the City's land use ordinances, it would result in a forfeiture of "her right to advertise on the [real] property." Ms. Erkelens' interpretation of the City's current land use ordinances would allow her to break the Lease and turn over Clear Channel's advertising structures to Advertising Display Systems 1, LLC ("ADS"), Clear Channel's competitor. (Not coincidentally, Ms. Erkelens' lawyers in the present lawsuit have represented ADS for years in unrelated litigation against Clear Channel.)

The fatal flaw of Ms. Erkelens' argument is that it depends upon this Court "reading into" the Lease San Francisco's current regulations and ordinances relating to general advertising signs. Well settled-law, which Ms. Erkelens erroneously relies on, prohibits this approach, especially where Clear Channel seeks a declaration of its rights under the Lease – not under San Francisco's local land use ordinances. Put simply, Clear Channel does not seek any declaration in connection with Ms Erkelens' purported continuing rights to advertise, if any, and a consideration of those rights is beyond the scope of this Motion.

After Ms. Erkelens terminated the Lease, she attempted to usurp Clear Channel's contractual rights by breaching the Lease and converting Clear Channel's property, at a substantial potential windfall profit to Ms. Erkelens. Ms. Erkelens cannot credibly dispute the meaning of the Lease, so she seeks judicial cover for her conduct under the guise of a non-existent "forfeiture." Clear Channel's Motion should be granted.

## II. LEGAL ANALYSIS

### A. Ms. Erkelens Is Improperly Asking The Court To "Read In" Local Land Use Ordinances

Paragraph 8 of the Lease provides that Clear Channel: (1) remains the owner of the sign structure erected by Clear Channel; and (2) has the right to remove the sign structure before the Lease expires. Ms. Erkelens claims that Paragraph 8 of the Lease is unenforceable because of a purported change in certain immaterial local land use regulations. More specifically, Ms. Erkelens' Opposition contains a lengthy analysis of her interpretation of the City's current land use ordinances. She argues that the Court should read those regulations into the Lease and rule that the Lease is unenforceable, thereby giving Ms. Erkelens ownership of the sign structure. Such an interpretation would contradict the plain language of the Lease and the parties' pre-suit conduct under the Lease. In addition, Ms. Erkelens' strained interpretation would violate principles of California law, which provides that laws enacted subsequent to a contract are <u>not</u> deemed part of the contract unless the language clearly indicates an objective intent to be bound. *See Swenson v. File*, 3 Cal. 3d 389, 394-95 (1970); *Equitable Bldg. & Loan Assn. v. Wolfangle,* 111 Cal. App. 119, 123 (1931); WITKIN, SUMMARY OF CALIFORNIA LAW, CONTRACTS § 753, at 844. Ironically, Ms. Erkelens recognizes that this law is well-settled, but in the next breath asks the Court to consider Proposition G (enacted in 2002) and the related land use ordinances (enacted in 2006) in interpreting the parties' earlier Lease agreement.

Ms. Erkelens' request notwithstanding, neither Proposition G nor the subsequent amendments should be deemed part of the parties' Lease. The City of San Francisco's current land use ordinances do not affect or disturb the parties' rights and obligations under the Lease. In particular, the current ordinances do not disturb the parties' objectively expressed intent that Clear Channel owns the sign structure and has the right to remove it. *Wolfangle,* the case upon which Erkelens principally relies, proves that the Court should <u>not</u> consider the current land use ordinances in interpreting the Lease.

In *Wolfangle*, two adjoining land owners in Pasadena agreed to build a common brick party-wall built 12 inches thick. *Wolfangle,* 111 Cal. App. at 120. A written agreement was executed reserving to the respective parties and their successors the perpetual use and enjoyment of the wall. The agreement also contained the following clause:

> It is further agreed that if at any time either of said parties are desirous of extending said wall beyond its present limitations or to in any manner erect, construct or extend said wall for any reasonable height or depth or length, that the same shall be done at the expense of both parties hereto, share and share alike, and that *said extension*, alteration, addition thereto, or repair thereof *shall be uniform in material and dimensions with the original wall*. [*Id.* (emphasis in original).]

In other words, either party could bind the other party to pay for half an extension of the wall if the extension was also 12 inches thick. If the extension was not 12 inches thick, the other party would not be bound to pay for half because it would not be "uniform in dimensions with the original wall." After the parties entered the agreement, the City of Pasadena enacted an ordinance requiring that brick walls be 16 inches thick. *Id.* at 121. One party later built a 16 inch think extension and demanded that the other party pay for half under the contract, which it refused to do. *Id.* The party responsible for the extension then filed a lawsuit for breach of contract, and a jury ordered the defendant to pay for half the extension under the contract. *Id.*

The appellate court, though, reversed on the ground that the extension was not 12 inches thick, and therefore the defendant was not obligated to pay for half *under the contract*. *Id.* at 122-

Case No.: C 07-06138 SBA – 3 – DOCSSFO-12526059.3

CLEAR CHANNEL OUTDOOR, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

123. The City of Pasadena's subsequent 16 inch mandate did not change the ordinary meaning of the contract – if the extension was not 12 inches thick, there was no obligation to split the cost. *Id.* Indeed, contrary to Ms. Erkelens' characterization, the *Wolfangle* contract was not "unenforceable" against the protesting neighbor. Rather, it was enforceable against both neighbors under the law as it stood when the contract was entered, and the Court ignored the subsequent amendments to the land use ordinances for purposes of interpreting the contract. "[I]f, by the intervention of the legislature, a change is made in the law which in any way affects the contract, such contract, made without some clear and distinct reference to the prospect or possibility of a change, does not hold with reference to the state of things as altered by the new law. *Id.* at 123 (citing *Fuller v. Kane*, 110 Mich. 549 (1896)). Put simply, a change in the law is not considered "part of the contract" without some distinct reference. Ms. Erkelens cites no authority, however (and Clear Channel is aware of none), where a change in the law renders an earlier, lawful contract provision "unenforceable" under the new law.

Here, Ms. Erkelens' reliance on *Wolfangle* and its progeny is completely misplaced. The City of San Francisco's current land use regulations do not affect Paragraph 8 of the Lease and should not be considered part of the Lease. In 1984, when the parties' predecessors entered the Lease, Clear Channel owned the sign structure and had the right to remove it. In 2004 (after the enactment of Proposition G), when Ms. Erkelens assumed the Lease, Clear Channel also owned the sign structure and had the right to remove it; Proposition G did not affect the rights set forth in Paragraph 8. Proposition G did not change the parties' rights or obligations *under the Lease*. Similarly, in 2007, when Ms. Erkelens terminated the Lease, Clear Channel still owned the sign structure and had the right to remove it. Thus, these rights also remained unaffected by the City's amendments to its land use regulations.

Nor does the City of San Francisco's current land use "impose greater burdens or responsibilities upon the parties" under the Lease. *See Swenson*, 3 Cal. 3d at 394-95. Regardless of the City's current, past or future regulatory scheme, Ms. Erkelens has at all times had the obligation

to allow Clear Channel to remove its sign structure at the termination of the Lease. Her obligation is unambiguously stated in the Lease, which provides that Clear Channel has at all times owned the sign structure and retained the right to remove it. Ms. Erkelens' contractual obligation – to let Clear Channel take its sign down – is no more onerous now than it was before the City of San Francisco enacted its current regulations. Contrary to Ms. Erkelens' consistent mischaracterization, Clear Channel does not seek a declaration that Ms. Erkelens does not have the "right to advertise on the Property." Whether Ms. Erkelens has that alleged right is beyond the scope of Clear Channel's Motion for Partial Summary Judgment, which seeks only a judicial declaration of Clear Channel's rights under the Lease.

Indeed, it is Ms. Erkelens – not Clear Channel – that is asking the Court to read the recent local land use ordinances into the Lease. More specifically, Ms. Erkelens believes that the City's recent land use ordinances are somehow a basis for interpreting the Lease so that Ms. Erkelens owns the sign structure and can turn it over to Clear Channel's direct competitor, then choose how she intends to remedy her conduct. This interpretation would constitute a drastic rewrite of the Lease, which states that Clear Channel owns the sign and that Clear Channel has the right to remove it (or not remove it) at the termination of the Lease. It would also put the Court in the unenviable and unnecessary position of having to interpret the City's myriad general advertising sign regulations (and the amendments thereto), which are best left, as an initial matter, to the City's administrative agencies.

**B.    Ms. Erkelens' Never Owned The Right To Advertise Under Proposition G**

Interpretation of the City's local land use ordinances is not material to the Lease provision at issue, and therefore the Court need not consider the ordinances. Notably, however, Ms. Erkelens' theory of "unenforceability" is premised on an erroneous interpretation of the applicable land use ordinances. More specifically, Ms. Erkelens contends without basis that in 2004, "the Code did not prohibit property owners from replacing signs lawfully existing that had been removed from her

property." In fact, Proposition G prohibited the replacement of old signs with new general advertising signs in San Francisco two years before she bought the property in 2004. [Clear Channel's Request For Judicial Notice ("RJN"), Exh. A.] The prohibition states: "[n]o new general advertising signs shall be permitted at any location within the City as of March 5, 2002" except on motor vehicles or in the public right-of-way as permitted by local law. Thus, in 2002, once a sign was removed, it could not be rebuilt.

In 2006, the City reaffirmed this prohibition in certain amendment to the Planning Code. Among other things, the amendments provide specific examples of sign maintenance which would not run afoul of Proposition G, including "alterations of a structural nature required to reinforce a part or parts of a lawfully existing sign to meet the standards of seismic loads and forces of the Building Code, to replace a damaged or weathered signboard, to ensure safe use and maintenance of that sign, to remediate hazardous materials, or any combination of the above alterations." [Clear Channel's RJN, Exh. B.] The City also, however, distinguished ordinary maintenance from voluntary removal and replacement of a general advertising sign, which remained prohibited.

Thus, when Ms. Erkelens took ownership of the apartment building at 1801 Turk Street property in 2004, she did so <u>without</u> any continuing right to advertise after the life of Clear Channel's advertising structure. The undisputed facts prove it. Ms. Erkelens and her husband closed on 1801 Turk Street for a purchase price of $ 3.97 million on August 17, 2004, two years after Proposition G. [Daire Decl., Exh. A (Erkelens Depo.) p. 29:4-22.]. Before the closing, she read the Lease and needed no clarification regarding the Lease from any third party. [Daire Decl., Exh. A (Erkelens Depo.) pp. 47:11-48:19.] In the context of Proposition G (*i.e.*, the City's ban on the erection of new general advertising signs), Ms. Erkelens never had the continuing right to advertise after the life of Clear Channel's advertising structure.

### C. Ms. Erkelens' "Interpretation" Of The Lease As Unenforceable Is Unjust And Inequitable

Ms. Erkelens does not and cannot credibly dispute the plain meaning of Lease. Instead, she argues that the Lease should be "unenforceable" in the context of the current local land use regulations. However, as Ms. Erkelens correctly points out, one rule of contract construction is that the contract should be interpreted to be fair, reasonable, and just, and not harsh, unjust or inequitable. *See, e.g., Harris v. Klure*, 205 Cal.App. 2d 574, 578 (1962); *Pacific Tel. & Tel. Co. v. City of Lodi*, 58 Cal.App. 2d 888, 892 (1943). In this case (and though Ms. Erkelens offers no alternative interpretation of the Lease to begin with), any interpretation other than the plain meaning would be unjust and inequitable in light of Clear Channel's long-standing rights.

#### 1. Clear Channel's Rights Of Ownership And To Remove Date From 1958

Ms. Erkelens does not dispute that the original sign structure was affixed to the property five decades ago, but does not identify the owner of the original "Billboard" or permit. As a matter of undisputable fact, however, Clear Channel's predecessor built the original sign. Mrs. Erkelens' own evidence proves it: Clear Channel's predecessor affixed the original sign structure and owns the original permit. [See Azarmi Decl. ¶ 3, Exh. 2.] More specifically, the permit shows that Foster & Kleiser – Clear Channel's predecessor – applied for the building permit in 1958 as the owner of the sign structure. *Id.* From that time until the present, Clear Channel has paid all taxes to maintain (and eventually take down) the sign structure. [*See* Declaration of Patrick Powers ¶ 2.] Thus, there can be no dispute that Clear Channel's predecessor erected the sign structure at issue, and that Clear Channel has always owned the sign and had the right to take it down. To deprive Clear Channel of the right to control property it has owned for fifty years, notwithstanding the plain language of the Lease and the parties' undisputed pre-suit conduct, would constitute an inequitable interpretation of the Lease.

### 2. Ms. Erkelens Undisguised Goal Is To Give Clear Channel's Sign To A Clear Channel Competitor

Rendering Paragraph 8 of the Lease "unenforceable" would also unjustly create a substantial windfall for Ms. Erkelens and ADS, at Clear Channel's expense. Contrary to Ms. Erkelens' representations, she is not "leasing" Clear Channel's billboard to ADS; she is selling it outright. According to the plain language of her agreement with ADS, she is giving ADS ownership over "any advertising structures" "used" by ADS at 1801 Turk Street. [Daire Decl., Exh. A (Erkelens Depo.) pp. 163:17-165:13, Exh. 17 at ¶ 3.] In addition, the ADS agreement purports to obligate Ms. Erkelens to use her "best efforts" to deliver possession of the existing sign structure to ADS. [*Id.* at ¶ 8.] Thus, the effect of her subsequent agreement with ADS is that ADS becomes the owner of Clear Channel's sign structure. In exchange for turning over Clear Channel's "advertising structure," ADS agreed to pay Ms. Erkelens approximately $ 82,540 over 10 years. [Daire Decl., Exh. A (Erkelens Depo.), Exh. 17 at ¶ 2.] Clear Channel, meanwhile, would be left with nothing for its substantial investments in the sign structure since 1958 and its plain contractual right to take the sign structure down at the end of the Lease term.

## D. Clear Channel's Proposed Judgment Does Not Force Erkelens To "Forfeit" Any Rights

Ms. Erkelens also argues that, although it cannot be credibly disputed that she has breached the Lease and converted Clear Channel's property, Clear Channel is not entitled to an order that it owns the sign structure and has the right to remove it. The reason, according to Ms. Erkelens, is that such an order would "permanently forfeit Erkelens' right to advertise on the Property." Forfeiture is "the divestiture of property without compensation," or alternatively "the loss of a right privilege or property because of a crime, breach of obligation, or neglect of duty." BLACK'S LAW DICTIONARY at 677 (8th Ed.) (West 2004); *see also* Cal. Civ Code §§ 3275, 3369. The rule that the law looks with disfavor upon forfeitures, however, does not permit the courts to make for the parties a different contract from what they agreed upon, or resort to unnatural construction to defeat their clearly

expressed intention. *Troughton v. Eakle*, 58 Cal App 161, 173 (1922). Here, Ms. Erkelens performance of her legal obligations creates no forfeiture for at least two reasons.

One, Ms. Erkelens is not "forfeiting" any alleged right to advertise under the Lease, and therefore she cannot seek relief from forfeiture. The Lease clearly provides that Clear Channel owns its sign structure and has the right to remove it at the termination of the Lease. Ms. Erkelens does not dispute this, and a more explicit statement of the intention of the parties could hardly be made. Moreover, the Lease contains no terms in connection with Ms. Erkelens purported "right to advertise on the Property," expressly or otherwise, which is a necessary element of a contractual "forfeiture."

For example, in *Ascherman v. McKee,* 143 Cal. App 2d 277, 279-281, the land owner claimed that she had terminated defendants' exclusive right to cut timber under the contract because the defendants had failed to keep certain unrelated covenants. *Id.* at 280. Importantly, the land owner purported to terminate the defendants' continuing right to cut timber "within about two months after she received the full payment for the timber." *Id.* at 286. The land owner then brought an action for declaratory relief, seeking a judgment that the defendants had no continuing right to cut timber. The appellate court affirmed judgment for the defendants based on the rule against forfeiture, provided that the defendants pay the landowner for breach of the unrelated covenants. *Id.* at 287-288. Thus, *Ascherman* stands for the unremarkable proposition that a fully-compensated contracting party cannot later create a forfeiture of the other party's contractual rights by alleging a breach of unrelated covenants.

*Ascherman*, however, has no application to the undisputed facts here. It cannot be credibly disputed that the Lease between the parties has no terms in connection with Ms. Erkelens' alleged continuing right to advertise on her real property. Further, the declaratory relief Clear Channel seeks does not mention any alleged continuing right to advertise. Clear Channel seeks a declaration that (1) Clear Channel is the owner of the signs, structures, and improvements at 1801 Turk Street; and (2) the parties have voluntarily agreed by virtue of their contract that Clear Channel has the right to

voluntarily remove (or to not remove) the signs, structures and improvements at its sole discretion, including the right to retain all permits necessary to effectuate the removal. (Clear Channel also seeks an injunction preventing Defendant from denying Clear Channel access to the sign structure for the purpose of completing its voluntary removal.) Thus, unlike the *Ascherman* defendants, Ms. Erkelens is not being denied any contractual right after she compensated Clear Channel. Also, there is also no credible dispute that, unlike the *Ascherman* defendants, Ms. Erkelens has received the consideration due her under the Lease, *i.e.* (and among things) Clear Channel's payments from when she took ownership of the real property to when she terminated the Lease. Accordingly, Ms. Erkelens does not, and cannot point to any contractual right she is purportedly forfeiting by virtue of her full performance of the Lease.

Two, whether Ms. Erkelens has a purported inherent right to advertise on her apartment building at 1801 Turk Street is not relevant to determining the issues presented in Clear Channel's Motion. Notably, however, only Ms. Erkelens' strained reading of Proposition G affords her any purported inherent right to advertise. Ms. Erkelens, like any other real property owner in San Francisco, has no right to continue to advertise past the life of a non-conforming sign in the context of Proposition G. It is undisputed that Ms. Erkelens took ownership of the real property after the City enacted its ban on new general advertising signs in Proposition G, and after reading the Lease term at issue here, which provides that Clear Channel owns the sign and may remove it. [Daire Decl., Exh. A (Erkelens Depo.) p. 29:4-22; 47:11-48:19.] Ms. Erkelens does not have any inherent right to continue to advertise past the life of Clear Channel's sign because the City expressly forbids the erection of new general advertising signs, and had enacted the prohibition two years before Ms. Erkelens took ownership of the real property at 1801 Turk Street. Put differently, if Clear Channel did not maintain a sign structure there when Ms. Erkelens took ownership in 2004, the City's ban would have prevented her from erecting a sign on her apartment building. The only reason that Ms. Erkelens can baselessly claim that she has a purported "right to advertise" now is that Clear Channel did erect and did maintain a sign there since 1958. Ms. Erkelens cannot forfeit a right she does not have, and Clear Channel is entitled to the declaratory relief it seeks.

**E. Ms. Erkelens Should Be Ordered To Perform The Contract**

Ms. Erkelens also argues that Clear Channel can be adequately compensated with monetary damages, and that those monetary damages should be limited to the "scrap metal value" of the sign structure (so that Ms. Erkelens can then sell the sign structure to ADS). Neither is true. Notably, none of the cases upon which Ms. Erkelens relies involve vindication of a contracting party's ownership of personal property. *See Morrison v. Land*, 169 Cal. 580, 588 (1915) (alleged contract to bequeath a sum of money compensable with damages); *Sheppard v. Banner Food Products*, 78 Cal. App. 808, 813 (1947) (damages adequate where plaintiff did not seek to acquire an interest in the property, but only a lien upon it); *Tamarind Lithography Workshop v. Sanders*, 143 Cal. App. 3d 571, 576-78 (1983) (specific performance appropriate to enforce contract for screen credits).

Here, Clear Channel cannot be adequately compensated with damages because the right to remove a non-conforming structure it owns is not fully compensable. Clear Channel seeks a declaratory judgment stemming from Ms. Erkelens' promise not to deny Clear Channel its right to remove its sign structure. When, as here, a contract or provision sought to be enforced is negative (a promise not to do a particular thing), equity grants relief by an injunction restraining the defendant from acting in violation of the agreement. *See* Rest.2d, Contracts §§357, 359; *Smith v. Mendonsa*, 108 Cal.App.2d 540, 543 (1952) (adjoining landowner's promise not to permit trees to grow more than 15 feet high specifically enforced). Importantly, Clear Channel does not seek to enforce a contract <u>to transfer</u> personal property from Ms. Erkelens to Clear Channel, which may or may not be compensable with money damages. Instead, Clear Channel seeks to enforce a contract to vindicate its ownership of the sign structure, which it has indisputably owned since 1958.

Also, and contrary to Ms. Erkelens' contention, there is also no prior court order restricting Clear Channel's recovery to only money damages. Ms. Erkelens' reliance on Judge Jenkins' Order re Clear Channel's Application for a TRO as somehow "law of the case" is misplaced. In the earlier Order and before any discovery, Judge Jenkins found that Clear Channel's injuries *could* be

"adequately remedied" by money damages (and therefore did not address the likelihood of success on the merits). [Docket No. 11.] Clear Channel disagrees with this finding, but does not seek reconsideration for purposes of this motion. Nor does this Court need to reconsider it. Judge Jenkins' finding does not restrict Clear Channel to *only* monetary damages before discovery had even commenced. In addition, Judge Jenkins' Order is not relevant to Clear Channel's *choice* of remedies. As set forth below, and assuming *arguendo* that monetary damages are adequate as a matter of contract law, the law of conversion gives Clear Channel an election between monetary damages and recovery of the specific property at issue.

Damages are also not an adequate remedy because, despite Ms. Erkelens' insistence to the contrary, damages cannot be easily calculated using the "scrap metal value" of the sign structure. Ms. Erkelens' proposed remedy for her own breach ignores the substantial windfall due to her for misappropriating Clear Channel's sign. More specifically, under the ADS contract, the undisputed fact is that Ms. Erkelens stands to gain $ 82,540 for selling Clear Channel's sign to its competitor. [Daire Decl., Exh. A (Erkelens Depo.) pp. 163:17-165:13, Exh. 17.] At the end of that 10 year term, she will presumably again seek to sell Clear Channel's rights to ADS or another Clear Channel competitor. In addition to belying her claim that Clear Channel's damages should be limited to the "scrap metal value of the sign itself, minus removal costs," the evidence show that, absent the declaratory relief Clear Channel seeks, Ms. Erkelens will continue to misappropriate Clear Channel's sign indefinitely.

**F. Clear Channel Is Entitled To The Return Of Its Property Under Conversion Law**

Ms. Erkelens concedes, as she must, that Clear Channel would ordinarily be entitled to the return if its property as a matter of conversion law. *See* Cal. Civ. Code §§ 3379, 3380; *Nat'l Diversified Servs. v. Bernstein*, 168 Cal.App.3d 410, 418 (1985) (the owner's remedies include specific recovery of the property, *or* its present value, plus damages for the period of its detention; "the unsuccessful party must deliver the property if possible and has no option to pay for it and keep

it."); *see also Express Media Group, LLC v. Express Corp.*, 2007 U.S. Dist. LEXIS 34800, *12 (granting motion for partial summary judgment of conversion; plaintiffs entitled to return of their domain name under California Civil Code section 3380). Nevertheless, Ms. Erkelens claims that this is not the ordinary case because granting Clear Channel the right to remove it sign structure pursuant to the undisputed plain contract language would create a forfeiture for Ms. Erkelens. As set forth above, however, Ms. Erkelens is not forfeiting any alleged right to advertise on her real property, both because that is not a contractual right to begin with and because there is no inherent right to advertise in the City of San Francisco. Accordingly, Clear Channel is entitled to take its sign down.

In addition, Ms. Erkelens also mischaracterizes *Lonergan v. Monroe*, 77 Cal. App. 2d 223, 225 (1947), which involved the measure of damages for conversion of neon signs. The court in that case never considered declaratory relief as an alternative or supplement to monetary relief because the plaintiff brought the action *only to recover damages*. *Id.* at 224. Ms. Erkelens' suggestion that *Lonergan* rejected the application of California Civil Code 3369 in the context of the conversion of advertising signs is disingenuous. More importantly, *Lonergan* does not change or otherwise affect the rule that a party with the right to remove its property from another's real property is entitled to judgment to effectuate its right to remove. *See Clark v. Tallmadge*, 23 Cal.App.2d 703, 706-707 (1937) (lessee has right to remove property affixed to the land as lessee's personal property because of express agreement); *Earle v. Kelly*, 21 Cal.App.480, 483 (1913) (same).

///

///

///

## III. CONCLUSION

The material facts are not in dispute. Clear Channel owns the sign structure and the right to remove it. After Ms. Erkelens terminated the Lease, she attempted to usurp those rights by breaching the Lease and converting Clear Channel's property at a substantial potential profit for Ms. Erkelens. Ms. Erkelens cannot dispute any of this, so she asks this Court to ignore the plain meaning of the Lease in favor of an interpretation of the City of San Francisco's current land use ordinances. The Court should decline Ms. Erkelens' invitation. The current City of San Francisco land use ordinances do not affect the meaning of the Lease or impose additional burdens under the Lease, and are therefore inapplicable as a matter of law. Accordingly, Clear Channel is entitled to a declaration of its rights under the Lease.

DATED: September 2, 2008.

REED SMITH LLP

By /s/ James A. Daire
James A. Daire
Attorneys for Plaintiff
Clear Channel Outdoor, Inc

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 2nd day of September 2008, with this document via the Court's CM/ECF system. I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/
James A. Daire