Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936

Telephone:   +1 415 543 8700
Facsimile:    +1 415 391 8269

Attorneys for Plaintiff
Clear Channel Outdoor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>LINDA ERKELENS, an individual,<br><br>                Defendant. | Case No.:  C 07-06138 SBA (JL)<br><br>**CLEAR CHANNEL OUTDOOR, INC.'S OPPOSITION TO DEFENDANT LINDA ERKELENS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    September 30, 2008<br>Time:   1:00 p.m.<br>Place:   Courtroom 3, 3rd Floor<br><br>Compl. Filed:  December 4, 2007<br>Trial Date:  November 10, 2008<br><br>Hon. Saundra Brown Armstrong |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................2

    A. The Undisputed Material Facts Set Forth By Ms. Erkelens ......................................2

        1. Clear Channel's Predecessor Built The Sign Structure At 1801 Turk Street ......................................................................................................2

        2. Clear Channel And Erkelens Are Parties To The Lease At Issue ...............3

    B. Erkelens' Statement Includes Certain Immaterial And Disputed Facts ......................4

        1. Clear Channel Disputes Ms. Erkelens' Immaterial Descriptions Of The City's Land Use Ordinances ...............................................................4

        2. Clear Channel Disputes Ms. Erkelens' Characterization Of The Value Of The Sign ......................................................................................6

        3. Ms. Erkelens Told Clear Channel To Remove The Sign Structure And Clear Channel Told Her That A New Sign Would Be Prohibited ...................................................................................................6

III. LEGAL ANALYSIS .............................................................................................................7

    A. Summary Judgment Of Unenforceability Is Not Appropriate Because Ms. Erkelens Cannot Satisfy Her Burden ..........................................................................7

    B. Ms. Erkelens Is Improperly Asking The Court To "Read In" Local Land Use Ordinances ...........................................................................................................8

        1. A Subsequent Change In The Law Does Not Render An Earlier Contract Provision "Unenforceable" ...........................................................9

        2. There Was Never A Change In The Law Affecting The Right To Replace Clear Channel's Sign ...................................................................10

        3. Ms. Erkelens' Purported Change In The Law Does Not Affect The Lease ...........................................................................................................11

    C. Ms. Erkelens' Interpretation Of The Lease Is Unjust And Inequitable .....................12

        1. Clear Channel's Rights Of Ownership And To Remove Date From 1958 .................................................................................................13

        2. Ms. Erkelens Has No Legitimate Rights To Clear Channel's Sign Structure ....................................................................................................13

        3. Ms. Erkelens Undisguised Goal Is To Give Clear Channel's Sign To A Clear Channel Competitor ...............................................................14

IV. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .................................................................................................. 7, 8

Anza Parking Corp. v. City of Burlingame,
   195 Cal. App. 3d 855 (1987) ......................................................................................... 14

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ......................................................................................................... 8

Equitable Bldg. & Loan Assn. v. Wolfangle,
   111 Cal. App. 119 (1931) ...................................................................................... 8, 9, 10

Harris v. Klure,
   205 Cal. App. 2d 574 (1962) ........................................................................................ 12

In re Deep Vein Thrombosis,
   356 F. Supp. 2d 1055 (N.D. Cal. 2005) ......................................................................... 7

Pacific Tel. & Tel. Co. v. City of Lodi,
   58 Cal. App. 2d 888 (1943) .......................................................................................... 12

Swenson v. File,
   3 Cal. 3d 389 (1970) ............................................................................................ 8, 9, 10

## STATUTES

Fed. R. Civ. P. 56(c) ............................................................................................................... 7

Planning Code § 188(b) ......................................................................................................... 5

Planning Code § 607(g)(1) ........................................................................................ 5, 10, 14

SF Planning Code 1987-1999, § 607.1(e) .......................................................................... 11

## MISCELLANEOUS

Witkin, Summary of California Law, Contracts § 753, at 844 ........................................... 3

## I. INTRODUCTION

Defendant Linda Erkelens ("Erkelens") Motion for Summary Judgment treads over the same ground as her Opposition to Clear Channel's Motion for Summary Judgment. She argues that Paragraph 8 of the parties' written lease agreement (the "Lease") – which unequivocally states that Clear Channel owns the sign structure at issue and has the right to remove it at the conclusion of the Lease term – should be unenforceable. That way, she would be free to use or assign rights in Clear Channel's sign to Advertising Display Systems 1 LLC ("ADS"), the Clear Channel competitor sponsoring this Motion.

As set forth in Clear Channel's own Motion for Summary Judgment, however, Ms. Erkelens' rendering of the Lease ignores its plain language and the parties' pre-suit conduct, which support granting judgment in Clear Channel's favor. Accordingly to Ms. Erkelens, the Lease should be unenforceable because of a non-existent "change" in local land use regulation that she claims eliminated her purported right to replace Clear Channel's sign. This construction of the Lease violates well-settled law that a court should disregard "changes" in applicable law when interpreting an earlier lawful contract provision, and Ms. Erkelens' asserted "change" in the law has no affect on Clear Channel's rights under the Lease. Therefore, the asserted "change" cannot be the basis for rendering the Lease unenforceable, even under Ms. Erkelens' mistaken interpretation of the law.

The remainder of Ms. Erkelens' motion consists of unsupported attorney argument related to Clear Channel's purported "business activities." Not surprisingly, Ms. Erkelens never offers any nexus between Clear Channel's purported business activities and interpretation of this Lease. In fact, the evidence here strongly favors Clear Channel's interpretation of the Lease because Clear Channel has maintained ownership of the sign structure and the right to remove it for fifty years; Ms. Erkelens' supposed right to replace the sign is dictated by local land use ordinance, not the Lease; and, but for enforcement of the Lease by this Court, Ms. Erkelens stands to gain a substantial windfall at Clear Channel's expense. In sum, Ms. Erkelens offers no legitimate reason why this Lease should be unenforceable.

## II.  FACTUAL BACKGROUND

### A.  The Undisputed Material Facts Set Forth By Ms. Erkelens

Clear Channel does not dispute Ms. Erkelens' assertion that Clear Channel's predecessor erected the sign structure at 1801 Turk Street and obtained the original permit. [*See* Declaration of Andrew Azarmi ("Docket No. 65 Azarmi Decl.") ¶ 2, Exh. 1.] Clear Channel also does not dispute that Clear Channel and Ms. Erkelens are parties to the Lease, which provides that Clear Channel remains the owner of the sign structure and may (or may not) remove it at the end of the Lease. [Defendant's Memorandum of Points and Authorities ("Docket No. 63 Defendant's MPA"), p. 3.] As set forth below, however, neither of these undisputed material facts establishes that the Lease is not enforceable or that Ms. Erkelens may hand over Clear Channel's sign structure property to a direct competitor or otherwise improperly utilize Clear Channel's property. To the contrary, as discussed in Clear Channel's Motion for Summary Judgment, these facts establish that Clear Channel has the undisputed right to take down its sign structure at the termination of the Lease.

### 1.  Clear Channel's Predecessor Built The Sign Structure At 1801 Turk Street

Clear Channel does not dispute that the original sign structure was affixed to the property five decades ago or that Clear Channel's predecessor built the original sign. Ms. Erkelens admits that the "Billboard" was first "affixed" in 1958, but does not identify the owner of the original "Billboard" or permit. [*Id.*] Ms. Erkelens' own evidence, however, proves that Clear Channel's predecessor affixed the original sign structure and owns the original permit. [*See* Docket No. 65 Azarmi Decl. ¶ 2, Exh. 1.] The original permit shows that Foster & Kleiser – Clear Channel's predecessor – applied for the building permit in 1958 as the owner of the sign structure. *Id.* Thus, there can be no dispute that Clear Channel's predecessor erected the sign structure at issue.

2. **Clear Channel And Erkelens Are Parties To The Lease At Issue**

There is also no dispute that Clear Channel's predecessor and Ms. Erkelens' predecessor entered into the Lease in 1984 for the purpose of maintaining the sign structure. It is further undisputed that Paragraph 8 of the Lease states in relevant part:

> Lessee [Clear Channel] shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee [Clear Channel], and that, notwithstanding the fact that the same constitute real estate fixtures, the Lessee [Clear Channel] shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease. [Docket No. 63 Defendant's MPA, p. 3.]

Absent proper termination, the Lease automatically renewed for successive five year terms. On July 2, 1990, Clear Channel's predecessor-in-interest and Erkelens' predecessor-in-interest increased the annual rent and changed the term of the Lease to seven years. [Declaration of James A. Daire in support of Clear Channel's Motion for Partial Summary Judgment ("Docket No. 60 Daire Decl."), Exh. A (Erkelens Depo.) pp. 88:9 – 89:11, Exh. 6; Declaration of Patrick Powers in support of Clear Channel's Motion for Partial Summary Judgment ("Docket No. 50 Powers Decl.") ¶ 2, Exh. A.] The parties also specified that "[a]ll other terms and conditions of the existing lease shall remain the same." [Docket No. 50 Powers Decl. ¶ 2, Exh. A.] On August 21, 2002, Clear Channel and Erkelens' predecessor-in-interest agreed to another amendment whereby the rent increased and the term of the Lease changed to five years. [*Id.*] The parties again specified in writing that "[a]ll other terms and conditions of the existing Lease Agreement dated January 1, 1984 shall remain the same." [*Id.*] Thus, the parties again affirmed Clear Channel's ownership of all "signs, structures or improvements" throughout the life of Lease and never amended Clear Channel's unequivocal right to remove all "signs, structures or improvements" during or after expiration of the Lease. [*Id.*]

B.  **Erkelens' Statement Includes Certain Immaterial And Disputed Facts**

   1.  **Clear Channel Disputes Ms. Erkelens' Immaterial Descriptions Of The City's Land Use Ordinances**

These undisputed facts notwithstanding, Ms. Erkelens asks the Court to render Paragraph 8 "unenforceable" based solely on her characterization of San Francisco's local land use ordinances, which she contends "changed" in 2006, thereby taking away her alleged right to replace Clear Channel's sign. For the reasons stated in Clear Channel's Motion for Partial Summary Judgment, these ordinances are immaterial to the basic issue of contract interpretation before the Court. In addition, Ms. Erkelens' characterizations of the ordinances are disputed.

In 2006, the City of San Francisco did amend its Planning Code. The amendments, however, did not change the following law (effective 2002): no general advertising sign could be replaced once it was removed. In 2002, the City's voters adopted Proposition G, which states: "[n]o new general advertising signs shall be permitted at any location within the City as of March 5, 2002" except on motor vehicles or in the public right-of-way as permitted by local law. [Clear Channel's Request For Judicial Notice re Motion for Partial Summary Judgment ("Docket No. 49 RJN"), Exh. A.] Thus, as of 2002, Clear Channel's sign was a non-conforming structure under the newly minted City-wide ban on new signs.

Ms. Erkelens does not dispute the effect of Proposition G. Instead, Ms. Erkelens attempts to distinguish between the 2002 ban on new advertising signs, on one hand, and replacement of existing advertising signs, on the other. According to Ms. Erkelens, she could have hypothetically replaced Clear Channel's non-conforming general advertising sign in 2002, but not after 2006. [Docket No. 63 Defendant's MPA, p. 10.] Ms. Erkelens is incorrect. In 2002, no non-complying structure (including Clear Channel's sign structure at 1801 Turk Street) could be restored once it was removed except "in full conformity with the requirements of this Code." [See Clear Channel's

Request for Judicial Notice in Opposition to Erkelens' Motion for Summary Judgment ("Opp. RJN") Exh. A (Planning Code Section 188(b), effective July 14, 1992).] And as of 2002, no general advertising signs could be built in San Francisco under the Code. [Docket No. 49 RJN, Exh. A.] Thus, as of 2002, the City expressly prohibited replacing an existing sign structure that had been voluntarily removed. The 2006 amendments did not change this. Contrary to her description, Ms. Erkelens could not have replaced Clear Channel's sign structure as of 2002 with any general advertising structure.

Moreover, since at least 1984, the Clear Channel sign at 1801 Turk Street could not be replaced once removed. Specifically, the City's local land use regulations in 1984 prohibited Ms. Erkelens (or anyone else) from replacing Clear Channel's sign once it was removed. At that time, the City's regulations dictated that Clear Channel's sign structure at 1801 Turk Street was a "non-conforming structure" incapable of replacement. In 1984, Clear Channel's sign structure was zoned as part of the C-2 District by the City of San Francisco. [Declaration of Patrick Powers in Opposition to Erkelens' Motion for Summary Judgment ("Opp. Powers Decl."). ¶ 7, Exh. B.] Under the 1984 version of Planning Code Section 607(g)(1), no general advertising sign attached to a building in the C-2 District could "extend or be located above the roofline of the building to which it is attached." [Opp. RJN, Exh. B (Planning Code Section 607(g)(1) was approved in 1977, and unchanged through at least 1986.)] The Clear Channel sign presently extends above the roofline at 1801 Turk Street, as it did in 1984. [Opp. Powers Decl. ¶ 5, Exh. A.] Accordingly, Clear Channel's sign structure could not be replaced in 1984.

Accordingly, Ms. Erkelens' immaterial contention that there is no dispute that the 2006 Planning Code amendments took away her purported right to replace Clear Channel's sign structure is incorrect. Her Motion should be denied for this reason alone.

2. **Clear Channel Disputes Ms. Erkelens' Characterization Of The Value Of The Sign**

There is also a dispute (material to Ms. Erkelens' Motion only) over the value of the sign structure. According to Ms. Erkelens, the value of the sign is the value of scrap metal, minus the cost of removal. [Docket No. 63 Defendant's MPA.] Clear Channel contends that Ms. Erkelens stands to unjustly profit from her use of Clear Channel's sign structure, as evidenced by her agreement with ADS. According to the plain language of her agreement with ADS, she is giving ADS ownership over "all advertising structures" "placed or used" by ADS at 1801 Turk Street. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) pp. 163:17-165:13, Exh. 17.] In addition, the ADS agreement purports to obligate Ms. Erkelens to use her "best efforts" to deliver possession of the existing sign structure to ADS. [*Id.*] Thus, the effect of her subsequent agreement with ADS is that ADS becomes the owner of Clear Channel's sign structure. In exchange for turning over Clear Channel's "advertising structure," ADS agreed to pay Ms. Erkelens approximately $ 82,540.00 over 10 years. ADS also agreed to pay all of Ms. Erkelens' fees in connection with this suit and her appeal of Clear Channel's Removal Permit, including fees incurred for this Motion. [Declaration of James A. Daire in Opposition to Erkelens' Motion for Summary Judgment ("Opp. Daire Decl."), Exh. A (Erkelens Depo.) at 125:19-126:21.]

3. **Ms. Erkelens Told Clear Channel To Remove The Sign Structure And Clear Channel Told Her That A New Sign Would Be Prohibited**

Ms. Erkelens also disingenuously suggests in her Motion that Clear Channel obtained the Removal Permit without Ms. Erkelens' consent. In fact, there is no dispute that Ms. Erkelens asked Clear Channel to remove the sign structure in writing when she terminated the Lease. Specifically, in her May 31, 2007 Termination Notice, Erkelens asked Clear Channel to "make arrangements to remove the billboard and [] lock box from our gate by [July 31, 2007]." [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) pp. 97:3-14, Exh. 8.] After Ms. Erkelens told Clear Channel to make

Case No.: C 07-06138 SBA — 6 — DOCSSFO-12527136.3
CLEAR CHANNEL OUTDOOR, INC.'S OPPOSITION TO DEFENDANT LINDA ERKELENS' MOTION FOR SUMMARY JUDGMENT

arrangements to remove the billboard (and under its contractual authority), Clear Channel applied to the Department of Building Inspection ("DBI") for a permit to remove the sign structure. Two days after it obtained the Removal Permit, Clear Channel sent a letter to Erkelens along with a copy of the Removal Permit. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) pp. 110:18-112:1, Exh. 9.] In the letter, Clear Channel advised Erkelens that it would remove its sign structure from 1801 Turk Street commencing July 30, 2007. [*Id.*] In addition, Clear Channel informed Erkelens that, under the San Francisco Planning Code, the sign structure could not be rebuilt once Clear Channel removed it. [*Id.*] In a July 23, 2007 letter, Erkelens acknowledged receipt of the Removal Permit. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) pp 112:16-114:21, Exh. 10.] At the time, she raised no objection to the Removal Permit or offered any comment on the City's ban on new general advertising signs. [*Id.*] To the contrary, Erkelens thanked Clear Channel for sending the letter and Removal Permit to her. [*Id.*] (Now, she claims she could not read the Removal Permit.) Although Ms. Erkelens now contests Clear Channel's right to remove its sign, there is no credible dispute that she at earlier times consented to the removal under the Lease.

### III.   LEGAL ANALYSIS

**A.   Summary Judgment Of Unenforceability Is Not Appropriate Because Ms. Erkelens Cannot Satisfy Her Burden**

In reviewing a motion for summary judgment, a court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1060 (N.D. Cal. 2005); *see* Fed. R. Civ. P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material where, under applicable substantive law, it may affect the outcome of the case. *Id.*, at 248. Ms. Erkelens, as the moving party, bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Under Rule 56(c), an issue of material fact "is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, *quoting First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Put differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *Id.*, at 249.

Only by ignoring the actual undisputed evidence of record can Ms. Erkelens find something to say in her Motion for Summary Judgment. Those facts and the applicable law mandate this Motion's denial.

**B.   Ms. Erkelens Is Improperly Asking The Court To "Read In" Local Land Use Ordinances**

Ms. Erkelens claims that Paragraph 8 of Lease is unenforceable because of a change in certain immaterial local land use regulations. More specifically, Ms. Erkelens argues that the Court should read the City of San Francisco's current local land use regulations into the Lease and rule that Ms. Erkelens owns the sign structure. Such an interpretation would contradict the plain language of the Lease and the parties' pre-suit conduct under the Lease. In addition, Ms. Erkelens' strained interpretation would violate principles of California law, which provides that laws enacted subsequent to a contract are <u>not</u> deemed part of the contract unless the language clearly indicates an objective intent to be bound. *See Swenson v. File*, 3 Cal. 3d 389, 394-95 (1970); *Equitable Bldg. & Loan Assn. v. Wolfangle*, 111 Cal. App. 119, 123 (1931); WITKIN, SUMMARY OF CALIFORNIA LAW, CONTRACTS § 753, at 844. Applying this law to the Lease at issue here, the Court should interpret Paragraph 8 of the Lease <u>without regard</u> to subsequent changes in local land use regulations.

Ms. Erkelens, however, transmogrifies this well settled law to mean that "if a subsequent change in the law affects a contract, the contract is unenforceable to the extent that its terms are affected by the change in the law." [Docket No. 63 Defendant's MPA, p. 9.] Ms. Erkelens goes on to argue that that the current San Francisco local land use regulations are a "subsequent change in the law" which "affects Paragraph 8 of the Lease," and therefore Paragraph 8 is "unenforceable." Ms. Erkelens is wrong on all counts.

### 1. A Subsequent Change In The Law Does Not Render An Earlier Contract Provision "Unenforceable"

First, a subsequent change in the law does not render an earlier contract "unenforceable" to the extent that its terms are "affected" by the change in the law. In *Swenson*, for example, the contract at issue was a partnership agreement made in 1960 containing a covenant not to compete within 20 miles of the partnership's office. *Id.* at 391. In 1960, this geographical restriction could not be enforced under state statute. In 1961, however, the state statute was revised to permit countywide covenants not to compete. *Id.* at 392. A few weeks later, the retiring partner withdrew from the partnership and set up a business within the county. The court held that the 1960 version of the statute, not the subsequent 1961 version, applied to interpretation of the partnership agreement. *Id.* Rather than using the subsequent change to invalidate the covenant not to compete, the *Swenson* court <u>disregarded</u> the subsequent change for the purpose of contract interpretation.

The result in *Wolfangle* is the same. The court disregarded a subsequent change in law for the purpose of contract interpretation. *Wolfangle*, 111 Cal. App. at 123. There, the parties to a contract to maintain a common 12-inch thick party-wall agreed that both parties would pay for half the cost of building any extension to the wall "uniform in dimensions" with the existing wall. *Id.* at 120. After the parties entered the agreement, the City of Pasadena enacted an ordinance requiring that extensions to brick walls be 16 inches thick. *Id.* at 121. One party later built a 16-inch thick extension and demanded that the other party pay for half under the contract. The demanding party

asserted that the new Pasadena ordinance forced it to build a 16-inch thick extension in breach of the parties' contract, and that the defendant should still pay half. *Id.* As in *Swenson*, however, the *Wolfangle* court disregarded the subsequent change to Pasadena's local land use ordinances for the purpose of contact interpretation. Contrary to the contract, the extension was not 12 inches thick, so the defendant had no obligation to pay. *Id.* at 122-123. Neither *Swenson* nor *Wolfangle* stands for the proposition that a change in the law renders an earlier lawful contract term "unenforceable."

### 2. There Was Never A Change In The Law Affecting The Right To Replace Clear Channel's Sign

Second, even applying *arguendo* Ms. Erkelens' mistaken interpretation of *Wolfangle*, *Swenson* and its progeny, Paragraph 8 of the Lease remains enforceable. Contrary to Ms. Erkelens' contention, there was no change in the local land use law in 2006 which took away her right to replace Clear Channel's sign structure.

In 1984, when the Lease was undisputedly entered, Clear Channel's sign structure could not be replaced under the then-existing local land use law. In 1984, the City of San Francisco had zoned Clear Channel's sign structure in the City's C-2 District. [Opp. Powers Decl. ¶ 7, Exh. B.] Then, as now, the sign structure was a 24 feet by 12 feet general advertising sign, attached to the wall of the apartment building, and rising above the roof line of the building. [Opp. Powers Decl. ¶ 5, Exh. A; Declaration of Andrew Azarmi in Opposition to Clear Channel's Motion for Partial Summary Judgment ("Docket No. 70 Azarmi Decl.") ¶ 12, Exh. 11.]

Under the 1984 version of Planning Code Section 607(g)(1), however, no general advertising signs attached to a building in the C-2 District could "extend or be located above the roofline of the building to which it is attached." [Opp. RJN, Exh. B.] Planning Code Section 607(g)(1) was effective in 1977, and unchanged through at least 1986. Accordingly, when the Lease at issue was

signed in 1984, Clear Channel's sign was a "non-conforming structure" under local land use regulations that could not be replaced.

Further, from 1984 until the City-wide ban was enacted in 2002 – and at all times since Proposition G – Clear Channel's sign structure remained a non-conforming structure that could not be replaced by the land owner. Prior to the effective date of Proposition G in 2002, the City had re-zoned Clear Channel's sign structure into the NC-2 District. [Opp. Powers Decl. ¶ 8, Exh. C.] General advertising wall signs were allowed in the NC-2 Districts. However, as in 1984, general advertising signs in the NC-2 District were not allowed to extend above the roofline of buildings to which they were attached. [*See* Opp. RJN, Exh. C. (SF Planning Code 1987-1999, Sec. 607.1(e) ("[T]he building wall shall form a complete backdrop for the sign, as the sign is viewed from all points from a street or alley from which it is legible."))] In addition, general advertising wall signs could not exceed 72 square feet in area. [*See* Opp. RJN, Exh. C. (SF Planning Code 1987-1999, Sec. 607.1(e) ("Such sign shall not exceed 72 square feet in area nor exceed 12 feet in height."))]

As Ms. Erkelens' evidence proves, Clear Channel's sign structure fails to satisfy either of these regulations. The sign structure extends above the roofline of the apartment building at 1801 Turk Street and it is 288 square feet. [Docket No. 70 Azarmi Decl. ¶ 12, Exh. 11; Opp. Powers Decl. ¶ 5, Exh. A.] Thus, from 1984 to the present, Clear Channel's sign structure was a non-conforming structure that could not be replaced by Ms. Erkelens or her predecessors. There was no change in the law in connection with Clear Channel's sign structure.

3.   **Ms. Erkelens' Purported Change In The Law Does Not Affect The Lease**

Third, whether or not there was a change in the law, the change has no affect on the parties' rights and obligations under the Lease. As the evidence submitted by both parties shows, whether landowners have any purported right to replace existing non-conforming structures is a function of local land use regulation, which may restrict or prohibit certain land uses of real property. In this

case, whether Ms. Erkelens has any alleged "right to replace" after Clear Channel's sign structure comes down is beyond the scope of the parties' Lease. Consistent with the City of San Francisco's regulatory scheme, the Lease does not expressly or implicitly mention any alleged right to replace.

Instead, the parties' rights and obligations in connection with the existing sign structure are plainly stated in Paragraph 8, which provides that Clear Channel remains the owner of its existing sign structure and may (or may not) remove it at the termination of the Lease term. Ms. Erkelens' alleged "right to replace" does not affect Paragraph 8. In 1984, when Ms. Erkelens contends she could replace Clear Channel's sign structure, Clear Channel remained the owner of its sign structure and had the right to remove it. In 2002, when the City passed Proposition G and prohibited new general advertising signs in San Francisco, Clear Channel remained the owner of its sign structure and had the right to remove it. And in 2007, when Ms. Erkelens terminated the Lease, Clear Channel remained the owner of its sign structure and had the right to remove it. Regardless of the status of local law in connection with purported rights to replace billboard advertising, Clear Channel's right to take down its sign structure is not affected.

### C. Ms. Erkelens' Interpretation Of The Lease Is Unjust And Inequitable

As Ms. Erkelens correctly points out, one rule of contract construction is that the contract should be interpreted to be fair, reasonable, and just, and not harsh, unjust or inequitable. *See, e.g., Harris v. Klure*, 205 Cal.App. 2d 574, 578 (1962); *Pacific Tel. & Tel. Co. v. City of Lodi*, 58 Cal.App. 2d 888, 892 (1943). Ms. Erkelens never offers any evidence, however, as to why enforcing Paragraph 8 of the Lease would be allegedly inequitable. Instead, she offers unsupported attorney argument of Clear Channel's alleged "unscrupulous tactics at Erkelens' expense." [*See generally* Clear Channel's Objections to Evidence.] Ms. Erkelens' unsubstantiated attorney argument does not satisfy her burden and Ms. Erkelens' Motion for Summary Judgment should be denied for this reason alone. If the Court is inclined to consider the equities, however, it would find that the actual evidence supports enforcement of the Lease.

### 1. Clear Channel's Rights Of Ownership And To Remove Date From 1958

As a matter of undisputable fact, Clear Channel's predecessor built the original sign. The permit Ms. Erkelens relies on shows that Clear Channel's predecessor applied for the building permit in 1958 as the owner of the sign structure. [*See* Docket No. 65 Azarmi Decl. ¶ 2, Exh. 1.] From that time until the present, Clear Channel has paid all taxes to maintain (and eventually take down) the sign structure. [Opp. Powers Decl. ¶4.] Clear Channel's predecessor erected the sign structure at issue, and Clear Channel has always owned the sign and taken the steps necessary to maintain control over the sign structure. To deprive Clear Channel of the right to control property it has owned for fifty years, notwithstanding the plain language of the Lease and the parties' undisputed pre-suit conduct, would constitute an inequitable interpretation of the Lease.

### 2. Ms. Erkelens Has No Legitimate Rights To Clear Channel's Sign Structure

To manufacture an argument on the equities, Ms. Erkelens claims without evidence that enforcing the contract would "lead to the perverse result that Ms. Erkelens would be deemed to forever have given up a valuable property income stream" stemming from her purported right to replace Clear Channel's sign structure on her apartment building. [Docket No. 63 Defendant's MPA, p. 3.] Not so. For one, as set forth above, Ms. Erkelens' purported right to replace is a function of local land use regulation, not the contract. Thus, there is no evidence that she is "forever" giving up any purported inherent right by virtue of enforcing the contract. In addition, the evidence shows that Ms. Erkelens never had a "valuable property income stream" stemming from her purported right. Ms. Erkelens closed on 1801 Turk Street for a purchase price of $ 3.97 million after she reviewed all financial documents. Among other things, she had actual notice that, in the year prior to her purchase, the income from renting Clear Channel space for its sign was only approximately .6% of the property's $ 286,639 total gross income. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) p. 29:4-22; pp 59:18-60:11.; pp. 55:24-57:9.] Ms. Erkelens' due diligence flies in the face of a purported "valuable property income stream."

Ms. Erkelens reliance on local and state law to prevent enforcing the contract is also misplaced. According to Ms. Erkelens, enforcement of the Lease would "contradict" Planning Code Section 183 and "established California caselaw, which says that the property owners own land use permits attached to their land, and that land use rights run with the land." [Docket No. 63 Defendant's MPA p. 11-12.] Initially, and contrary to Ms. Erkelens' suggestion, Planning Code Section 183 does not provide that only the real property owner can abandon a non-conforming use. [Defendant's Request For Judicial Notice ("Docket No. 64 RJN") ¶ 4, Exh. D.] Planning Code Section 183 states that the "owner" of the non-conforming structure can abandon the non-conforming use. Here, there is no credible dispute that Clear Channel owns the non-conforming sign structure; therefore Clear Channel can remove it.

In addition, Ms. Erkelens leaves unsaid any connection between "land use rights" that "run with the land" under California law and her purported right to advertise at 1801 Turk Street. As the City's myriad regulations show, there is no inherent right to erect a general advertising sign on an apartment building in San Francisco. More importantly, California law does not prevent a lessee such as Clear Channel from exercising a contractual right to remove a structure that it erected, maintained, and used for fifty years. *See Anza Parking Corp. v. City of Burlingame*, 195 Cal. App. 3d 855, 858 (1987) ("it is the policy of this state that all property, and personal rights of any kind, are freely transferable, unless expressly prohibited by law." (citations omitted)).

3. **Ms. Erkelens Undisguised Goal Is To Give Clear Channel's Sign To A Clear Channel Competitor**

Rendering Paragraph 8 of the Lease "unenforceable" would also unjustly create a substantial windfall for Ms. Erkelens, at Clear Channel's expense. According to the plain language of her agreement with ADS, she is giving ADS ownership over "all advertising structures" "used" by ADS at 1801 Turk Street. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.) pp. 163:17-165:13, Exh. 17.] In addition, the ADS agreement purports to obligate Ms. Erkelens to use her "best efforts" to

deliver possession of the existing sign structure to ADS. [*Id.*] Thus, the effect of her subsequent agreement with ADS is that ADS becomes the owner of Clear Channel's sign structure. In exchange for turning over Clear Channel's "advertising structure," ADS agreed to pay Ms. Erkelens approximately $ 82,540.00 over 10 years. [Docket No. 60 Daire Decl., Exh. A (Erkelens Depo.), Exh. 17.] In addition, ADS is paying Ms. Erkelens' fees incurred in this dispute to prevent Clear Channel from removing its sign structure. [Opp. Daire Decl., Exh. A (Erkelens Depo.) at 125:19-126:21.]

Clear Channel, meanwhile, would be left with nothing for its substantial investments in the sign structure since 1958 and its plain contractual right to take the sign structure down at the end of the Lease term. Worse, it would have paid for all applicable taxes, permits and maintenance related to its sign structure for fifty years only to see it handed over to a direct competitor.

## IV. CONCLUSION

The only law Ms. Erkelens can muster in support of rendering the Lease "unenforceable" actually supports Clear Channel's interpretation of the Lease. Further, the only "evidence" she can offer in support of her Motion are immaterial and erroneous descriptions of San Francisco land use regulations and unsubstantiated attorney argument that ignores Clear Channel's decades-old ownership and removal interests. Ms. Erkelens' Motion should be denied.

DATED: September 9, 2008.

REED SMITH LLP

By   /s/ James A. Daire
James A. Daire
Attorneys for Plaintiff
Clear Channel Outdoor, Inc

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 9th day of September 2008, with this document via the Court's CM/ECF system. I certify that all parties in this case are represented by counsel who are CM/ECF participants.

```
                            /s/
                    _____
                      James A. Daire
```