**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>LINDA ERKELENS, an individual,<br><br>            Defendant. | No.  C 07-06138 SBA<br><br>**ORDER**<br><br>[Docket Nos. 59, 63] |

Before the Court is plaintiff Clear Channel Outdoor, Inc.'s Motion for Partial Summary Judgment (the "PMSJ") [Docket No. 59], its Request for Judicial Notice [Docket No. 49], defendant Linda Erkelens' Memorandum in Opposition [Docket No. 68], Erkelens' Request for Judicial Notice [Docket No. 69], Clear Channel's Objections [Docket No. 73], and Clear Channel's Reply [Docket No. 72].

Also before the Court is Erkelens' Motion for Summary Judgment (the "DMSJ") [Docket No. 63], Erkelens' Request for Judicial Notice [Docket No. 64], Clear Channel's Objections [Docket No. 80], Clear Channel's Memorandum in Opposition [Docket No. 75], Clear Channel's Request for Judicial Notice [Docket No. 78], and Erkelens' Reply [Docket No. 81].

Clear Channel has sued Erkelens for breach of contract, conversion, trespass to chattels, promissory estoppel, unjust enrichment, and declaratory judgment. The parties, lessee and landlady, dispute who owns a billboard and its conditional use permit. Clear Channel seeks partial summary judgment on its first, second, and sixth claims, specific performance, an injunction, and damages. Erkelens seeks summary judgment on all claims.[1] The Court having reviewed the parties' pleadings, finds this matter suitable for disposition without a hearing, under Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court GRANTS Clear Channel's Motion for Partial Summary Judgment, and DENIES Erkelens' Motion for Summary Judgment.

---

[1]   Erkelens' DMSJ essentially tracks her opposition to Clear Channel's PMSJ, thus she effectively only moves for summary judgment on Clear Channel's first, second, and sixth claims.

# BACKGROUND

## I. Factual Developments

### A. The Parties

Plaintiff Clear Channel is in the business of outdoor advertising. PMSJ at 3. It globally manages and maintains sign structures, including in San Francisco. *Id.* Defendant Linda Erkelens has been a licensed real estate broker for approximately 30 years. In whole or in part, she owns four apartment buildings and a mini-storage business in San Francisco. Docket No. 60, Ex. A (Def.'s Dep.) at 11:17-20, 17:10-19; 26:12-17. She also operates a property management business. *Id.* at 21:10-20.

### B. The Permit, the Billboard, and the Lease, 1958 through 2004

On September 5, 1958, Clear Channel's predecessor-in-interest obtained a conditional use permit (the "Permit") from the San Francisco Department of Public Works to erect a sign and billboard on the upper-west wall of a building at 1801 Turk Street in San Francisco (the "Property"). Docket No. 70, Ex. 1. On or about January 1, 1984, Clear Channel's and Erkelens' predecessors-in-interest entered into a lease (the "Lease") "for the purpose of erecting and maintaining advertising signs" at the Property. Def.'s Dep. at 88:9-89:11, Ex. 6; Docket No. 50 (Decl. of Patrick Powers ("Powers Decl.")) ¶ 2 & Ex. A at 1 (the "Lease"). Paragraph 8 of the Lease states:

> It is agreed between the parties that Lessee shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee, and that, notwithstanding the fact that the same constitute real estate fixtures, the Lessee shall have the right to remove said signs, structures, and improvements at any time during the term of the Lease, or after the expiration of this Lease.

Lease ¶ 8.

The monthly rent was $70 and the term for five years, and would renew for a like term, unless cancelled by either party 60 days prior to a term's expiration, or at any time by the lessee on 60 days' notice. *Id.* ¶ 7. On July 2, 1990, the parties' predecessors-in-interest increased the monthly rent to $110 and changed the Lease term to seven years, but expressly left all other terms unchanged. Def.'s Dep. at 88:9-89:11 & Ex. 6; Powers Decl. ¶ 2, Ex. A at 2. On August 21, 2002, Clear

1 Channel and Erkelens' predecessor-in-interest increased the monthly rent to $162.50, with an 3%
2 annual increase, and changed the Lease term to five years, but expressly left all other terms
3 unchanged.  Def.'s Dep. at 88:9-89:11 & Ex. 6; Powers Decl. ¶ 2, Ex. A at 3.  Since 1958 and
4 through the present, Clear Channel has paid all property taxes for its sign and structure.  Powers
5 Decl. ¶ 2.

### C. 2002: San Francisco voters pass Proposition G.

On March 5, 2002, the voters of the city of San Francisco added section 611 to their Planning Code.  Docket No. 49, Ex. A.  It was intended to address the number of billboards in the city.  *Id.*  Subdivision (a) states, "No new general advertising signs shall be permitted in any location within the City as of March 5, 2002, except as provided in Subsection (b) of this ordinance."  *Id.*  Subsection (b) allows signs on motor vehicles and in the public right-of-way as allowed by local law.  *Id.*  Subsection (c) allows general advertising sign companies to contract with the Board of Supervisors to relocate existing legally permitted general advertising signs to any place where such signs could have been lawfully erected prior to March 5, 2002, subject to the Planning Code's conditional use procedures.  *Id.*

### D. 2004: Erkelens purchases the Property.

In 2004, Erkelens and her husband began looking for a mid-1920s marina style apartment building to add to their portfolio.  Def.'s Dep. at 29:19 –31:23.  They became interested in the Property because it would attract the kind of tenants to the kind of building she likes to own.  *Id.*  Before purchasing the Property, Erkelens reviewed all of her predecessor-in-interest's relevant financial documents, including the Lease, for which she needed no clarification.  *Id.* at 43:3-14, 47:11-48:19.  She did not consult with any other professionals, as she was confident in her years of experience with owning and managing properties.  *Id.* at 30:15-20; 44:24-46:2.

On August 17, 2004, Erkelens and her husband closed on the Property for $3.97 million.  *Id.* at 29:4-22.  Erkelens concluded the price made sense based on the Property's income and expenses and the cost to finance the purchase.  *Id.* at 59:18-60:11.  The billboard was immaterial for her calculations, as the year prior to purchase the Property's total gross income was $286,639, of which

///

1  Clear Channel's rent was only $1,974, or 0.7%. *Id.* at 55:24-57:9. Indeed, prior to escrow, she had
2  no plans for the sign structure. *Id.* at 49:11-17.

### E. 2006: Section 604(h) of the Planning Code is amended.

Effective June 22, 2006, section 604(h) of the Planning Code was amended to state, in part:

> A sign which is voluntarily destroyed or removed by its owner or which is required by law to be removed may be restored only in full conformity with the provisions of this Code . . . . A general advertising sign that has been removed shall not be reinstalled, replaced, or reconstructed at the same location, and the erection, construction, and/or installation of a general advertising sign at that location to replace the previously existing sign shall be deemed to be a new sign in violation of Section 611(a) of this Code[.]

Docket No. 49, Ex. B at 2.

This prohibition is subject to two exceptions, however: (1) "reinstallation, replacement, or reconstruction pursuant to a permit duly issued prior to the effective date of this requirement shall not be deemed a violation of Section 611(a)"; and (2) "this prohibition shall not prevent a general advertising sign from being relocated to that location pursuant to a Relocation Agreement and conditional use authorization under Sections 611 and 303(1) of this Code . . . ." Docket No. 49, Ex. B at 2.

### F. Erkelens terminates the Lease, but refuses to release the sign or structure.

On February 14, 2007, Erkelens sent Clear Channel a letter notifying them "again"[2] that she would not renew the Lease, that is, roll it over automatically for another five years, but was willing to negotiate a new lease. Docket No. 65, Ex. 5. Clear Channel attempted to contact her, but she did not respond. Def.'s Dep. at 90:8-25.

///
///
///

---

[2]  The parties do not explain what prior notice, if any, gives rise to the term "again."

4

On May 29, 2007, Erkelens signed a Lease with Advertising Display System 1, LLC[3] ("ADS") for the purpose of "installing and maintaining a sign, to be used for general advertising purposes . . . ." Def.'s Dep., Ex. 17. The monthly rent was $600 with a 3% annual increase. *Id.* ¶ 2. Paragraph 3 states:

> Lessee shall retain ownership of any electrical fixtures and/or advertising structure placed or used by Lessee upon Lessor's property. At the expiration of this lease, Lessee, at their sole cost and at Lessor's discretion, shall restore the "wall sign area" to a painted condition which matches its surrounding wall area.

*Id.* ¶ 3.

It further states ADS "shall post in a like manner to the present Clear Channel posting[,]" *id.* ¶ 1, and "if the existing sign structure is left behind . . . may use it or remove at their sole cost[,]" *id.* ¶ 4. This lease also states it only begins when Clear Channel's Lease expires, and that Erkelens will use her best efforts to deliver possession to ADS as soon as this expiration occurs. *Id.* ¶ 8.

Two days later, on May 31, 2007, Erkelens sent Clear Channel a termination notice, effective July 31, 2007, stating in part, "Please make arrangements to remove the billboard and your lock box from our gate by [July 31, 2007]. [¶] We are retaining [the Permit]." Def.'s Dep at 101:19-102:10; 104:2-7, Ex. 8.

Clear Channel attempted to comply with Erkelens' demand, and obtained a removal permit from the San Francisco Department of Building Inspection ("DBI") on July 18, 2007. Compl. ¶ 15; Answer ¶ 15. The permit indicated the work would be the "[v]oluntary removal, razing, and demolition of nonconforming noncomplying general advertising sign per Planning Code secs. 181(b), 188(b) and 604(h)." Docket No. 65, Ex. 7. Two days later, Clear Channel sent a copy of it to Erkelens along with a letter advising (1) it would remove its sign and structure and (2) section 604(h) would bar her from installing a replacement. Def.'s Dep., Ex. 9. The letter also said

---

[3] ADS has apparently been competing with Clear Channel for market share in San Francisco, for some years, and they are no stranger to litigating their issues in state and federal court. *See, e.g.*, Docket 82, Exs. B, E-F. Under Federal Rule of Evidence Rule 201, the Court takes judicial notice of court filings provided by Erkelens, but does not take judicial notice of the truth or falsity of any facts alleged or any findings of fact or conclusions of law. *See Wyatt v. Terhune*, 315 F.3d 1114 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 690 (9th Cir. 2001).

Clear Channel needed to schedule equipment and personnel, so unless it heard from Erkelens by July 24, 2007, it would presume she consented to the removal. *Id.* On July 23, 2007, Erkelens responded, "Thank you for your letter and copy of the permit. We expect that as part of the removal, you will repair any and all damage the installation and removal of the sign has created to the roof and side of the building." *Id.*, Ex. 10.

Three days later, attorneys paid by ADS, Def.'s Dep. at 125:19-126:21, sent a letter to Clear Channel ordering it not to remove its sign or structure, and to stay off the Property, as Erkelens and ADS intended to appeal the issuance of the removal permit to the San Francisco Board of Appeals (the "Board"). Compl. ¶ 21, Ex. J; Answer ¶ 21. Hearings were held before the Board on October 17 and December 12, 2007. Docket No. 83, Exs. C & D. The Board attempted but was unable to craft a solution whereby Clear Channel could remove its sign and structure, without Erkelens "voluntarily" removing the same and thus losing her ability to have general advertising on the Property. *See id.* On March 26, 2008, the Board overruled the DBI and directed it to revoke the removal permit. Docket No. 82, Ex. C at 1. The Board found Clear Channel had not checked a box on its application to indicate it had authority as Erkelens' agent to "voluntarily" remove *its* own sign, and thus surrender *her* right to future general advertising at the Property.[4] *Id.* ¶¶ 5-6. The Board expressly declined to consider or interpret the Lease, noting it was before this Court.[5] *Id.* ¶ 9. On June 16, 2008, Clear Channel filed a petition for a writ of mandate with the San Francisco Superior Court, seeking to overturn the Board's decision. Docket 82 ¶ 8 & Ex. H.

## II.   Procedural Developments

Clear Channel filed suit in this Court on December 4, 2007. Docket No. 1. The case was initially assigned to a magistrate judge, and on a declination to so proceed, the matter was reassigned

---

[4]   The Board also independently grounded its decision on the basis of public comment indicating "a pattern of heavy handed business practices by certain general advertising sign companies in lease renewal negotiations that is not in the best interests of the City's business community or residents. We decline to approve a building permit that would encourage and reward such practices." Docket No. 82, Ex. C ¶ 3. *See* note 5 *infra*.

[5]   Under Federal Rule of Evidence Rule 201, the Court takes judicial notice of the Board's decision, but does *not* take judicial notice of the truth or falsity of any facts alleged or any findings of fact or conclusions of law. *See Wyatt v. Terhune*, 315 F.3d 1114 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 690 (9th Cir. 2001).

1  Judge Jenkins.  Docket Nos. 5, 14.  On December 7, 2007, Judge Jenkins denied Clear Channel's
2  request for a temporary restraining order.  Docket No. 17.  On February 15, 2008, the matter was
3  reassigned to this Court.  *See* Docket No. 22.  On August 11, 2008, Clear Channel filed its Motion
4  for Partial Summary Judgment (the "PMSJ") [Docket No. 59], and on August 12, 2008, Erkelens
5  filed her Motion for Summary Judgment (the "DMSJ") [Docket No. 63].

## LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment must demonstrate that there are no genuine issues of material fact.  *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001).  In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

These same standards apply when parties file cross-motions for summary judgment.  *See Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *ACLU of N.M. v. Santillanes*, 506 F. Supp. 2d 598, 624 (D.N.M. 2007).

///

# ANALYSIS

## I.  Evidentiary Rulings

### A.  Requests for Judicial Notice

The parties request the Court take judicial notice of the effective date and content of section 611 of the Planning Code, the effective date and content of the 2006 amendment to section 604(h) of the Planning Code, and the current text of section 183 of the Planning Code. Docket No. 49 (Pl.); Docket No. 64 ¶¶ 1-4 (Def.); Docket No. 69 ¶¶ 1-4 (Def.). The Court GRANTS these requests and takes judicial notice of these publicly filed documents, as their existence and contents are not subject to reasonable dispute as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court also GRANTS Erkelens' request to take judicial notice of certain Board decisions and court filings.[6] Docket No. 64 ¶ 5; Docket No. 69 ¶ 5; Docket No. 82. In their regard, however, the Court does not take judicial notice of the truth or falsity of any facts alleged or any findings of fact or conclusions of law. *See Wyatt v. Terhune*, 315 F.3d 1114 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 690 (9th Cir. 2001).

The Court DENIES as moot Clear Channel's request to take notice of (1) the current text of section 188(b) of the Planning Code, Docket No. 78 ¶ 1 & Ex. A; (2) the text effective from 1977 through 1986 of section 607 of the Planning Code, *id.* ¶ 2 & Ex. B; and (3) the text effective from 1987 through 1999 of section 607.1 of the Planning Code, *id.* ¶ 3 & Ex. C. Clear Channel presents these documents in support of its argument that from 1977 through 2002 Erkelens and her predecessors-in-interest have not had the right to replace the sign or its structure because it is a nonconforming use, due to its size and its extension above the roof-line. *See* Docket No. 75 at 5, 10-11. As the Court does not reach this argument in disposing of the motions before it, it need not take judicial notice of these supporting documents.[7]

---

[6]  *See* discussion in text accompanying notes 3 through 5 *supra*.

[7]  The Court notes were it to reach this argument, Clear Channel would have a problem because (1) their materials are incomplete, only covering the period from 1977 through 1999, rather than through 2002; and (2) the documents are ambiguous and not clearly supportive of Clear Channel's position.

**B.     Objections**

Clear Channel raises four objections. It first objects to portions of certified transcripts provided by Erkelens, of hearings held by the City and County of San Francisco Board of Appeals (the "Board"), on October 17 and December 12, 2007, regarding a permit obtained by Clear Channel to remove its sign and structure from the Property. Docket No. 73 at 1; Docket No. 80 at 1. The portions are attached as Exhibits 9 and 10 to the Declaration of Andrew S. Azarmi [Docket No. 70], Erkelens' counsel. Clear Channel argues Azarmi lacks personal knowledge to authenticate these documents under Federal Rule of Evidence 901 and *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). *Orr* holds an *uncertified* hearing transcript may not be admitted as evidence for a motion for summary judgment, even if a person at the hearing declares it is a true and correct copy. *Id.* at 776-77. *Orr* also holds, however, *certified* transcripts are admissible if authenticated by a reporter, under Federal Rule of Civil Procedure 80 (testimony may be proved by a transcript certified by the person who reported it). *See Orr*, 285 F.3d at 776-77. Azarmi included the reporter's certificate with each portion. *See* Docket No. 83, Exs. C-D. The portions are thus admissible, and the Court OVERRULES the objection.

Clear Channel also objects to statements at page 3 of Erkelens' DMSJ and page 4 of her opposition to the PMSJ, where she alleges the Board chastised Clear Channel for "predatory pricing" and unattractive behavior, and cites for support to the transcript portions just discussed. Docket No. 73 at 2; Docket No. 80 at 2. Clear Channel objects on the ground the transcript portions are inadmissible. *Id.* As the Court has just held they are admissible, it OVERRULES the objection.

Clear Channel also objects to a statement by Erkelens, at page 3 of her DMSJ and page 4 of her opposition to the PMSJ, that in 2004 the Planning Code did not prevent property owners from replacing signs lawfully existing that had been removed from their property. Docket No. 73 at 1; Docket No. 80 at 1. Clear Channel alleges this is legal argument camouflaged as "fact," noting her only supporting evidence is her attorney's opinion. *Id.* The Court SUSTAINS the objection.

Finally, Clear Channel objects to a lengthy argument by Erkelens at pages 12 and 13 of the DMSJ, purporting to describe Clear Channel's conduct with her and with property owners in general. Docket No. 80 at 3. Clear Channel correctly notes that Erkelens' statements are

9

1 unsupported by any citations to any evidence. *Id.* The Court OVERRULES the objection with
2 respect to Erkelens' statements which are based on her own experiences as described in her filed
3 declarations, even though she did not provide citations for them. The Court, however, SUSTAINS
4 the objection with regards to Erkelens' statements regarding other property owners, as she provides
5 no evidence to support them.

## II. Breach of Contract

Whether the undisputed facts are construed in favor of Clear Channel or in favor of Erkelens, no reasonable jury could find Erkelens did not breach the Lease. In California, a breach of contract requires: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff therefrom. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1391 n. 11, Cal.Rptr.3d 412 (2004); Cal. Civ. Jury Instr. 303. The only dispute before the Court is whether Erkelens breached the Lease by terminating it and then repudiating paragraph 8 by refusing to allow Clear Channel to remove its sign and structure from the Property.

### A. The Terms of the Lease

Turning first to the terms of the Lease, the Court finds them unambiguous and reasonable. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636; *Powerine Oil Co., Inc. v. Super. Ct.*, 37 Cal.4th 377, 390, 118 P.3d 589 (2005). The goal is "not to defeat the mutual objectives of the parties[.]" *Howe v. Am. Baptist Homes of the W., Inc.*, 112 Cal.App.3d 622, 626, 169 Cal.Rptr. 418 (1980). Such intent should be inferred, if possible, solely from a contract's written provisions. Civ. Code § 1639; *Powerine*, 37 Cal.4th at 390. A court, however, may consider the parties' conduct subsequent to contracting and prior to breach, in interpreting a contracts terms. *Crestview Cemetery Ass'n v. Dieden*, 54 Cal.2d 744, 752-53, 8 Cal.Rptr. 427 (1960).

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Civ. Code § 1638; *see Powerine*, 37 Cal.4th at 390. In this regard, "the court shall avoid an interpretation which will make a contract extraordinary, harsh,

unjust, inequitable[.]" *Howe*, 112 Cal.App.3d at 627. A term is ambiguous when it is capable of two reasonable constructions. *Powerine*, 37 Cal.4th at 390. A contract subject to two interpretations must receive the one which makes "it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Civ. Code § 1643; *Howe*, 112 Cal.App.3d at 626-27. If an asserted ambiguity cannot be eliminated by the language and context of a contract, courts then invoke the principle that ambiguities are generally construed against the drafter. *Powerine*, 37 Cal.4th at 390.

Clear Channel argues the terms of the Lease are clear and unambiguous. PMSJ at 9-10. It asserts that under paragraph 8, it has owned its sign and structure since 1958, and has the right at termination to remove its property. *Id.* It correctly notes that under well settled law, a tenant with a lease provision of this nature has the right to remove its personalty at termination. *Id.* (*citing Clark v. Tallmadge*, 23 Cal.App.2d 703, 706-707 (1937); *Earle v. Kelly*, 21 Cal.App.480, 483 (1913)). Further, Clear Channel notes Erkelens never questioned its ownership or impeded its access until it advised her that under section 604(h), a voluntary removal would prevent her from installing a new sign. PMSJ at 11-13.

Erkelens does not dispute Clear Channel's ownership of its sign and structure, but argues Clear Channel's interpretation of paragraph 8 is "harsh, unjust, or inequitable," requiring the Court to re-interpret it in a reasonable and just manner. DMSJ at 7; Def.'s Opp'n at 8. Her conclusion is based on two premises: "[1] At the time the Lease was entered, the parties intended that Erkelens' [p]redecessor would be able to replace any sign that was removed, and [2] never intended to give Clear Channel's [p]redecessor the right to forever deprive Erkelens' [sic] of her right to advertise on the Property." *See* DMSJ at 2; Def.'s Opp'n at 1.

**1.   The Alleged Intended Right of Replacement**

Erkelens claims the contracting predecessors-in-interest intended the landowner would be able to replace any general advertising sign that was removed, in perpetuity. *Id.* Clear Channel simply argues paragraph 8 unambiguously states it owns its sign and structure. PMSJ at 9-10. The Court finds that based on the terms of the Lease, the objective mutual intention of the parties' predecessors-in-interest as it existed at the time of contracting in 1984, was that Clear Channel's

11

1  predecessor-in-interest would install, maintain, and own a sign and structure on the Property, for
2  which it would pay rent to Erkelens' predecessor-in-interest. The Lease is silent regarding post-
3  termination conduct, which this Court can only reasonably interpret to mean the parties'
4  predecessors-in-interest reached no agreement concerning post-termination conduct. Contrary to
5  Erkelens' wishes, the Court may not interpret the parties' silence as evidence of any post-
6  termination rights. The Court determines the objective mutual intent of the parties' predecessors-in-
7  interest by examining positive evidence: the duties created by the terms of the Lease, which in this
8  case, end at termination. It does not consider negative evidence, i.e., silence, to fashion duties to
9  bind the parties, post-termination. For these reasons, the Court does not find that Clear Channel's
10 interpretation of paragraph 8 is "harsh, unjust, or inequitable," requiring the Court to reinterpret it.

### 2.    The Alleged Inequitable Deprivation

Erkelens claims the contracting predecessors-in-interest never intended to give Clear Channel's predecessor-in-interest "the right to forever deprive Erkelens' [sic] of her right to advertise on the Property." *See* DMSJ at 2; Def.'s Opp'n at 1. The Court notes two problems with this claim. First, there is no evidence that the contracting predecessors-in-interest ever considered this issue.

More importantly, however, as Clear Channel correctly states, it is not depriving Erkelens of any such rights. Pl.'s Opp'n at 13-15; Pl.'s Reply at 7-8. Rather, changes in the Planning Code have altered her rights. *Id.* That is, Erkelens may exercise her right under the Lease to terminate it, and Clear Channel may exercise its right under the Lease to remove its sign and structure. *Id.* If sections 604(h) and 611(a) of the Planing Code deny her a replacement, this result is attributable to the will of the voters of San Francisco, and not to the Lease or Clear Channel's conduct. *Id.* To the contrary, Clear Channel has owned and maintained its sign and structure since 1958, and performed under the Lease since 1984, in reliance on paragraph 8. *Id.* It would be "harsh, unjust, and inequitable" for Erkelens to now acquire a benefit for which she never bargained, to Clear Channel's detriment, and to pocket a substantial windfall of $82,540.[8] *Id.* This is especially so, where

---

[8]   The benefit for which she did bargain, in contrast, was $2,184 for the 2006-07 rental year.

Erkelens admits she does not own the sign or structure. *Id.* Clear Channel's interpretation of paragraph 8 is not "harsh, unjust, or inequitable," requiring reinterpretation.

### B. Changes in the Law

Erkelens argues she has not breached, because she is entitled to rely on the law in existence in 1984, when the Lease was initially drafted, under *Equitable Building & Loan Ass'n v. Wolfangle*, 111 Cal.App. 119, 295 P. 388 (1931) and *Swenson v. File*, 3 Cal.3d 389, 90 Cal.Rptr. 580, 475 P.2d 852 (1970). In *Wolfangle*, two adjoining land owners in Pasadena jointly built a common brick party-wall 12 inches thick. *Wolfangle*, 111 Cal. App. at 120. They also contracted that if either party extended the wall, they must do so at 12-inches thick, and the other party would have to split the cost. *Id.* Pasadena later passed an ordinance mandating such walls must be 16 inches thick. *Id.* at 121. One of the parties then extended the wall at this thickness, but the other party refused to split the cost. *Id.* An appellate court held the refusal was proper because "statutes and ordinances enacted *subsequent to the execution of a contract*, which add burdens or impair the obligations of the contract may not be deemed to be a part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Id.* at 123 (emphasis added).

In *Swenson*, partners in a partnership entered into a contract in 1960, which included a covenant not-to compete within 20 miles of the partnership's offices in Pasadena and Azusa, in Los Angeles County. *Swenson*, 3 Cal.3d at 391-92. In 1960, this violated section 16602 of the California Business and Professions Code, which limited such covenants to the borders of a partnership's city or a part thereof.[9] *Id.* at 392. In 1961, however, section 16602 was amended to allow countywide covenants. *Id.* A partner then left and began to compete in San Gabriel and Arcadia, inside Los Angeles County. *Id.* at 391. A court of appeals held this did not violate the contract, as the parties were *presumed to have incorporated the 1960 version of the law into their contract*. *Id.* at 393.

Erkelens argues under *Swenson*, Clear Channel must look to the Planning Code as it stood in 1984, not 2007, because otherwise, under *Wolfangle*, she would be improperly subjected to burdens

---

[9] The appellate court never expressly held, but implied a 20-mile radius from the partnership's offices extended beyond the Pasadena and Azusa borders.

13

beyond those bargained for in the Lease. DMSJ at 7-11; Def.'s Opp'n at 8-12. As she puts it, in 1984, her predecessor-in-interest had the right to voluntarily remove a billboard from the Property, without losing the right to have one on the Property. *Id.* Now, however, if she voluntarily removes the sign and structure, under sections 611(a), enacted in 2002, and 604(h), amended in 2006, she will allegedly lose this right in perpetuity. *Id.* She argues this would be wrong, as the Lease does not expressly incorporate subsequent Planning Code changes into its terms. *Id.*

In response, Clear Channel asserts Erkelens has inverted the holdings in *Wolfangle* and *Swenson.* Pl.'s Opp'n at 8-9; Pl.'s Reply at 2-5. Clear Channel notes, the courts in these two cases *refused to read new law into the parties' contracts, but instead enforced them under their terms as initially drafted*. *Id.* It also notes, these courts *did not hold the defendants could ignore changes in the law*, merely that they could not use these changes to amend the terms of their contracts. *Id.* Here, Clear Channel argues that Erkelens, rather than looking solely to the terms of the Lease, is trying to read into it, Proposition G and the 2006 amendment to section 604(h), which she may not do, as the Lease does not incorporate Planning Code changes. *Id.* Also, it notes, these changes *have not modified the terms of the Lease nor increased Erkelens' burdens under it*, as each party's performance has *remained the same* over time, save for amendments to rent and term. *Id.* In contrast, however, Clear Channel notes, Erkelens seeks to use new law to appropriate Clear Channel's sign and structure, in direct contravention of *Wolfangle* and *Swenson*. *Id.*

The Court agrees with Clear Channel. In both *Wolfangle* and *Swenson*, the plaintiffs sought to modify the terms of their contracts and to increase the defendants' burden, by reading new law into a contract which did not provide for this practice, and the appellate court held this was improper. Here, Erkelens is attempting to do the same: rather than looking to the terms of the Lease, she is attempting to re-write them based on Planning Code amendments, and thus increase Clear Channel's burden to her benefit. Neither *Wolfangle* nor *Swenson*, however, provide support for Erkelens' conclusions.

### III.     Specific Performance

Erkelens argues if she has breached, then Clear Channel may not obtain specific performance, i.e., recover its sign and structure under paragraph 8, because doing so would work a

14

forfeiture on her and be unjust, and because Clear Channel has an adequate remedy at law. Def.'s Opp'n at 13-18. As discussed below, the Court finds no merit to these arguments.

### A.     Forfeiture

Erkelens argues if Clear Channel is allowed to remove its sign and structure, then she will "forfeit" her right to display general advertising. *Id.* at 13. Clear Channel disagrees, noting it has completely performed under the Lease, while Erkelens has completely breached it. Pl.'s Reply at 8-10. Thus, it argues she cannot claim a forfeiture.

California law generally bars specific relief where it will work a forfeiture. Cal Civ. Code §§ 3275,[10] 3369.[11] As *Keller v. Lewis*, 53 Cal. 113, 118 (1878) (citation omitted), holds, "It is a universal rule in equity never to enforce either a penalty or forfeiture. . . . On the contrary, equity frequently interposes to prevent the enforcement of a forfeiture at law." A forfeiture is "the divestiture of property without compensation," or alternatively "the loss of a right privilege or property because of a crime, breach of obligation, or neglect of duty." *Black's Law Dictionary* 677 (8th ed. 2004). Traditionally, a court will bar a "forfeiture" where a first party performs in part or immaterially breaches, and a second party then attempts to declare the first in total breach and keep the entire benefit of their bargain to themselves. *See, e.g.*, *Ascherman v. McKee*, 143 Cal.App.2d 277, 299 P.2d 267, 279-80, 284-87 (1956); *Keller*, 53 Cal.3d at 113-15, 118. A forfeiture may also be barred where a first party partially performs, then intentionally breaches, and it would be inequitable for the second party to retain the benefit of the partial performance. *See Freedman v. Rector*, 37 Cal.2d 16, 230 P.2d 629 (1951) (seller may not retain first buyer's down payment, where

---

[10]   This section states in part, "[n]either specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . . except in a case of nuisance or as otherwise provided by law." By its very terms, this section does not apply here, as Clear Channel does not seek specific relief to enforce a forfeiture. Rather, Clear Channel seeks to avoid one.

[11]   This section states in part, "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, . . . by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Again, by its terms, this section does not apply to this matter. Erkelens has not incurred a forfeiture by failing to comply with the terms of the Lease, but has willfully breached them. Further it is *her own actions*, which *by operation of the Planning Code*, may deprive her of the ability to replace Clear Channel's sign and structure, and not the terms of any obligation.

15

first buyer repudiates, but sale to second buyer yields substantially more than first buyer's price).

These authorities do not save Erkelens. Unlike an *immaterially* breaching party, as in *Ascherman* and *Keller*, Erkelens cannot claim a "forfeiture," as she received full performance, and then totally and *materially* breached the Lease. Moreover, it was her material breach of the Lease which triggered the operation of law that resulted in the ultimate "forfeiture" of which she complains. Clear Channel is not seeking to inequitably retain the benefit of Erkelens' performance, but trying to prevent the harsh results Erkelens urges on this Court. Finally, if a forfeiture exists at all, it is Clear Channel's loss attributable to Erkelens' retention of its sign and structure, notwithstanding its compliance with its obligations under the Lease. Consequently, the Court finds that specific performance, in the form of Clear Channel's removal of its sign and structure, would not effect a forfeiture for Erkelens.

### B. Unjust and Unreasonable

Erkelens argues the Court should disallow specific performance in this matter, because "divesting [her] of her right to conduct general advertising on the Property would be inequitable, unjust, and unreasonable." Def.'s Opp'n at 15. Section 3391 of the Civil Code states in part, "Specific performance cannot be enforced against a party to a contract in any of the following cases: [¶] 2. If it is not, as to him, just and reasonable . . . ." As the Courts of Appeal have held, "Equity will not lend its aid to enforce contracts which upon their face are so manifestly harsh and oppressive as to shock the conscience; it must be affirmatively shown that such contracts are fair and just." *Jacklich v. Bauer*, 57 Cal.App.2d 684, 693, 135 P.2d 179 (1943). The Court has already found that neither Clear Channel nor paragraph 8 are "divesting" Erkelens of her right to conduct general advertising. *See* part II.A.2 *supra*. Rather, the Court found any "divestment" that occurs, will occur as a result of her conduct, which triggers operation of sections 604(h) and 611(a) of the Planning Code. *See id.* Thus, Erkelens has failed to show the Lease is "so manifestly harsh and oppressive as to shock the conscience," so as to bar specific performance. She enjoys no right in equity to burden Clear Channel with the consequences of her decision to terminate the Lease.

### C. Monetary Remedy

Erkelens argues specific performance is barred, because Clear Channel has an adequate

remedy at law. For support, she cites to *Morrison v. Land*, 169 Cal. 580, 588, 147 P. 259 (1915), *Sheppard v. Banner Food Products*, 78 Cal.App.2d 808, 813, 178 P.2d 455 (1947), and *Tamarind Lithography Workshop v. Sanders*, 143 Cal.App.3d 571, 576-78, 193 Cal.Rptr. 409 (1983). Def.'s Opp'n at 16. She also presumes to argue that Clear Channel does not need the sign or structure. *Id.*; Def.'s Reply at 7. She asserts that it only has salvage value, would cost money to move it, and that Clear Channel cannot use it post-termination. *Id.* Erkelens' assertions are facially disingenuous, given her desire to acquire $82,540 for the sign and structure over a period of ten years. Pl.'s Reply at 12. Moreover, Clear Channel correctly observes that none of the cases cited by Erkelens involve demands for the return of personal property. *Id.* at 11. It correctly asserts that money does not vindicate its ownership rights or return its property. *Id.* To allow Erkelens to pay money damages under these facts would condone the involuntary transfer of personalty by misappropriation of Clear Channel's property, and allow her to profit from her breach and to receive a substantial and unjustified windfall. The Court does not find specific performance is barred on the grounds Clear Channel has an adequate remedy at law.

**IV.   Conversion**

Erkelens argues she has not converted Clear Channel's property, because under *Wolfangle* and *Swenson*, Clear Channel may not take possession of its sign or structure, under paragraph 8. *See* Def.'s Opp'n at 17. The Court has already found these cases do not support Erkelens' argument. Alternatively, she argues: (1) specific performance is unavailable under sections 3379 and 3380 of the Civil Code, which provide it is a *permissive*, rather than *mandatory*, remedy for conversion; and (2) it is unavailable under section 3369 of the Civil Code, as it would work a forfeiture. Def.'s Opp'n at 17. The Court is unpersuaded. The first assertion incorrectly equates "permission" with "prohibition." As for the second assertion, the Court has already found that specific performance will not work a forfeiture. Finally, Erkelens argues that Clear Channel has only been damaged to the extent of the salvage value of the sign and its structure, or that the proper calculation for damages for any conversion of the sign and structure is their fair market value, plus their income stream, plus interest from the date of conversion, citing to *Longeran v. Monroe*, 77 Cal.App.2d 223, 225 (1947). Def.'s Opp'n at 17-18. With regards to the salvage concept, the Court has already found Erkelens'

attempt to devalue the sign and structure disingenuous, when they are worth $82,540 to her over a ten-year period. With regards to the calculation, as Clear Channel correctly notes, Pl.'s Reply at 13, the only issue before the court in *Longeran*, was a claim for damages, and not specific performance, which issue that court did not address. Thus, Erkelens has failed to show specific performance is unavailable to Clear Channel to remedy her conversion of its personalty.

## V.     Permit Ownership

Erkelens argues "[t]o give Clear Channel the unilateral power to abandon [her] right to advertise on the Property would violate" "Planning Code Section 183, which provides that only the property owner can abandon a non-conforming use[,]" "as well as established California caselaw [sic] which says that the property owners land use permits attached [sic] to their land, and that land use rights run with the land." DMSJ at 12; Def.'s Opp'n at 12. As this Court has already held, if Erkelens loses the right to advertise on her Property, it is not due to Clear Channel's conduct or the terms of the Lease, but due to her conduct and the terms of the Planning Code. In other words, Clear Channel never had, nor currently has, "the unilateral power to abandon Erkelens' right to advertise on the Property[.]" As the predicate of Erkelens' section 183 and use-permit arguments is faulty, the Court does not address her conclusions.[12]

## VI.    Injunction

Erkelens argues the Court should not grant an injunction, because it cannot grant specific performance. D's Opp'n at 18. As the Court has already found otherwise, there is no merit to Erkelens' argument.

## CONCLUSION

ACCORDINGLY:

1.     The Court GRANTS plaintiff Clear Channel's Motion for Partial Summary Judgment [Docket No. 59] on its first claim for breach of contract, its second claim for conversion, and sixth claim for declaratory judgment. The Court DENIES defendant Erkelens' Motion for Summary Judgment [Docket No. 63] with respect to Clear Channel's first, second, and sixth claims, on the

---

[12]   Erkelens could have easily avoided these issues by attempting to legally acquire Clear Channel's sign and structure.

///

merits, and with respect to Clear Channel's third through fifth claims, without prejudice, due to failing to raise them in her motion.

2. The Court GRANTS Clear Channel's Request for Judicial Notice [Docket No. 49] and all of Erkelens' Requests for Judicial Notice [Docket Nos. 64, 69, 82]. The Court, however, DENIES Clear Channel's Request for Judicial Notice [Docket No. 78]. With regards to Clear Channel's evidentiary objections, the Court OVERRULES the first and second objections, SUSTAINS the third objection, and OVERRULES the fourth objection with respect to Erkelens' supported statements of Clear Channel's conduct in this matter, but SUSTAINS it with regards to her unsupported statements regarding Clear Channel's conduct outside of this matter.

3. The Court enters a declaratory judgment that (a) Clear Channel is the sole owner of the sign and its structure on the Property; (b) Clear Channel is entitled to all rights under the Lease until legally terminated; (c) Clear Channel has the right to remove its sign and structure from the Property whether before or after expiration of the Lease; (d) Clear Channel has the right to obtain permits necessary for the removal of its sign and structure from the Property; and (e) Erkelens has materially breached the Lease, repudiated her obligations thereunder, and has wrongfully exercised, or purported to exercise, control over Clear Channel's sign and its structure.

4. The Court enters an injunction prohibiting Erkelens, her officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Erkelens, jointly and severally, from:

    (a) continuing to deny Clear Channel the right to remove its sign or structure from the Property;

    (b) taking possession of, or making use of, Clear Channel's sign or structure for her own benefit, or from undertaking any act designed to deprive Clear Channel of its ownership and/or possessory rights in the sign or structure;

    (c) committing any further acts of conversion or trespass to chattel with respect to Clear Channel's sign or structure;

    (d) altering, destroying, or removing all or any part of the sign or structure; and/or

///

      (e)    denying Clear Channel access to the sign or structure by way of ingress and egress to the wall, sign, or structure.

IT IS SO ORDERED.

October 6, 2008

                                                     _____
                                                     Saundra Brown Armstrong
                                                     United States District Judge